# EXHIBIT B
# LEXIS CITED AUTHORITY



**ALLCARE DENTAL MANAGEMENT, LLC, a New York limited liability Company, DAVID PENNINGTON, an Individual, and CHRISTOPHER BECK, an Individual, Plaintiffs, v. TERA ZRINYI, DDS, an Individual, EDWARD GREENE, an Individual, and JOHN OR JANE DOES I-V, Unknown Persons, Defendants.**

**Case No. CV-08-407-S-BLW**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO**

*2008 U.S. Dist. LEXIS 84015*

**October 20, 2008, Decided**
**October 20, 2008, Filed**

**SUBSEQUENT HISTORY:** Claim dismissed by *Allcare Dental Mgmt., LLC v. Zrinyi, DDS, 2009 U.S. Dist. LEXIS 8038 (D. Idaho, Feb. 4, 2009)*

**COUNSEL:** [*1] For Allcare Dental Management, LLC, a New York limited liability company, David Pennington, Christopher Beck, Plaintiffs: John Robert Kormanik, Thomas Guy Hallam, Jr., LEAD ATTORNEYS, KORMANIK HALLAM & SNEED, LLP, Meridian, ID.

**JUDGES:** Honorable B. Lynn Winmill, Chief U. S. District Judge.

**OPINION BY:** B. Lynn Winmill

**OPINION**

**MEMORANDUM DECISION AND ORDER**

**INTRODUCTION**

The Court has before it Plaintiffs' Motion for Order to Allow Expedited Discovery (Docket No. 2).

**ANALYSIS**

Plaintiffs seek an Order allowing limited expedited discovery prior to the mandatory *Rule 26(f)* conference in this case. *Federal Rule of Civil Procedure 26(d)(1)* states that "[a] party may not seek discovery from any source before the parties have conferred as required by *Rule 26(f)*, except in a proceeding exempted from initial disclosure under *Rule 26(a)(1)(B)*, or when authorized by these rules, by stipulation, or by court order." *F.R.C.P. 26(d)(1)*. Plaintiffs seek a court order in this case.

A "good cause" standard applies to a party seeking expedited discovery. *Invitrogen Corp. v. President and Fellows of Harvard, 2008 U.S. Dist. LEXIS 74282, 2007 WL 2915058, *2 (S.D.Cal., 2007); see also Semitool, Inc. v. Tokyo Electron America, 208 F.R.D. 273 (N.D.Cal.2002).* [1] "Good cause [*2] may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, 208 F.R.D. at 276.*

1  Some courts have applied a test called the *Notaro* test in determining whether expedited discovery should be allowed. The test was first articulated in *Notaro v. Koch, 95 F.R.D. 403 (S.D.N.Y.1982).* The *Notaro* court required plaintiffs to satisfy a standard akin to preliminary injunctive relief. However, few courts have applied the test. Moreover, the Ninth Circuit has

not addressed the propriety of *Notaro. Semitool,* *208 F.R.D. at 275.* For the same reasons explained in *Semitool,* including the fact that *Notaro* was decided before the current 1993 amendments to *Rule 26* took effect, this Court also declines to apply *Notaro* and instead applies the conventional standard of good cause in evaluating a request for expedited discovery.

Specifically, Plaintiffs seek an order allowing expedited discovery as follows: (1) Authorization to serve a subpoena duces tecum upon Cable One, Inc. for information related to the claims in this case and for potential identification of Doe Defendants; and (2) Limited discovery on the [*3] named Defendants, Tera Zrinyi, DDS, and Edward Greene for the purposes of taking images of the hard-drives of any computers owned and/or used by the named Defendants for the preservation of electronically stored information related to the claims in this case and for potential identification of Doe Defendants.

**A. Cable One Subpoena**

Plaintiffs seek an Order allowing them to serve a Rule 45 subpoena duces tecum on Cable One. Plaintiffs assert that the statements posted on "Complaintsboard.com," on September 4, 2008 originated at an IP address used or issued by Cable One. Apparently, Cable One will not release any identifying information associated with the IP address unless and until it is served with a subpoena. Cable One will not disclose personally identifiable information pursuant to the Cable Communication Policy Act, *47 U.S.C. § 501 et seq.* The Act indicates that personally identifiable information shall not be disclosed by a cable operator "without the prior written or electronic consent of the subscriber concerned." *47 U.S.C. § 551(c)(1).* However, a cable operator may disclose personally identifiable information if the disclosure is "made pursuant to a court order authorizing such [*4] disclosure, if the subscriber is notified of such order by the person to whom the order is directed." *47 U.S.C. § 551(c)(2)(B).*

Plaintiffs assert that they need the information in order to provide them with the disclosure of the Doe Defendants' names and contact information in this case. District Courts have found good cause in granting expedited discovery requests when faced with similar facts. *Kimberlite Corp. v. John Does 1-20, 2008 U.S. Dist. LEXIS 43071, 2008 WL 2264485 (N.D.Cal., 2008)*

(Finding that plaintiffs lacking necessary information about unidentified defendants must seek such information through third-party subpoenas or other third-party discovery.) Moreover, postponing disclosure of information until the normal course of discovery may not be an option when the litigation cannot proceed without disclosure of the defendants' names and contact information. *UMG Recordings, Inc. v. Does 1-4, 2006 U.S. Dist. LEXIS 32821, 2006 WL 1343597, *1 (N.D. Cal., 2006).* Additionally, expedited discovery is appropriate because internet service providers typically retain user activity logs for only a limited period of time, ranging from a few days to a few months. *Id.;* see also Creevy Aff., P 12. Accordingly, the Court will grant the motion as [*5] explained below.

**B. Discovery on Named Defendants**

Plaintiffs also request limited expedited discovery as to the named Defendants. Specifically, Plaintiffs request an opportunity to electronically store an image of information stored on Defendants' computers. Plaintiffs cite *Rule 34(a)* for the proposition that they are entitled to electronically stored information. Plaintiffs contend that Defendants' computer files and/or electronically-stored information may be deleted or otherwise lost before the regular discovery process commences. Plaintiffs suggest that Defendants have evaded service in other matters, leading them to believe Defendants have little respect for the legal process or the requirement to preserve electronic data. Plaintiffs state that they expect to bear the costs associated with the limited discovery requests, and that they are amenable to procedural requirements imposed to prevent prejudice to Defendants. Accordingly, the Court will grant the motion as explained below.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiffs' Motion for Order to Allow Expedited Discovery (Docket No. 2) shall be, and the same is hereby, GRANTED as explained more fully below.

IT IS HEREBY [*6] FURTHER ORDERED as follows:

1. Plaintiffs may serve their Rule 45 subpoena duces tecum on Cable One, Inc. along with a copy of this Order.

a. The Court interprets

and understands the Rule 45 subpoena to be seeking information about anonymous persons who posted the alleged defamatory statements on the subject website. The Court is not authorizing disclosure of additional information, such as information about anonymous persons who simply visited the website.

2. Cable One, Inc. is hereby ordered as follows:

a. To retain any and all electronically-stored data or information responsive to the Rule 45 subpoena which exists as of the date of the service of the Rule 45 subpoena, *47 U.S.C. § 551(e)*;

b. To serve a copy of this Order and the associated Rule 45 subpoena duces tecum on all affected subscribers and/or account users within five (5) calendar days of the date of service of this Order and the Rule 45 subpoena upon Cable One, Inc.;

c. Any effected subscribers and/or account users shall then have fourteen (14) calendar days from the date of service upon them in which to file a motion to quash the Rule 45 subpoena with this Court;

d. If no motions to quash are received within the fourteen (14) [*7] day

period, then Cable One, Inc. shall produce the documents requested by the Rule 45 subpoena to Plaintiffs' counsel. Cable One, Inc. shall produce the documents requested by the Rule 45 subpoena within five (5) calendar days following the expiration of the period in which effected subscribers and/or account users have to file the motions to quash referenced above.

3. Defendants Zrinyi and Greene are hereby ordered to preserve any and all electronically-stored information or documents on any and all computers and portable or detachable hard-drives in Defendants' possession, custody, or control and used by Defendants since August 24, 2008, including but not limited to any computer or portable or detachable hard drive in their homes or place of business.

4. Defendants Zrinyi and Greene are further ordered to make available to Plaintiffs' designated computer forensics expert any and all computers and portable or detachable hard-drives in Defendants' possession, custody, or control and used by Defendants since August 24, 2008, including but not limited to any computer or portable or detachable hard drive in their homes or place of business. Defendants shall make available all of the computer [*8] equipment described above, at their places of business or residences, to Plaintiffs' designated computer forensics expert immediately upon being served with a copy of this Memorandum Decision and Order.

5. Plaintiffs' designated computer forensics expert will use his or her best efforts to avoid unnecessarily disrupting

the normal activities or business operations of Defendants while inspecting, copying, and imaging Defendants' computer equipment. Plaintiffs' designated computer forensics expert will maintain any information viewed or discovered during the computer imaging process in the strictest confidence and shall not reveal any such information to Plaintiffs, Plaintiffs' counsel, or any third-parties.

6. After the inspection, copying, and imaging of Defendants' computer equipment, Plaintiffs' designated computer forensics expert shall file all copied and imaged information with the Court under seal for the Court's eyes only. Plaintiffs' designated computer forensics expert must inform the Clerk of the Court, at the time of filing, that the information must be restricted to Court personnel only.

7. Plaintiffs, its counsel, and its designated computer forensics expert shall not access, [*9] review, or analyze the copies or images taken of Defendants' computer equipment until stipulation is reached between the parties or until further order of this Court.

DATED: **October 20, 2008**

/s/ B. Lynn Winmill

Honorable B. Lynn Winmill

Chief U. S. District Judge



**ARISTA RECORDS LLC, a Delaware limited liability company; BMG MUSIC, a New York general partnership, SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; UMG RECORDINGS, INC., a Delaware corporation; WARNER BROS. RECORDS INC., a Delaware corporation; ELEKTRA ENTERTAINMENT GROUP INC., a Delaware corporation; PRIORITY RECORDS LLC, a California limited liability company; CAPITOL RECORDS, INC., a Delaware corporation; INTERSCOPE RECORDS, a California general partnership; MAVERICK RECORDING COMPANY, a California joint venture; LAVA RECORDS LLC, a Delaware limited liability company; and LAFACE RECORDS LLC, a Delaware limited liability company; Plaintiffs; v. DOES 1-9, Defendants.**

**Civil Action No. 07-cv-00628-EWN-MEH**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

*2007 U.S. Dist. LEXIS 25191; Copy. L. Rep. (CCH) P29,358*

**April 4, 2007, Decided**
**April 4, 2007, Filed**

**COUNSEL:** [*1] For Arista Records LLC, a Delaware limited liability company, BMG Music, a New York general partnership, Sony BMG Music Entertainment, a Delaware general partnership, UMG Recordings, Inc., a Delaware corporation, Warner Bros. Records Inc., a Delaware corporation, Elektra Entertainment Group Inc., a Delaware corporation, Priority Records LLC, a California limited liabaility company, Capitol Records, Inc., a Delaware corporation, Interscope Records, a California general partnership, Maverick Recording Company, a California joint venture, Lava Records LLC, a Delaware limited liability company, LAFACE Records LLC, a Delaware limited liability company, Plaintiffs: Katheryn Jarvis Coggon, LEAD ATTORNEY, Holme, Roberts & Owen, LLP-Denver, Denver, CO.

**JUDGES:** Michael E. Hegarty, United States Magistrate Judge.

**OPINION BY:** Michael E. Hegarty

**OPINION**

**ORDER ON EX PARTE APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY**

Plaintiffs have filed an Ex Parte Application for Leave to Take Immediate Discovery (Docket # 2) ("Ex Parte Application"). This motion has been referred to this Court by District Judge Edward Nottingham (Docket # 7). In their motion and supporting brief, Plaintiffs seek leave of [*2] Court in advance of a Rule 26(f) conference to conduct immediate but limited discovery with regard to a third party Internet Service Provider ("ISP") for purposes of allowing the Plaintiffs to determine the true identities of the Doe Defendants in this copyright infringement action. For the reasons stated below, the Court **grants,** in part, and **denies,** in part, the Ex Parte Application.

**I. Facts**

Page 2

2007 U.S. Dist. LEXIS 25191, *2; Copy. L. Rep. (CCH) P29,358

Plaintiffs allege copyright infringement against nine Doe Defendants for distribution and/or duplication of copyrighted sound recordings owned or controlled by the Plaintiffs via an online media distribution system, without the Plaintiffs' authorization and in violation of federal copyright laws. At this time, the Plaintiffs are only able to identify the Defendants by their Internet Protocol ("IP") addresses. Therefore, the Plaintiffs seek leave of court to undertake expedited discovery to obtain identifying information from the Defendants' Internet Service Provider ("ISP") prior to the time authorized for such discovery as provided by the Federal Rules of Civil Procedure. Specifically, the Plaintiffs desire to serve a *Rule 45* subpoena upon Qwest Communications Corp. ("Qwest"), [*3] the ISP which has been identified for the Defendants, to obtain subscriber activity logs or documents identifying each of the Defendants' true name, current (and permanent) addresses and telephone numbers, e-mail addresses, and Media Access Control ("MAC") addresses. Plaintiffs request that any order issued by Court in this regard make clear that Qwest is authorized to respond to the subpoena pursuant to the Cable Communications Act [1] ("Cable Act"), *see 47 U.S. C. § 551(c)*, because it is the Plaintiffs' position that the Cable Act does not apply to cable Internet providers. **II.**

1    The Cable Communications Policy Act generally prohibits the disclosure of certain personal information regarding subscribers which is possessed by cable television companies. Plaintiffs indicate that "cable ISPs have expressed concern about their obligations under the Cable Act, and some have taken the position that a court order is required before they will disclose subscriber information."

**Discussion**

[*4] As Plaintiffs note, discovery prior to a Rule 26(f) conference may be permitted in the discretion of the Court upon a showing of good cause. *See Qwest Communications Int'l, Inc. v. Worldquest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003)*; *Pod-Ners,LLC v. Northern Feed & Bean, 204 F.R.D. 675, 676 (D. Colo. 2002)*. In this case, Plaintiffs allege several bases for establishing good cause. Primary among these is the indication that an ISP typically retains user activity logs for only a limited time, and then the logs are erased. Without these logs, the true identities of the Defendants may never be known. Plaintiffs have proposed narrowly

tailored discovery which will ultimately permit them to serve process if possible and move forward with this lawsuit, by use of a Rule 45 subpoena served upon the Defendants' ISP, Qwest.

However, while the Court finds that the limited discovery proposed by the Plaintiffs is appropriate, the Court declines the Plaintiffs' invitation to frame an order which will make resolution of the issue of whether the Cable Act applies to cable Internet providers unnecessary based solely upon the beliefs expressed [*5] by the Plaintiffs in their current motion. Accordingly, Plaintiffs shall serve a copy of this Order along with the subpoena and Qwest may move to quash the subpoena if it deems appropriate and as allowed by the Federal Rules of Civil Procedure.

**III. Conclusion**

Accordingly, for the reasons stated above, it is hereby **ORDERED** that the Plaintiff's Ex Parte Application for Leave to Take Immediate Discovery [Filed March 29, 2007; Docket # 2] is **granted,** in part, and **denied,** in part, as follows:

1. Plaintiffs are authorized to serve the subpoena they have requested upon Qwest, seeking information sufficient to identify each Defendant's true name, address, telephone number, e-mail address, and Media Access Control address.

2. Any information disclosed to Plaintiffs in response to the subpoena may be used by the Plaintiffs solely for the purpose of protecting Plaintiffs' rights under the Copyright Act, as set forth in the Complaint.

3. Plaintiffs shall serve a copy of this Order along with the subpoena.

4. No directive set forth herein abrogates the protections afforded to Qwest under *Fed.R.Civ.P. 45(c)* [*6] .

Dated at Denver, Colorado, this 4th day of April, 2007.

Page 3

2007 U.S. Dist. LEXIS 25191, *6; Copy. L. Rep. (CCH) P29,358

BY THE COURT:                                    United States Magistrate Judge

    s/ Michael E. Hegarty



**ARISTA RECORDS LLC, et al., Plaintiffs, vs. DOES 1-19, Defendants.**

**Case No. 2:07 cv 0971 TS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

*2008 U.S. Dist. LEXIS 2393*

**January 11, 2008, Decided
January 11, 2008, Filed**

**COUNSEL:** [*1] For Arista Records, a Delaware limited liability company, Atlantic Recording, a Delaware corporation, BMG Music, a New York general partnership, Capitol Records, a Delaware corporation, Elektra Entertainment Group, a Delaware corporation, Fonovisa, a Canadian corporation, Interscope Records, a California general partnership, Sony BMG Music Entertainment, a Delaware general partnership, UMG Recordings, a Delaware corporation, Virgin Records America, a California Corporation, Warner Bros. Recordings, a Delaware corporation, Zomba Recording, a Delaware limited liability company, Plaintiffs: Kendra L. Shirey, LEAD ATTORNEY, HOLME ROBERTS & OWEN (UT), SALT LAKE CITY, UT.

**JUDGES:** Brooke C. Wells, United States Magistrate Judge. Judge Ted Stewart.

**OPINION BY:** Brooke C. Wells

**OPINION**

**ORDER AND MEMORANDUM DECISION GRANTING PLAINTIFFS'** *EX PARTE* **APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY**

Before the court is Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery filed December 17, 2007. [1] Plaintiffs filed a complaint alleging copyright infringement against a number of Doe Defendants and now seek discovery to ascertain their identity. Generally, "a party may not seek discovery from any source before the [*2] parties have conferred as required by *Rule 26(f)*" 2 unless authorized by a court order or agreement of the parties. "[A] party seeking expedited discovery in advance of a *Rule 26(f)* conference has the burden of showing good cause for the requested departure form usual discovery procedures." [3] After reviewing the Plaintiffs' memorandum, the declaration of Carlos Linares, [4] and relevant case law, the court finds that Plaintiffs have shown good cause and therefore GRANTS their motion.

> 1   Docket no. 3. The case was referred to this court on January 9, 2008.
>
> 2   *Fed. R. Civ. P. 26(d)*.
>
> 3   *Qwest Communications Int'l, Inc. v. Worldquest Networks, Inc., 213 F.R.D. 418, 419 (D.Colo.2003)*.
>
> 4   Carlos Linares is the Vice President, Anti-Piracy Legal Affairs for the Recording Industry Association of America, Inc.

Under *Rule 26(d)* "a party may not seek discovery from any source before the parties have conferred as required by *Rule 26(f)*." [5] The traditional sequence of discovery may, however, be altered by the court in the exercise of its broad discretion. But, the party seeking expedited discovery in advance of a *Rule 26(f)*

conference bears the burden of showing good cause for departing from the usual discovery [*3] procedures. 6 Good cause exists "where a party seeks a preliminary injunction . . . or where the moving party has asserted claims of infringement and unfair competition." 7 Additionally, good cause is also found "where physical evidence may be consumed or destroyed with the passage of time." 8

5 *Fed. R. Civ. P. 26(d)*.

6 *See Pod-Ners, LLC v. Northern Feed & Bean of Lucerne, LLC, 204 F.R.D. 675, 676 (D.Colo.2002)*.

7 *Qwest, 213 F.R.D. at 419*.

8 *Id.*

Here, the court finds that good cause exists. Plaintiffs make claims concerning possible infringement of their copyrights. And, the evidence Plaintiffs seek will be destroyed because most Internet Service Providers do not keep activity logs concerning their customers for a very long time. Without such information it is unlikely that Plaintiffs will be able to identify the unknown Defendants in this case.

Accordingly, Plaintiffs may serve immediate discovery on Off Campus Telecommunications -- Veracity Communications to obtain the identity of each Doe Defendant by serving a *Rule 45* subpoena that seeks

documents and electronically-stored information that identify each Defendant. The disclosure of this information is ordered pursuant to *20 U.S.C. § 1232g(b)(2)(B)*. [*4] The information disclosed to Plaintiffs may be used by Plaintiffs solely for the purpose of protecting Plaintiffs' rights under the Copyright Act.

In their motion Plaintiffs state that they "will ask the ISP to notify each of the Doe Defendants of the subpoena and provide them with an opportunity to object." 9 In accordance with Plaintiffs' representation, the court will provide each of the Doe Defendants an opportunity to object to the subpoena within fifteen days of notice. Finally, because this motion was brought *ex-parte* the court will also allow Off Campus ten days to object to the subpoena following service.

9 Pla.'s mtn. p. 2 fn.1

IT IS SO ORDERED.

DATED this 11th day of January, 2008.

/s/ Brooke C. Wells

Brooke C. Wells

United States Magistrate Judge



**Best Western International, Inc., a non-profit Arizona corporation, Plaintiff, vs. John Doe, et al., Defendants.**

**No. CV-06-1537-PHX-DGC**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA**

*2006 U.S. Dist. LEXIS 56014*

**July 25, 2006, Decided**

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part, Motion granted by *Best W. Int'l v. Doe, 2006 U.S. Dist. LEXIS 77942 (D. Ariz., Oct. 24, 2006)*

**COUNSEL:** [*1] For Best Western International, Inc, a non-profit Arizona corporation, Plaintiff: Cynthia Ann Ricketts, Sara Kathryn Regan, Squire Sanders & Dempsey LLP, Phoenix, AZ.

For H. James Dial, Defendant: Daniel Joseph McAuliffe, Gregory Blain Collins, Snell & Wilmer LLP, Phoenix, AZ; Richard T Mullineaux, Robert Jeffrey Lowe, Kightlinger & Gray LLP, New Albany, IN.

**JUDGES:** David G. Campbell, United States District Judge.

**OPINION BY:** David G. Campbell

**OPINION**

**ORDER**

Plaintiff Best Western International, Inc. ("BWI") has filed this action against various John Doe Defendants. BWI claims that the Defendants have posted anonymous messages on an Internet site that defame BWI, breach contracts with BWI, breach fiduciary duties, reveal confidential information, infringe BWI trademarks, and constitute unfair competition. Because the Internet messages have been posted anonymously, BWI has been unable to identify the John Doe Defendants.

BWI has filed a motion to conduct accelerated and expedited discovery. Doc. # 5. The motion seeks permission to serve subpoenas on various Internet Service Providers ("ISPs") and others before an initial conference is held pursuant to *Rule 26(f) of the Federal Rules of Civil Procedure.* [*2] The subpoenas seek disclosure of the identities of the sponsor for the Internet site as well as individuals who have posted messages. BWI contends that such information is needed before the John Doe Defendants can be served with BWI's complaint and can participate in a *Rule 26(f)* conference. Alleging that it is suffering irreparable injury as a result of comments posted on the site, BWI seeks expedited discovery and expedited consideration of its motion to conduct the discovery. Doc. # 6.

BWI also asks the Court to issue an order requiring the preservation of evidence related to the identities of the John Doe Defendants. Doc. # 7. BWI notes that information concerning Internet users typically is retained for only a short period of time. BWI asks the Court to enter an order requiring the preservation of information until it can be obtained through discovery.

One of BWI's proposed subpoenas would be directed to H. James Dial. Mr. Dial has appeared through counsel,

identified himself as one of the John Doe Defendants, and filed an opposition to BWI's motion for discovery and a counter-motion to stay all discovery until completion of a *Rule 26(f)* conference. Doc. # 11. BWI has filed [*3] a response. Doc. # 17.

This order will address four issues: (1) whether BWI has shown good cause to conduct discovery in advance of a *Rule 26(f)* conference, (2) whether this Court has jurisdiction to rule on the propriety of BWI's proposed subpoenas, (3) what showing BWI must make in order to conduct discovery that implicates *First Amendment* rights of the John Doe Defendants, and whether BWI has made that showing, and (4) other relevant considerations.

**1. Good Cause.**

*Rule 26(d)* provides that "a party may not seek discovery from any source before the parties have conferred as required by *Rule 26(f)*." *Fed. R. Civ. P. 26(d)*. The rule makes clear, however, that this limitation can be overridden by court order. *Id.* An order permitting discovery before a *Rule 26(f)* conference may be issued for "good cause." *Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 614 (D. Ariz. 2001)*.

BWI has satisfied the good cause requirement. BWI has established by affidavit that it is unable to identify the John Doe Defendants by means other than the subpoenas. Doc. # 9. Although Mr. Dial volunteered that he is one of the [*4] John Doe Defendants, the action is brought against an apparently large number of individuals who have posted anonymous messages on the Internet site. The case cannot proceed and a *Rule 26(f)* conference cannot be held until these Defendants are identified.

In addition, courts have recognized that ISPs typically retain user information for only a limited period, ranging from a few days to a few months. *UMG Recordings, Inc. v. Does I-IV, 2006 U.S. Dist. LEXIS 32821, No. 06-0652 SBA (EMC), 2006 WL1343597, at *1 (N.D. Cal. Mar. 6, 2006)*. The loss of evidence seems particularly possible in this case, as the Internet site expressly states to users that "your identity will be totally and forever withheld *and destroyed*." Doc. # 5, Ex. A at 2 (emphasis added).

Because the identities of the John Doe Defendants is necessary for this case to proceed and there is reason to believe that those identities may be lost if discovery is delayed, the Court concludes that BWI has established

good cause to conduct discovery before the *Rule 26(f)* conference. This conclusion does not, however, answer the question of whether discovery should be permitted in light of the *First Amendment* rights of the John Doe Defendants. That issue [*5] will be addressed below.

**2. The Court's Jurisdiction to Address the *First Amendment* Question.**

BWI's proposed subpoenas to ISPs and other individuals will be issued by federal district courts in the jurisdictions where those entities and individuals reside. Because only the court issuing a subpoena generally has power to quash it, BWI argues that this Court has no jurisdiction to address the propriety of the subpoenas.

*Rule 45(c)* does provide that subpoenas should be enforced by the district court which issued them, but this rule "does not alter the broader concept that the district court in which an action is pending has the right and responsibility to control the broad outline of discovery." *Static Control Components, Inc. v. Darkprint Imaging, 201 F.R.D. 431, 434 (M.D.N.C. 2001)*. General discovery issues should receive uniform treatment throughout the litigation, regardless of where the discovery is pursued. Courts have also recognized that a party's "'discovery rights [in other districts] can rise no higher than their level in the district of trial.'" *Id.* (quoting *Fincher v. Keller Indus., Inc., 129 F.R.D. 123, 125 (M.D.N.C. 1990))*. [*6]

The *First Amendment* implications of BWI's proposed discovery constitutes a significant issue in this case. Not only are the *First Amendment* rights of fundamental importance to the John Doe Defendants, but they also will be preserved or defeated by discovery orders. To the extent that Defendants have a *First Amendment* right to anonymous speech (a right addressed below), the right will be lost if BWI is permitted to learn the speakers' identities through discovery. This right will be at issue in every district where BWI's subpoenas are served. It makes little sense to leave such a central issue to district-by-district determination.

The Court concludes that it can and should address the *First Amendment* issues raised by BWI's discovery motion. As the court noted in *Static Control*, "[t]his issue extends well beyond the matter of a specific subpoena." *Id. at 434 n.5*.

**3. *First Amendment* Considerations.**

BWI is a non-profit member corporation. Doc. # 3 at P 9. BWI's members own and operate more than 4,000 hotels and lodging properties under the BWI name and trademark. *Id.* at P 10. BWI's board of directors communicates with BWI members through regional governors who [*7] are appointed to oversee specific geographic districts. *Id.* at P 11.

BWI's complaint and motions say little about the content of the Internet messages at issue in this case. Mr. Dial asserts, however, that the Internet site was created as a place for BWI members and governors to state their views on various issues concerning BWI. Specifically, Dial asserts that recent proposed changes in BWI's method of operation have drawn extensive comment on the site. The site describes itself as a "site for Best Western members," where members and headquarters staff "can exchange information on a 100% confidential basis." Doc. 5, Ex. A.

Several *First Amendment* principles are relevant.

First, the Amendment protects anonymous speech. *See Buckley v. Am. Constitutional Law Found., 525 U.S. 182, 200, 119 S. Ct. 636, 142 L. Ed. 2d 599 (1999).* The Supreme Court has noted that "[a]nonymity is a shield from the tyranny of the majority." *McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357, 115 S. Ct. 1511, 131 L. Ed. 2d 426 (1995).* Indeed, "[u]nder our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent." *Id.*

Second, the protections of the *First* [*8] *Amendment* extend to the Internet. *See Reno v. ACLU, 521 U.S. 844, 870, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997).* "Courts have recognized the Internet as a valuable forum for robust exchange and debate." *Sony Music Entm't, Inc. v. Does 1-40, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004).* "Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox." *Reno, 521 U.S. at 870.* Courts also recognize that anonymity is a particularly important component of Internet speech. "Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas [;] . . . the constitutional rights of Internet users, including the *First Amendment* right to speak anonymously, must be carefully safeguarded." *Doe v. 2TheMart.com Inc., 140 F. Supp. 2d 1088, 1092, 1097 (W.D. Wash. 2001).*

Third, "courts have held that civil subpoenas seeking information regarding anonymous individuals raise *First Amendment* concerns." *Sony, 326 F. Supp. 2d at 563* (*citing NAACP v. Ala. Ex Rel Patterson, 357 U.S. 449, 462, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958); NLRB v. Midland Daily News, 151 F.3d 472, 475 (6th Cir. 1998);* [*9] *L.A. Mem'l Coliseum, Comm'n v. Nat'l Football League, 89 F.R.D. 489, 494-95 (C.D. Cal. 1981)).*

Fourth, the right to speak anonymously is not absolute. *See McIntyre, 514 U.S. at 353; Southern Motor Carriers Rate Conference v. United States, 471 U.S. 48, 55-56, 105 S. Ct. 1721, 85 L. Ed. 2d 36 (1985)* (*First Amendment* does not protect copyright infringement); *Doe v. Cahill, 884 A.2d 451, 456 (Del. 2005)* ("Certain classes of speech, including defamatory and libelous speech, are entitled to no constitutional protection."). "Those who suffer damages as a result of tortious or other actionable communications on the Internet should be able to seek appropriate redress by preventing the wrongdoers from hiding behind an illusory shield of purported *First Amendment* rights." *In re Subpoena Duces Tecum to Am. On-Line, Inc., 52 Va. Cir. 26, 2000 WL1210372, at *5 (Va. Cir. Ct. 2000).*

These principles make clear that the John Doe Defendants have a *First Amendment* right to anonymous Internet speech, but that the right is not absolute and must be weighed against BWI's need for discovery to redress alleged wrongs. To ensure that the *First Amendment* rights of anonymous [*10] Internet speakers are not lost unnecessarily, courts typically require parties to make some showing before obtaining discovery of the speakers' identities. Courts have recognized a range of possible showings. As the Delaware Supreme Court has explained, "an entire spectrum of 'standards'. . . . could be required, ranging (in ascending order) from a good faith basis to assert a claim, to pleading sufficient facts to survive a motion to dismiss, to a showing of *prima facie* evidence sufficient to withstand a motion for summary judgment and, beyond that, hurdles even more stringent." *Cahill, 884 A.2d at 457.* BWI urges the Court to adopt the lowest standard -- good faith. Dial suggests the more stringent summary judgment standard.

In deciding which standard to apply, the Court must consider the significance of the *First Amendment* rights at issue in this case. BWI cites several cases in which plaintiffs sued defendants for illegally downloading music from the Internet. Although the courts found that

the downloading of information was entitled to some protection under the *First Amendment*, they recognized that downloading was not purely expressive and therefore was entitled [*11] only to "limited" *First Amendment* protection. *Sony, 326 F. Supp. 2d at 564*; *UMG Recordings, 2006 U.S. Dist. LEXIS 32821, 2006 WL1343597 at *1* ("A person who uses the Internet to download or distribute copyrighted music without permission is engaging in the exercise of speech, but only to a limited extent[.]").

The conduct of the John Doe Defendants, by contrast, is purely expressive. The Defendants are expressing their views on issues of interest to BWI members and governors in a forum specifically designed for an exchange of opinions and ideas anonymously. Such speech is entitled to substantial *First Amendment* protection.

Given the significant *First Amendment* interest at stake, the Court agrees with the Delaware Supreme Court in *Cahill*, and concludes that a summary judgment standard should be satisfied before BWI can discover the identities of the John Doe Defendants. The court in *Cahill* described the test in these words: "Before a defamation plaintiff can obtain the identity of an anonymous defendant through the compulsory discovery process, he must support his defamation claim with facts sufficient to defeat a summary judgment motion." *884 A.2d at 460*. This standard [*12] does not require a plaintiff to prove its case as a matter of undisputed fact, but instead to produce evidence sufficient to establish the plaintiff's *prima facie* case:

> [T]o obtain discovery of an anonymous defendant's identity under the summary judgment standard, a defamation plaintiff must submit sufficient evidence to establish a *prima facie* case for each essential element of the claim in question. In other words, the defamation plaintiff, as the party bearing the burden of proof at trial, must introduce evidence creating a genuine issue of material fact for all elements of a defamation claim *within plaintiff's control*.

*Id. at 465* (quotations and citations omitted, emphasis in original). The emphasized words "within plaintiff's control" recognize that a plaintiff at an early stage of the

litigation may not possess information about the role played by particular defendants or other evidence that normally would be obtained through discovery. But a plaintiff must produce such evidence as it has to establish a *prima facie* case of the claims asserted in its complaint.

BWI's complaint provides an example of why the summary judgment standard [*13] is appropriate. The complaint alleges that Defendants have improperly posted confidential BWI information on the Internet site, wrongfully posted BWI's trademark on the site, used BWI's equipment to communicate with the site, deprived BWI of the benefits of its contract with Defendants, and made false statements regarding BWI and its business. Doc. # 3 PP 58-60, 64, 68. But BWI's complaint does not identify a single false statement allegedly made by the John Doe Defendants, identify a single item of confidential information posted on the site by Defendants, describe a single instance where BWI's mark was improperly used, explain how BWI was denied the benefits of its contracts, or explain how BWI equipment was improperly used. The complaint provides no factual support for BWI's claim that Defendants engaged in wrongful conduct not protected by the *First Amendment*.

At the same time, the Court finds no basis for concluding that BWI's complaint has been asserted in bad faith. Nor, given modern notice pleading standards, would BWI's complaint likely be subject to a motion to dismiss. Thus, if the standard for permitting discovery of the John Doe Defendants' identities required only good [*14] faith or the ability to survive a motion to dismiss, BWI's proposed discovery would be permitted and the Defendants' *First Amendment* right to anonymous speech would be defeated. A good faith allegation of wrongdoing, devoid of factual detail, would suffice.

The Court concludes that more is needed before a defendant's *First Amendment* rights may be eliminated. The Court must examine facts and evidence before concluding that a defendant's constitutional rights must surrender to a plaintiff's discovery needs. The summary judgment standard will ensure that the Court receives such facts and evidence.

Other courts have adopted a multi-part test for determining when plaintiffs should be permitted to discover the identity of anonymous defendants. This test includes "(1) a concrete showing of a *prima facie* claim of actionable harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the

subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the Doe defendants' expectation of privacy." *UMG, 2006 U.S. Dist. LEXIS 32821, 2006 WL1343597 at *1* (citing *Sony, 326 F. Supp. 2d at 564-65*). The Court views the first [*15] element of this test -- "a concrete showing of a *prima facie* claim" -- as equivalent to the summary judgment standard. *See Dendrite Int'l., Inc. v. Doe, 342 N.J. Super. 134, 775 A.2d 756, 760 (N.J. App. 2001)* ("[T]he plaintiff must produce sufficient evidence supporting each element of its cause of action, on a prima facie basis, prior to a court ordering the disclosure of the identity of the unnamed defendant."). The Court need not address parts (2)-(4) of this test, as they clearly have been established by BWI. The fifth part of the test -- the John Doe Defendants' expectation of privacy -- should be addressed in the briefing by the parties discussed below.

In summary, BWI has not made a sufficient showing to justify discovery that will disclose the identities of the John Doe Defendants. BWI may be able to make such a showing in a renewed motion, but it has not done so in the present motion. The Court therefore will deny BWI's motion for expedited discovery.

## 4. Other Considerations.

If BWI believes that it can satisfy the summary judgment standard, it may seek to do so in a renewed motion to be filed with the Court on or before **August 18, 2006**. In the meantime, the [*16] Court will issue BWI's requested motion regarding the preservation of documents. As noted above, there is reason to believe that the information sought by BWI will not be retained by the ISPs or others from whom BWI will seek discovery. The Court will enter BWI's proposed order to preserve such evidence. The Court notes that Mr. Dial did not oppose the entry of such an order.

BWI has asked the Court to require the host of the Internet site to post the preservation order on the site. The Court finds such a requirement unnecessary. BWI may itself make the existence of the order known through its own entry on the site. BWI may also send copies of the preservation order to those from whom it later will seek discovery if the summary judgment standard is satisfied.

If BWI attempts to satisfy the summary judgment standard, BWI should give notice to the John Doe Defendants over the Internet site and afford them an opportunity to oppose the discovery. "When *First*

*Amendment* interests are at stake, we disfavor *ex parte* discovery requests that afford the Plaintiff the important form of relief that comes from unmasking an anonymous defendant." *Cahill, 884 A.2d at 461*. Therefore, [*17] "the plaintiff must undertake reasonable efforts to notify the anonymous defendant of the discovery request and must withhold action to allow the defendant an opportunity to respond." *Id.*

BWI shall notify the anticipated recipients of its discovery requests, as well as the John Doe Defendants, through entries on the Internet site and other reasonable means, that it is seeking discovery of the Defendants' identities and that the potential discovery recipients and John Doe Defendants may respond to its motion, should they choose to do so, within three weeks of the motion's filing. Because the Court will enter BWI's requested order for preservation of documents, evidence should not be lost while these steps are undertaken. Upon receipt of any responses to BWI's renewed motion and the filing of BWI's reply, the Court will again address the question of whether discovery of the John Doe Defendants' identities should be permitted in this case.

**IT IS ORDERED:**

1. BWI's motion for expedited consideration of motion to conduct accelerated and expedited discovery (Doc. # 6) is **granted**.

2. BWI's motion to conduct accelerated and expedited discovery (Doc. # 5) is **denied** [*18] .

3. BWI's motion for expedited consideration of motion for order regarding preservation of documents (Doc. # 8) is **granted**.

4. BWI's motion for order regarding preservation of documents (Doc. # 7) is **granted**. The Court will enter BWI's proposed order separately.

5. H. James Dial's motion to stay all discovery pending resolution of this motion and *Rule 26(f)* conference (Doc. # 11) is **granted** to the extent that no discovery will occur until after the Court considers BWI's renewed motion for

discovery, but is **denied** to the extent that Mr. Dial seeks a stay of all discovery until a *Rule 26(f)* conference has occurred.

DATED this 25th day of July, 2006.

David G. Campbell

United States District Judge



CAPITOL RECORDS, INC., a Delaware corporation; WARNER BROS. RECORDS INC., a Delaware corporation; UMG RECORDINGS, INC., a Delaware corporation; BMG MUSIC, a New York general partnerhsip; ARISTA RECORDS LLC, a Delaware limited liability company; PRIORITY RECORDS LLC, a California limited liability company; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; INTERSCOPE RECORDS, a California general partnership; ATLANTIC RECORDING CORPORATION, a Delaware corporation; VIRGIN RECORDS AMERICA, INC., a Califorina corporation; ELEKTRA ENTERTAINMENT GROUP INC., a Delaware corporation; MOTOWN RECORD COMPANY, L.P., a California limited partnerhsip; and LAFACE RECORDS LLC, a Delaware limited liability company; Plaintiff(s); v. DOES 1-10, Defendant(s).

Civil Action No. 07-cv-00790-WYD-MEH

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

*2007 U.S. Dist. LEXIS 32387*

April 30, 2007, Decided
April 30, 2007, Filed

**COUNSEL:** [*1] For Capitol Records, Inc., a Delaware corporation, Warner Bros. Records Inc., a Delaware corporation, UMG Recordings, Inc., a Delaware corporation, BMG Music, a New York general partnership, Arista Records LLC, a Delaware limited liability company, Priority Records LLC, a California limited liability company, Sony BMG Music Entertainment, a Delaware general partnership, Interscope Records, a California general partnership, Atlantic Recording Corporation, a Delaware corporation, Virgin Records America, Inc., a California corporation, Elektra Entertainment Group Inc., a Delaware corporation, Motown Record Company, L.P., a California limited partnership, LAFACE Records LLC, a Delaware limited liability company, Plaintiffs: Katheryn Jarvis Coggon, LEAD ATTORNEY, Holme, Roberts & Owen, LLP, Denver, CO.

**JUDGES:** Michael E. Hegarty, United States Magistrate Judge.

**OPINION BY:** Michael E. Hegarty

**OPINION**

**EX PARTE ORDER ON EX PARTE APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY**

Plaintiffs have filed an Ex Parte Application for Leave to Take Immediate Discovery (Docket # 2) ("Ex Parte Application"). This motion has been referred to this Court by District Judge Wiley Y. Daniel (Docket # 8). [*2] In their motion and supporting brief, Plaintiffs seek leave of Court in advance of a *Rule 26(f)* conference to conduct immediate but limited discovery with regard to a third-party Internet Service Provider ("ISP") for purposes of allowing the Plaintiffs to determine the true identities of the Doe Defendants in this copyright infringement action. For the reasons stated below, the Court **grants** the Ex Parte Application.

## I. Facts

Plaintiffs allege copyright infringement against ten Doe Defendants for distribution and/or duplication of copyrighted sound recordings owned or controlled by the Plaintiffs via an online media distribution system, without the Plaintiffs' authorization and in violation of federal copyright laws. At this time, the Plaintiffs are only able to identify the Defendants by their Internet Protocol ("IP") addresses. Therefore, the Plaintiffs seek leave of court to undertake expedited discovery to obtain identifying information from the Defendants' Internet Service Provider ("ISP") prior to the time authorized for such discovery as provided by the Federal Rules of Civil Procedure. Specifically, the Plaintiffs desire to serve a *Rule 45* subpoena upon the [*3] ISP which has been identified for the Defendants, to obtain documents identifying each of the Defendants' true name, current (and permanent) addresses and telephone numbers, e-mail addresses, and Media Access Control ("MAC") addresses).

## II. Discussion

Discovery prior to a *Rule 26(f)* conference may be permitted in the discretion of the Court upon a showing of good cause. *See Qwest Communications Int'l, Inc. v. Worldquest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003)*; *Pod-ners, LLC v. Northern Feed & Bean of Lucerne LLC, 204 F.R.D. 675, 676 (D. Colo. 2002)*. In this case, Plaintiffs cannot identify the Doe Defendants or pursue their lawsuit without the information they are seeking. Plaintiffs have proposed narrowly tailored discovery which will ultimately permit them to serve process if possible and move forward with this lawsuit, by use of a *Rule 45* subpoena served upon the Defendants' ISP. Accordingly, the relief sought by the Plaintiffs shall be granted.

## III. Conclusion

Accordingly, for the reasons stated above, it is hereby **ORDERED** that the Plaintiffs' Ex Parte Application for Leave to Take Immediate Discovery [ [*4] Filed April 18, 2007; Docket # 2] is **granted** as follows:

1. Plaintiffs are authorized to serve the subpoena they have requested upon the ISP identified for the Defendants, seeking information sufficient to identify each Defendant's true name, address, telephone number, e-mail address, and Media Access Control address.

2. Any information disclosed to Plaintiffs in response to the subpoena may be used by the Plaintiffs solely for the purpose of protecting Plaintiffs' rights under the Copyright Act, as set forth in the Complaint.

3. Plaintiffs shall serve a copy of this Order along with the subpoena.

4. No directive set forth herein abrogates the protections afforded to the ISP under *Fed.R.Civ.P. 45(c)*.

Dated at Denver, Colorado, this 30th day of April, 2007.

BY THE COURT:

s/ Michael E. Hegarty

United States Magistrate Judge



CENTRIFUGAL ACQUISITION CORP., INC., d/b/a Centrifugal Castings, a
Delaware Corporation, Plaintiff, -vs- ADRIAN A. MOON, BELINDA L. MOON,
BELINDA MOON, LLC, a Wisconsin limited liability company, JEFFREY A.
MOON, JM CASTING CO., LLC, a Wisconsin limited liability company,
CENTRIFUGAL CASTING, LLC n/k/a MOON INVESTMENTS, LLC, a
Wisconsin limited liability company, and BELINDA & ADRIAN, LLC, a Wisconsin
limited liability company, Defendants.

Case No. 09-C-327

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
WISCONSIN

*2009 U.S. Dist. LEXIS 56170*

May 6, 2009, Decided

**SUBSEQUENT HISTORY:** Injunction denied by,
Motion denied by, As moot, Motion to
strike denied by, Motion granted by, in part, Motion
denied by, in part *Centrifugal Acquisition Corp. v. Moon,
2010 U.S. Dist. LEXIS 7684 (E.D. Wis., Jan. 14, 2010)*

**COUNSEL:** [*1] For Centrifugal Acquisition
Corporation Inc. a Delaware corporation doing business
as Centrifugal Castings, Plaintiff: Daniel S Klapman,
Frederic A Mendelsohn, LEAD ATTORNEYS, Burke
Warren MacKay & Serritella PC, Chicago, IL.

For Adrian A Moon, Belinda L Moon, Belinda Moon
LLC, a Wisconsin limited liability company, Centrifugal
Casting LLC, a Wisconsin limited liability company now
known as Moon Investments LLC, Belinda & Adrian
LLC, a Wisconsin limited liability company, Defendants:
Michael J Anderson, Thad W Jelinske, LEAD
ATTORNEYS, Mawicke & Goisman SC, Milwaukee,
WI.

For Jeffrey A Moon, JM Casting Co LLC, a Wisconsin
limited liability company, Defendants: Joseph Brian
King, Donsbach & King LLC, Martinez, GA.

**JUDGES:** HON. RUDOLPH T. RANDA, Chief Judge.

**OPINION BY:** RUDOLPH T. RANDA

**OPINION**

**DECISION AND ORDER**

This diversity action is related to Centrifugal
Acquisition Corporation, Inc.'s ("CAC") purchase of the
assets (including trade secrets) of Centrifugal Casting,
LLC n/k/a Moon Investments LLC ("Centrifugal LLC").
Among other forms of relief, CAC's 11-count complaint
seeks an injunction prohibiting defendants from (1)
engaging in business competitive with the manufacture
and/or sale of battery terminals and components; [*2] (2)
using or disclosing CAC's Proprietary Process and
Confidential Business Information; and (3) soliciting
CAC's suppliers, customers and/or prospective
customers, including U.S. Battery-Augusta. Now before
the Court are CAC's motions for expedited discovery and
for an order approving the deposit of escrow payments
into a Court-controlled account. For the reasons that
follow, these motions are granted.

## I. Expedited discovery

*Fed. R. Civ. P. 26(d)* provides: "Except in categories exempted from initial disclosure under *Rule 26(a)(1)(E)*, or when authorized under these rules *or by order* or agreement of the parties, a party may not seek discovery from any source before the parties have conferred as required by *Rule 26(f)*" (emphasis added). The time to meet and confer is still to come, so CAC may not commence discovery without consent of the defendants or an order from the Court. *See Fed. R. Civ. P. 26(f)(1)*; *Fed. R. Civ. P. 16(b)(2)*. When considering a request for expedited discovery in advance of the normal procedure, some cases apply a good cause or reasonableness test. *See Sheridan v. Oak Creek Mortgage, LLC, 244 F.R.D. 520, 521 (E.D. Wis. 2007)* (collecting cases). Other cases apply a [*3] more stringent test that mirrors the factors for issuing a preliminary injunction, known as the *Notaro* test. *See Notaro v. Koch, 95 F.R.D. 403 (S.D.N.Y. 1982)*. A third approach presumptively applies the reasonableness test "unless the circumstances are such that the *Notaro* factors apply." *Sheridan at 522*.

The Court finds that the *Notaro* factors should be applied in the instant case. *Notaro* recognized that "in some cases a plaintiff could need expedited discovery to speed relief." *95 F.R.D. at 405*. However, *Notaro* also recognized that courts "must protect defendants from unfairly expedited discovery." *95 F.R.D. at 405*. In *Notaro,* plaintiffs claimed that "without expedited discovery and the resulting earlier trial they [would] suffer irreparable damage . . ." *Id.* Similarly, CAC wants to but cannot move for preliminary injunctive relief [1] because without discovery, CAC is unable to "present a proper preliminary injunction motion." In other words, CAC asserts that it will be subject to irreparable harm in the absence of expedited discovery. Accordingly, CAC must meet the stringent *Notaro* test. [2]

> 1 The lack of a pending motion for a preliminary injunction distinguishes this case from *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor, 194 F.R.D. 618 (N.D. Ill. 2000)* [*4] and other cases wherein the reasonableness test was applied to a motion for expedited discovery. When "a plaintiff seeks expedited discovery in order to prepare for a preliminary injunction hearing, it does not make sense to use preliminary injunction analysis factors to determine the propriety of an expedited discovery request." *Id. at 624*.

2 In *Sheridan,* this Court refused to apply *Notaro* but the circumstances of that case did not warrant its application. In *Sheridan,* plaintiff sought expedited discovery to obtain information relative to class certification.

The *Notaro* factors are as follows: (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted. *Id. at 405.* According to the allegations in the verified complaint, CAC is faced with the continuing loss of regular business to defendant JM Casting Co., LLC ("JM Casting"). *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 552 (4th Cir. 1994)* [*5] (threat of a permanent loss of customers to a competitor establishes irreparable injury). Importantly, JM Casting admits that it is filling orders for U.S. Battery and that defendant Belinda Moon purchased the JM Casting factory. These undisputed allegations demonstrate some probability of success on the merits.

There is a clear connection between the expedited discovery identified by CAC and the avoidance of irreparable injury. The discovery sought by CAC relates to the formation of JM Casting and to the merits of defendants' position that they are not utilizing trade secrets. As noted above, without this information, CAC's attempts to obtain preliminary injunctive relief cannot get off the ground. Finally, defendants will not be prejudiced if discovery is expedited on a limited basis. Defendants assert that CAC's motion is a "thinly veiled attempt to procure by improper means privileged attorney-client material to which it is not entitled," but the areas of discovery identified by CAC's motion encompasses a broader range of information. Of course, defendants are free to assert the privilege (and any other privilege) as appropriate. The parties are encouraged to resolve any potential [*6] disagreements in this regard without court intervention.

## II. Escrow deposit

In connection with its purchase of Centrifugal LLC's assets, CAC delivered a $ 1 million promissory note in favor of Centrifugal LLC, bearing interest at 7%, payable in equal monthly installments of $ 7,753 over ten (10) years. The outstanding principal balance is $ 870,635.71.

Count XI of CAC's complaint seeks a declaration that "as a result of the material breaches of the Non-Competition Agreement, and based on the indemnity provisions of the Asset Purchase Agreement, CAC is excused from the performance of its future obligations to continue making monthly payments under the Note."

Instead of continuing to pay these monthly payments during the pendency of this litigation, CAC requests leave to deposit them into a Court-controlled interest-bearing escrow account. *See Fed. R. Civ. P. 67(a); Civil L.R. 67.3(b) (E.D. Wis.).* By declining to make future payments under the Note, CAC risks liability in its own right, but in that respect there is no difference between CAC withholding payment or making deposits into a neutral account. Defendants are correct that *Rule 67* does not provide a mechanism for compelling advance [*7] payment of a future or contingent liability, but that is not what CAC is asking for here.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. CAC's motion for expedited discovery [D. 15] is **GRANTED;** and

2. CAC's motion to escrow note payments [D. 13] is **GRANTED.**

Dated at Milwaukee, Wisconsin, this 6th day of May, 2009.

**SO ORDERED,**

*/s/ Rudolph T. Randa*

**HON. RUDOLPH T. RANDA**

**Chief Judge**



**JEFFREY ERVINE, Plaintiff, v. S.B., R.Z.W., and E.A.B., Defendants.**

**No. 11 C 1187**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2011 U.S. Dist. LEXIS 24937*

**March 10, 2011, Decided**
**March 10, 2011, Filed**

**COUNSEL:** [*1] For Jeffrey Ervine, Plaintiff: Mark Anthony Petrolis, Charles Lee Mudd , Jr, Mudd Law Offices, Chicago, IL.

**JUDGES:** JAMES F. HOLDERMAN, Chief Judge, United States District Judge.

**OPINION BY:** JAMES F. HOLDERMAN

**OPINION**

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY AND THE PRESERVATION OF ELECTRONIC EVIDENCE

JAMES F. HOLDERMAN, Chief Judge:

On February 18, 2011, plaintiff Jeffrey Ervine ("Ervine") filed a complaint alleging that he is the victim of false and defamatory postings on websites, which is an increasingly frequent allegation this court has had to address, *see e.g., Blockowicz v. Williams, 675 F. Supp. 2d 912 (N.D. Ill. 2009)* (Holderman, J.), *aff'd, 630 F.3d 563 (7th Cir. 2010)*. In his complaint, Ervine asserts against Defendants S.B., R.Z.W., and E.A.B. (collectively "Defendants") claims for internet defamation (Count One), tortious interference with prospective economic advantage (Count Two), and false light (Count Three).

Ervine also requested injunctive relief (Count Four) [1] and prayed for damages of over $75,000.

> 1 Although not material for purposes of Ervine's motion, the court notes that injunctive relief is a remedy rather than a substantive claim.

After [*2] reviewing Ervine's complaint, on February 24, 2011, the court requested that Ervine either identify the Defendants by their actual names or explain why only abbreviations of those names were used in Ervine's complaint. (Dkt. No. 4.) On February 25, 2011, Ervine responded to the court's request and explained that Ervine currently is unable to identify the Defendants. (Dkt. No. 5.) Ervine asserted in his February 25, 2011 statement (Dkt. No. 5) that:

> In response to the Court's order, the Plaintiff, by his undersigned counsel, files this statement explaining why the abbreviations are warranted in this case *at this time*.

> In short, the Plaintiff, by his undersigned counsel, explains that he does not know the identities of the defendants. Rather, the defendants identify themselves on the website www.hakanyalincak.com ("Website") using only the initials found in the caption to the Complaint.

www.hakanyalincak.com (last visited February 4, 2011) (attached as Exhibit A). The attached exhibit provides all information known at present about the identities of the defendants. *Id.* Consequently, the Plaintiff cannot file an Amended Complaint identifying the defendants by their full names *as of yet.* [*3] Moreover, in filing the Complaint, the undersigned counsel chose to use what information is known about the identities of the defendants rather than "John Does 1-3."

(Dkt. No. 5 at 1.) Ervine subsequently filed the pending "Motion for Leave to Conduct Limited, Expedited Discovery and for Preservation of Electronic Evidence," (Dkt. No. 7) which is presently before the court.

SUBJECT MATTER JURISDICTION

Ervine's alleged basis for this court's subject matter jurisdiction is diversity of citizenship under *28 U.S.C. § 1332(a).* Plaintiff Ervine is a citizen of the State of New York and the Defendants are alleged to be foreign nationals of Pakistan, China, and Egypt respectively. Defendant S.B., the alleged Pakistani, allegedly resides in Illinois. Defendant R.Z.W., allegedly Chinese, and Defendant E.A.B., allegedly Egyptian, allegedly are both residing in New York.

Federal court subject matter jurisdiction based on the diversity of citizenship under *28 U.S.C. §1332(a)* is appropriate when the complaint alleges that the amount in dispute exceeds $75,000 and that the plaintiffs and all defendants are citizens of different states of the United States or of different countries. That requirement is [*4] met here.

Each of the three Defendants is alleged to be a foreign national. The term "national" has been treated as the equivalent of "citizen[ ] or subject[ ] of a foreign state" for purposes of jurisdiction under *§1332(a)(2).* *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd., 536 U.S. 88, 99, 122 S. Ct. 2054, 153 L. Ed. 2d 95 (2002)* ("Given the object of the alienage statute, as explained earlier, there is no serious question that 'nationals' were meant to be amenable to the jurisdiction of the federal courts.").

Moreover, Ervine has specifically alleged that the three Defendants are not permanent resident aliens of the United States. *Section 1332(a)* states, "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." *28 U.S.C. §1332.* In this case, two of the Defendants are alleged to be "residing in New York." Because Ervine is a New York citizen, if either of these Defendants is a permanent resident domiciled in New York, diversity will be destroyed. For now, based on Ervine's complaint's allegations, this court has subject matter jurisdiction to address this case and the pending motion.

ANALYSIS OF THE PENDING MOTION

In his motion, [*5] Ervine seeks limited discovery for purposes of identifying the Defendants. Specifically, Ervine requests leave of the court to issue subpoenas to the website-hosting companies and related third parties to obtain "information that would tend to identify the Defendant[s] including, but not limited to, the associated name, address, user logs, IP addresses, telephone numbers, and related information." (Ervine's Mot. 12.) The Seventh Circuit has long recognized that "where . . . a party is ignorant of the defendants' true identify, it is unnecessary to name them until their identity can be learned through discovery or through the aid of the trial court." *Maclin v. Paulson, 627 F.2d 83, 87 (7th Cir. 1980).* Under such circumstances, the district court has the authority to "permit the plaintiff to obtain their identity through discovery." *Duncan v. Duckworth, 644 F.2d 653, 656 (7th Cir. 1981)*; *see also Maclin, 627 F.2d at 87.* Consequently, Ervine's motion for limited discovery for purposes of identifying the Defendants is granted.

The subpoenaed third parties additionally are to preserve any and all responsive information sought by the subpoena based on the common law duty to preserve evidence [*6] once "the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001)*; *see also Casale v. Kelly, 710 F. Supp. 2d 347, 365 (S.D.N.Y. 2010)* (Scheindlin, J.) ("It is well established that the duty to preserve evidence arises when a party reasonably anticipates litigation.") (citation omitted). The Seventh Circuit similarly has recognized that courts have imposed sanctions based on "a duty to preserve evidence because [an individual or entity] knew,

or should have known, that litigation was imminent." *Norman-Nunnery v. Madison Area Tech. College, 625 F.3d 422, 428 (7th Cir. 2010)*. The Defendants and third-party website-hosting companies are on notice of imminent litigation giving rise to their duty to preserve all information pertinent to this case.

CONCLUSION

For the above reasons, Ervine's "Motion for Leave to Conduct Limited, Expedited Discovery and for Preservation of Electronic Evidence" (Dkt. No. 7) is granted.

ENTER:

/s/ James F. Holderman

JAMES F. HOLDERMAN

Chief Judge, United States District Court

Date: March 10, 2011


LexisNexis®

INTERSCOPE RECORDS, a California general partnership; ARISTA RECORDS
LLC, a Delaware limited liability company; ATLANTIC RECORDING
CORPORATION, a Delaware corporation; BMG MUSIC, a New York general
partnership; CAPITAL RECORDS, INC., a Delaware corporation; ELEKTRA
ENTERTAINMENT GROUP INC., a Delaware corporation; LAFACE RECORDS
LLC, a Delaware limited liability company; MOTOWN RECORD COMPANY,
L.P., a California limited partnership; SONY BMG MUSIC ENTERTAINMENT, a
Delaware general partnership; UMG RECORDINGS, INC., a Delaware
corporation; VIRGIN RECORDS AMERICA, INC., a California corporation;
WARNER BROS. RECORDS INC., a Delaware corporation; and ZOMBA
RECORDING LLC, a Delaware limited liability company, Plaintiffs, v. DOES 1 - 14,
Defendants.

CIVIL ACTION CASE NO. 5:07-4107-RDR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

*2007 U.S. Dist. LEXIS 73627*

October 1, 2007, Decided
October 1, 2007, Filed

COUNSEL: [*1] For Interscope Records, a California
general partnership, Arista Records LLC, a Delaware
limited liability company, Atlantic Recording
Corporation, a Delaware corporation, BMG Music, a
New York general partnership, Capitol Records, Inc., a
Delaware Corporation, Elektra Entertainment Group Inc.,
a Delaware Corporation, LaFace Records LLC, a
Delaware limited liability company, Motown Record
Company, L.P., a California limited partnership, Sony
BMG Music Entertainment, a Delaware general
partnership, UMG Recordings, Inc., A Delaware
corporation, Virgin Records America, Inc., a California
corporation, Warner Bros. Records Inc., a Delaware
corporation, Zomba Recording LLC, a Delaware limited
liability company, Plaintiffs: Joan K. Archer, Kevin M.
Kuhlman, LEAD ATTORNEYS, Lathrop & Gage, LC -
KC, Kansas City, MO.

JUDGES: K. Gary Sebelius, U.S. Magistrate Judge.

OPINION BY: K. Gary Sebelius

OPINION

ORDER GRANTING PLAINTIFFS' *EX PARTE*
APPLICATION FOR LEAVE TO TAKE
IMMEDIATE DISCOVERY

The instant motion comes before the court upon
plaintiffs' Ex Parte Application for Leave to Take
Immediate Discovery (Doc. 3) and Memorandum in
Support (Doc. 4).

Plaintiffs filed a complaint alleging copyright
infringement against various Doe [*2] Defendants and
now seek to ascertain their identify by service of a *Rule
45* subpoena on the University of Kansas seeking
documents that identify each Doe Defendant, including
the name, current (and permanent) addresses and
telephone numbers, e-mail addresses, and Media Access

Control addresses for each defendant.

Plaintiff has attached several orders from other courts in the Tenth Circuit allowing this sort of *ex parte* discovery prior to the parties' 26(f) conference wherein plaintiffs have alleged copyright infringement of song recordings. [1] In support of the instant motion, plaintiffs attach the Affidavit of Carlos Linares, Vice President for Anti-Piracy Legal Affairs for the Recording Industry Association of America, Inc. ("RIAA"). Mr. Linares explains that immediate discovery is warranted in the instant case because (1) prompt identification of infringers is necessary for copyright owners to take quick action (2) infringement of this nature often involves sound recordings that have not yet been distributed publicly (3) without expedited discovery plaintiff cannot identify defendants' names, address, or e-mail addresses; and (4) Internet Service Providers (ISPs) have different policies [*3] pertaining to the length of time they preserve "logs" which identify their users; this time period can range from as short as a few days to a few months before they erase the data. [2]

> 1 Memorandum in Support (Doc. 4) at (Exhibit B).
>
> 2 *Id.* at (Exhibit A) p. 8-9.

Generally, unless the parties agree otherwise or upon authorization of the court, "a party may not seek discovery from any source before the parties have conferred as required by *Rule 26(f)*[.]" [3] However, "*Rule 26(d) of the Federal Rules of Civil Procedure* allows a court to order expedited discovery upon a showing of 'good cause.'" [4] Good cause can exist in cases involving claims of infringement and unfair competition. [5] Sufficient good cause can also exist "where physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation." [6] In considering the good cause standard in the context of *Rule 26(d)* the court should also evaluate the scope of the requested discovery. [7]

> 3 *Fed. R. Civ. P. 26(d)*.
>
> 4 *Koch Carbon, LLC v. Isle Capital Corp., No. 05-1010-MLB, 2006 U.S. Dist. LEXIS 36962 (D. Kan. 2006)* (citing *Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd., 204 F.R.D. 675, 676 (D. Colo. 2002))*.
>
> 5 *Pod-Ners, 204 F.R.D. at 676.* [*4] *See also Qwest Communs. Int'l Inc. v. Worldquest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo.*

*2003)*("The good cause standard may be satisfied where a party seeks a preliminary injunction, or where the moving party has asserted claims of infringement and unfair competition.")(citations omitted).

> 6 *Qwest Communs. Int'l Inc., 213 F.R.D. at 419.*
>
> 7 *Id. at 420.*

In the instant case, the court finds plaintiffs have demonstrated sufficient good cause so as to warrant *ex parte* discovery prior to the parties' *Rule 26(f)* conference. Because the "logs" which identify the alleged infringers could be erased within mere days, the physical evidence of the alleged infringers' identity and incidents of infringement could be destroyed to the disadvantage of plaintiffs. Moreover, at this point, because plaintiffs seek very specific information regarding a certain group of likely readily identifiable people, the court finds the scope of the discovery sought sufficiently narrow. [8]

> 8 However, with further evidence or argument by the University of Kansas pursuant to a motion to quash, the court could reconsider its position on this point.

The court recognizes the recent amendment to the Federal Rules of Civil Procedure [*5] pertaining to the discovery of Electronically Stored Information, or ESI, and counsels the parties to consider these additions when addressing further discovery. However, the court has reviewed the changes to the Federal Rules, and in particular *Rule 45*, and has found no necessary prohibition to the relief plaintiffs seek.

However, because this motion is *ex parte* the court will allow the University of Kansas the opportunity to seek to quash the subpoena. [9]

> 9 *See e.g.,* Memorandum in Support (Doc. 4) at (Exhibit B) p. 24, 28 (orders from district courts in the Tenth Circuit specifically providing the third-party the opportunity to quash the subpoena).

Accordingly, for good cause shown,

IT IS THEREFORE ORDERED that plaintiffs' Ex Parte Application for Leave to Take Immediate Discovery (Doc. 3) is granted. Plaintiffs may serve a *Rule 45* subpoena upon the University of Kansas that seeks information sufficient to identify each Doe Defendant's,

name, current (and permanent) addresses and telephone numbers, e-mail addresses, and Media Access Control addresses for each Defendant. The disclosure of this information is consistent with the University of Kansas' obligations under *20 U.S.C. 1232g.*

IT [*6] IS FURTHER ORDERED that any information disclosed to plaintiffs in response to the Rule 45 subpoena may be used by plaintiffs solely for the purpose of protecting plaintiffs' rights under the Copyright Act.

IT IS FURTHER ORDERED that plaintiffs shall serve the University of Kansas with a copy of this Order as well as plaintiffs' Motion and Memorandum in Support along with the subpoena. If the University of Kansas wishes to move to quash the subpoena it may do so within ten days of being served with it.

IT SO ORDERED.

Dated this 1st day of October, 2007 at Topeka, Kansas.

s/ K. Gary Sebelius

U.S. Magistrate Judge



KIMBERLITE CORPORATION, Plaintiff, v. JOHN DOES 1-20, Defendants.

NO. C08-2147 TEH

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*2008 U.S. Dist. LEXIS 43071*

June 2, 2008, Decided
June 2, 2008, Filed

**COUNSEL:** [*1] For Simmonds & Narita LLP, a limited liability partnership, Plaintiff: Damien Patrick Lillis, LEAD ATTORNEY, Smith Lillis Pitha LLP, San Francisco, CA; Robert Lawrence Pollak, LEAD ATTORNEY, Glassberg Pollak & Associates, San Francisco, CA.

For Jeffrey Schreiber, Suzanne E. Schreiber, Defendants: Bradley Dean Bayan, LEAD ATTORNEY, Wallace Charles Doolittle, Esq., Law Offices of WAllace C. Doolittle, Hayward, CA.

**JUDGES:** THELTON E. HENDERSON, JUDGE.

**OPINION BY:** THELTON E. HENDERSON

**OPINION**

ORDER DENYING JOHN DOE'S MOTION TO QUASH SUBPOENA DIRECTED TO AT&T INTERNET SERVICES

This matter comes before the Court on Defendant John Doe's motion to quash the subpoena Plaintiff Kimberlite Corporation ("Kimberlite") served on third party AT&T Internet Services ("AT&T"). After carefully considering the parties' written arguments, the Court finds good cause to DENY the motion for the reasons discussed below.

**BACKGROUND**

Kimberlite filed this action on April 24, 2008, seeking damages and injunctive relief for trespass to chattels and violation of the Computer Fraud and Abuse Act, *18 U.S.C. § 1030*. The complaint alleges that unknown defendants, using the IP address 71.135.177.158, unlawfully accessed Kimberlite's internal computer [*2] network and e-mail system on April 7, 2008, and April 14, 2008.

Kimberlite traced the IP address as belonging to AT&T and subsequently issued a subpoena to AT&T on April 28, 2008. The subpoena, issued under *Federal Rule of Civil Procedure 45*, seeks "[a]ll documents that refer or relate to the identity of the person or entity to whom the Internet Protocol address 71.135.177.158 was assigned [on the relevant date and times], including, but not limited to, the name and address of the owner of the account, the name and address of all persons listed on the account, and billing information related to the transaction." Opp'n Ex. A at 5.

On May 7, 2008, the alleged IP holder ("Doe"), who remains anonymous, filed a one-page letter on his or her own behalf -- without apparent representation by counsel -- moving to quash the AT&T subpoena. Doe does not challenge the propriety or sufficiency of service of the subpoena on AT&T, nor does Doe argue that the subpoena seeks irrelevant information. Instead, the

motion raises only two objections. First, Doe contends that Kimberlite "has no compelling arguments in obtaining [Doe's] true identity" that outweigh Doe's "protection under [the] Cable Communication [*3] Policy Act of 1984, which prohibits operators from disclosing personally identifiable data to third parties without consent, unless the disclosure is either necessary to render a service provided by the cable operator to the subscriber or if it is made to a government entity pursuant to a court order." Second, Doe contends that Kimberlite has failed to state a claim under the Computer Fraud and Abuse Act because "[t]he holder of the IP address has not accessed a computer of any United States Government Agency, has not obtained any information from [a] United States Agency, has not had any intent and committed any fraud, has not caused transmission of any data resulting in damages and material loss, has not caused any trafficking that would affect interstate or foreign commerce, [and] has not had any intent to extort from any person that could be punishable under the Act." The Court addresses each of these arguments below.

## DISCUSSION

### I. Computer Fraud and Abuse Act

The Court first addresses Doe's argument that Kimberlite has not stated a claim under the Computer Fraud and Abuse Act ("CFAA"). The CFAA allows "[a]ny [*4] person who suffers damage or loss by reason of a violation of this section" to maintain a civil action seeking compensatory damages and injunctive or other equitable relief. *18 U.S.C. § 1030(g)*. It is a violation of the CFAA to "intentionally access[] a protected computer without authorization, and as a result of such conduct, cause[] damage" and losses amounting to at least $ 5000 over a one-year period. *18 U.S.C. § 1030(a)(5)(A)(iii), (B)(i)*. A "protected computer" includes any computer "used in interstate or foreign commerce or communication." *18 U.S.C. § 1030(e)(2)(B)*. Losses may include "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense." *18 U.S.C. § 1030(e)(11)*.

Contrary to Doe's assertions, Kimberlite has adequately alleged -- and provided preliminary evidence in support of -- a CFAA violation in this case. Kimberlite conducts business throughout the United States and Canada, Patterson Decl. P 2, and its computers are therefore protected under the CFAA because they are used in interstate and foreign commerce. Those computers, [*5] which are password-protected, were accessed "without the authorization of Kimberlite or the affected employees," and Kimberlite's activity logs show that the computers were accessed by an individual using the IP address 71.135.177.158. *Id.* P 4; Deedon Decl. PP 2, 4 & Ex. C. Kimberlite has also submitted evidence that its staff has "spent over 100 hours investigating the matter and taking steps to repair the Kimberlite email system following the intrusions," Deedon Decl. P 6, and that the "cost of securing the Kimberlite email system and conducting [an] investigation has exceeded $ 5,000.00," Patterson Decl. P 5. Thus, the complaint and the declarations Kimberlite submitted in opposition to the motion to quash sufficiently set forth a violation under the CFAA at this early stage of the proceedings. [1]

> 1 As Kimberlite correctly observes, Doe did not assert in the motion to quash that Kimberlite has failed to state a claim for trespass to chattels.

### II. Cable Communications Policy Act

The Court now turns to Doe's contention that Kimberlite has failed to set forth a compelling argument to obtain Doe's true identity that outweighs any privacy rights Doe has under the Cable Communication Policy [*6] Act ("CCPA"). The CCPA governs "cable operators," defined as "any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system." *47 U.S.C. § 522(5)*. The act further defines "cable service" as "(A) the one-way transmission to subscribers of (i) video programming, or (ii) other programming service, and (B) subscriber interaction, if any, which is required for the selection or use of such video programming or other programming service." *47 U.S.C. § 522(6)*.

Kimberlite contends that the CCPA does not apply here because AT&T Internet Services, on whom the subpoena was served, is not a "cable operator" as defined in the CCPA. Although Kimberlite cites neither supporting evidence that AT&T does not operate a cable service nor any case law that internet service providers do not provide "cable service" as defined by the CCPA, there is legal support for Kimberlite's position. For

example, the Ninth and Sixth Circuits have held that internet service is not [*7] a "cable service" as defined by the CCPA. *Klimas v. Comcast Cable Commc'ns, Inc., 465 F.3d 271, 279-80 (6th Cir. 2006); AT&T Corp. v. City of Portland, 216 F.3d 871, 876-77 (9th Cir. 2000).*

Even if the CCPA does apply, however, Doe's argument that Kimberlite has not demonstrated a compelling need for the information it seeks is incorrect. As discussed above, Kimberlite has adequately set forth a claim for relief against the IP address holder whose identity it seeks, and it is therefore proper for Kimberlite to subpoena the internet service provider to obtain such information. As one court has succinctly explained, "Plaintiffs lacking necessary information about unidentified defendants must seek such information through third-party subpoenas or other third-party discovery." *Butera & Andrews v. Int'l Bus. Machs. Corp., 456 F. Supp. 2d 104, 114 (D.D.C. 2006)* (citing "*Virgin Records Am. v. John Does 1-35, Civ. No. 05-1918 (CKK), 2006 U.S. Dist. LEXIS 20652, 2006 WL 1028956, at *1-*3 (D.D.C. Apr. 18, 2006)* (allowing third-party subpoena directed at Internet Service Providers ('ISP') of unidentified defendants, where the plaintiff could not otherwise 'identify the true names and locations of the [alleged copyright] infringers'); [*8] *Alvis Coatings, Inc. v. John Does 1-10, Civ. No. 3L94-374-H, 2004 U.S. Dist. LEXIS 30099, 2004 WL 2904405, at *2 (W.D.N.C. Dec.2, 2004)* (denying motion to quash third-party subpoena directing the ISP of unidentified defendants 'to provide documents sufficient to identify the name, address, and telephone number of the individuals corresponding to the specific IP addresses [named by the plaintiff]')"); *see also, e.g.,* UMG Recordings, Inc. v. Does 1-4, Case No. 06-0652 SBA (EMC), 2006 U.S. Dist. LEXIS 32821, 2006 WL 1343597, at *4 (N.D. Cal. Mar. 6, 2006)* (granting plaintiff's motion to take expedited discovery by serving subpoena on third-party internet service provider to identify unknown defendants alleged to have committed copyright infringement).

### III. Other Issues

Although the Court rejects the arguments raised in Doe's motion to quash, it does find good cause to impose two restrictions on the subpoena at issue. First, the Court finds that the subpoena is not, as Kimberlite contends, narrowly constructed to ask "only for information sufficient to identify the individual who used the IP address 71.135.177.158 during the times in which the

initial two email break-ins occurred." Opp'n at 4. To the contrary, the subpoena also seeks billing information. [*9] The Court does not find such information to be necessary for Kimberlite's stated purpose, and it therefore will not require AT&T to produce billing information in response to the subpoena at this time. Kimberlite should be able to identify the Doe defendants by using "the name and address of the owner of the account [and] the name and address of all persons listed on the account." If, however, such information proves to be insufficient, Kimberlite may seek leave of court to conduct further discovery on AT&T.

Second, the Court finds that notice to the IP address holders "is required in the interest of fairness and pursuant to *Rule 45(c)(3)(A)(iii) and (iv)*, which provide that a subpoena may be quashed or modified if it requires disclosure of privileged or 'other protected matter,' or if it subjects a person to undue burden. Given the privacy . . . interests that inhere in the records sought, this Court has the authority under the Federal Rules to condition the subpoena on consumer notice and an opportunity to be heard." *UMG Recordings, Inc., 2006 U.S. Dist. LEXIS 32821, 2006 WL 1343597, at *3.* While Doe's motion to quash indicates that at least one of the individuals whose names Kimberlite seeks has received notice [*10] of the subpoena served on AT&T, it is unclear whether other such individuals exist and, if so, whether they have been provided notice. Thus, AT&T shall ensure that all affected subscribers receive notice of the subpoena and have an opportunity to respond.

### CONCLUSION

For the reasons discussed above, Doe's motion to quash the subpoena served by Kimberlite on AT&T is hereby DENIED. However, to ensure notice to all affected subscribers, IT IS HEREBY ORDERED that:

1. Kimberlite shall serve a copy of this order on AT&T, which in turn shall serve copies of this order and the subpoena on all affected subscribers within seven calendar days of the date of service upon AT&T.

2. Any affected subscribers -- other than the Doe defendant who filed the motion to quash rejected by this order -- shall then have fifteen calendar days, calculated from the date of service upon them, in which to file a motion to quash with this Court.

3. If no motions to quash are received within the

fifteen-day period, then AT&T shall provide Kimberlite with the names and addresses of the owner and all persons listed on the account for the relevant IP address during the relevant time periods. AT&T shall comply with this order [*11] within ten calendar days following the expiration of the fifteen-day period discussed above.

**IT IS SO ORDERED.**

Dated: 06/02/08

/s/ Thelton E. Henderson

THELTON E. HENDERSON, JUDGE

UNITED STATES DISTRICT COURT



**LAFACE RECORDS, LLC, a Delaware limited liability company; ATLANTIC RECORDING CORPORATION, a Delaware corporation; BMG MUSIC, a New York general partnership; CAPITOL RECORDS, INC., a Delaware corporation; ELEKTRA ENTERTAINMENT GROUP, INC., a Delaware corporation; INTERSCOPE RECORDS, a California general partnership; MAVERICK RECORDING COMPANY, a California joint venture; PRIORITY RECORDS, LLC, a California limited liability company; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; UMG RECORDINGS, INC., a Delaware corporation; and WARNER BROS. RECORDS, INC., a Delaware corporation, Plaintiffs, -v- DOES 1 - 5, Defendants.**

**Case No. 2:07-cv-187**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

*2007 U.S. Dist. LEXIS 72225*

**September 27, 2007, Decided
September 27, 2007, Filed**

**SUBSEQUENT HISTORY:** Motion denied by *Laface Records, LLC v. Does 1 - 5, 2008 U.S. Dist. LEXIS 13638 (W.D. Mich., Feb. 22, 2008)*

**COUNSEL:** [*1] For Laface Records LLC, A Delaware limited liability company, Atlantic Recording Corporation, A Deleware Corporation, BMG Music, A New York general partnership, Capitol Records Inc., A Delaware corporation, Elektra Entertainment Group Inc., a Delaware corporation, Interscope Records, a California general partnership, Maverick Recording Company, a California joint venture, Priority Records LLC, a California limited liability, Sony BMG Music Entertainment, a Delaware general partnership, UMG Recordings, Inc., A Delaware corporation, Warner Bros. Records Inc., A Delaware corporation, plaintiffs: Jason Randall Gourley, LEAD ATTORNEY, Soble Rowe & Krichbaum LLP, Ann Arbor, MI.

**JUDGES:** Paul L. Maloney, United States District Judge.

**OPINION BY:** Paul L. Maloney

**OPINION**

OPINION SUPPORTING ORDER GRANTING PLAINTIFFS' EX PARTE APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY

Plaintiffs, various members of the music recording industry, filed a complaint against five unknown individuals for copyright infringement. With the complaint, Plaintiffs filed an application for leave to take immediate discovery under *Federal Rules of Civil Procedure 26* and *45*. (Dkt. No. 2).

Plaintiffs allege the five unknown Defendants used peer-to-peer [*2] (P2P) online file sharing systems to download or distribute Plaintiffs' copyrighted music. Plaintiffs have identified the computer used by each of the five defendants for the infringing activities by eleven

digit Internet Protocol (IP) address. Furthermore, Plaintiffs have provided a list of some of the songs that were improperly downloaded or distributed at each IP address. (Exhibit A to complaint). Plaintiffs allege Defendants have illegally downloaded or distributed hundreds of files each and, in one case, over 1700 files. (Exhibit A to complaint). The IP addresses were distributed by Northern Michigan University (NMU), the third party internet service provider (ISP). Plaintiffs request leave to subpoena information from NMU identifying Defendants.

## I. DISCOVERY RULES

A party may not seek discovery from any source before the parties have conferred as required by *Rule 26(f)*. *Fed. R. Civ. P. 26(d)*. Some courts have held that a court, under its broad discretion to manage discovery, may order expedited discovery prior to a *Rule 26* hearing upon a showing of good cause. *Qwest Communs. Int'l Inc. v. Worldquest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003)*; *Pod-ners, LLC v. N. Feed & Bean of Lucern LLC, 204 F.R.D. 675, 676 (D. Colo. 2002)*. [*3] Within the Sixth Circuit, this Court has found no published cases addressing this proposition of law, although there are several unpublished cases. *See e.g. In re Paradise Valley Holdings, Inc., No. 03-34704, 2005 Bankr. LEXIS 2951, 2005 WL 3841866 (Bankr. E.D. Tenn. Dec. 29, 2005)* and *Whitfield v. Hochsheid, No. C-1-02-218, 2002 U.S. Dist. LEXIS 12661, 2002 WL 1560267 (S.D. Ohio 2002)*. This Court notes the pending changes to *Rule 26(d)* specifically authorize discovery prior to a *Rule 26* hearing "by court order." *Fed. R. Civ. P. 26(d)(1)* (proposed amendment effective Dec. 1, 2007 absent contrary Congressional action). This Court finds the reasoning in *Qwest* persuasive and adopts the holding. Plaintiffs have been able to establish good cause in situations involving requests for a preliminary injunction and where the moving party alleges infringement. (citations omitted). *Qwest, 213 F.R.D. at 419*.

A number of district courts have found good cause to permit expedited discovery where the recording industry has IP addresses for individuals who have illegally distributed or downloaded music, but do not have the name of the person whose computer was assigned that address. *See Capitol Records, Inc. v. Doe,* No. 07-cv-1570, 2007 WL 2429830 (S.D. Cal. Aug. 24, 2007) [*4] (granting subpoena for information from University of California, San Diego); *Warner Bros., Records Inc. v.*

*Does 1-4, No. 2:07-cv-424, 2007 U.S. Dist. LEXIS 48829, 2007 WL 1960602 (D. Utah July 5, 2007)* (granting subpoena for information from Off Campus Telecommunications); *Warner Bros. Records, Inc. v. Does 1-20, No. 07-cv-1131, 2007 U.S. Dist. LEXIS 41175, 2007 WL 1655365 (D. Colo. June 5, 2007)* (granting subpoena for information from Quest Communications); *Arista Records LLC v. Does 1-9, No. 07-cv-628, 2007 U.S. Dist. LEXIS 25191, 2007 WL 1059049 (D. Colo. April 4, 2007)*. Courts typically find good cause based upon (1) allegations of copyright infringement, (2) the danger that the ISP will not preserve the information sought, (3) the narrow scope of the information sought, and (4) the conclusion that expedited discovery would substantially contribute to moving the case forward. *See e.g. Capital Records, Inc.* 2007 WL 2429830 at *1. Plaintiffs have also provided this Court with copies of fourteen orders issued over the past two years by district courts within the Sixth Circuit permitting expedited discovery under almost identical circumstances. (Exhibit B to memorandum).

Plaintiffs have not acknowledged that courts occasionally deny similar requests. Based on the authority [*5] cited above, this Court agrees with Plaintiffs that discovery to allow the identity of "Doe" defendants is "routine." (Plaintiffs' memorandum in support at 5). However, this Court would be remiss if it did not discuss authority counter to Plaintiffs' request. In *Capital Records, Inc. v. Does 1-16,* No. 07-485, 2007 WL 1893603 (D. N.M. May 24, 2007), the court denied an identical request to issue a subpoena for information from the University of New Mexico. The court cited privacy concerns of the individuals whose names were sought and the plaintiff's inability to identify an irreparable harm as damages could easily cure any alleged copyright infringement. *Id.* at *1. Two circuit courts have rejected subpoenas sought by the recording industry under the Digital Millennium Copyright Act (DMCA). *Recording Indus. Ass'n v. Charter Communs., Inc. (In re Charter Communs., Inc.), 393 F.3d 771 (8th Cir. 2005). Recording Indust. Ass'n of America, Inc. v. Verizon Internet Services, Inc., 359 U.S. App. D.C. 85, 351 F.3d 1229 (D.C. Cir. 2003)*. In both cases the courts concluded the ISP was only a conduit for file sharing in P2P systems and that conduit ISPs were not one of the types of ISPs for which subpoenas could be issued. *See also Recording Indus. Ass'n of Am.v. Univ. of N.C. at Chapel Hill, 367 F.Supp. 2d 945 (M.D. N.C. 2005)*. [*6] This Court is also aware that the recording industry has

sought subpoenas under the Cable Communication Policy Act (CCPA). *Interscope Records v. Does 1-7, 494 F.Supp. 2d 388 (E.D. Va. 2007)* (denying request for subpoena for information from William and Mary College under CCPA and DMCA); *UMG Recordings, Inc. v. Does 1-4, No. 06-652, 2006 U.S. Dist. LEXIS 32821, 2006 WL 1343597 (N.D. Cal. March 6, 2006)* (finding it unnecessary to decide the request under the CCPA and ordering the ISP to provide its subscribers with a copy of the subpoena before releasing the information, a protection which would be consistent with both the provisions of the CCPA and *Rule 45*)..

The provisions and guidelines for issuing a subpoena are found under *Fed. R. Civ. P. 45. Rule 45* permits persons subject to a subpoena to file a motion to quash or modify the subpoena on various grounds. *Fed. R. Civ. P. 45(c)(3)(A)*. Two courts have upheld subpoenas issued under remarkably similar circumstances. *See Elektra Entm't Group, Inc. v. Does 1-9, No. 04-cv-2289, 2004 U.S. Dist. LEXIS 23560, 2004 WL 2095581 (S.D. N.Y. Sept. 8, 2004)* (upholding subpoena as not overburdening rights under the *First Amendment*) and *Sony Music Entm't Inc. v. Does 1-40, 326 F.Supp. 2d 556 (S.D. N.Y. 2004)* [*7] (finding that P2P file sharing is entitled to some level of *First Amendment* protection, but that the balance of interests weighed in favor of the subpoena because (1) plaintiff made a prima facia claim of copyright infringement, (2) the discovery request was sufficiently specific, (3) there was an absence of alternative means of obtaining the information, (4) there was a need for the information in order to pursue the action, and (5) there was only a minimal expectation of privacy under the ISP's terms of service).

## II. ANALYSIS

Plaintiffs argue P2P networks allow users to distribute and download millions of music files every month in violation of copyright laws. Plaintiffs assert good cause for this Court to issue a subpoena because (1) they have alleged a prima facia claim of copyright infringement, (2) ISPs typically retain activity logs for a limited period of time, (3) the discovery request is narrowly tailored, and (4) the information is necessary to move the case forward. Plaintiffs also request this Court clarify that the subpoena would not interfere with NMU's

obligations under the Family Educational Rights and Privacy Act, *20 U.S.C. 1232g* (FERPA). Plaintiffs intend to serve [*8] a subpoena on NMU requesting documents that would identify each Defendant's true name, address (current and permanent), telephone number, email address, and Media Access Control (MAC) address.

This Court finds Plaintiffs have established good cause for departing from the usual course of discovery. Specifically, this Court finds (1) Plaintiffs have alleged copyright infringement, (2) there is a possibility that the ISP might delete or otherwise destroy the activity logs which are necessary to identify the individuals who have been downloading or distributing music files, (3) the discovery request is narrowly tailored, and (4) the identity of the individuals is necessary to move the case forward and without this information, Plaintiffs would not be able to determine the identities of Defendants.

This Court declines to find that the subpoena is consistent with Northern Michigan University's obligations under FERPA. The issue has not been briefed, it is unnecessary for this order, and NMU should be afforded an opportunity to speak on the issue if it elects to do so.

This Court also finds merit in the District Court of New Mexico's concern for the privacy of the various individuals who may [*9] be identified. This Court agrees it would be preferable for PLAINTIFFS to request the information from the ISP *prior* to filing this request in an effort to secure the information without resort to the courts. Therefore, this Court **GRANTS** PLAINTIFFS' Application for Leave to Take Immediate Discovery (Dkt. No. 2), **WITH MODIFICATIONS.** As the application was brought ex parte, both the ISP and the individuals who may be implicated should have an opportunity to move to quash or modify the subpoena. An order consistent with this opinion has been contemporaneously filed with this opinion.

Date: September 27, 2007

/s/ Paul L. Maloney

United States District Judge



**BRYAN LAMAR, Plaintiff, v. OFFICER J.B. HAMMEL, et al., Defendants.**

**Civil No. 08-02-MJR-CJP**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS**

*2008 U.S. Dist. LEXIS 9774*

**February 11, 2008, Decided**
**February 11, 2008, Filed**

**COUNSEL:** [*1] For Bryan Lamar, Plaintiff: Blake Horwitz, LEAD ATTORNEY, Law Offices of Blake Horwitz. Chicago, IL.

**JUDGES:** Clifford J. Proud, U. S. MAGISTRATE JUDGE.

**OPINION BY:** Clifford J. Proud

**OPINION**

**ORDER**

**PROUD, U.S. Magistrate Judge:**

Before the Court is plaintiff Bryan Lamar's ex parte, "emergency" motion to compel defendant Jackson County to release the names of the officers and employees who came into contact with plaintiff on February 12-13, 2006 or, in the alternative, the attendance sheets, work logs and any and all other documents that would identify the those who came in contact with plaintiff and/or were working at the Jackson County holding facility from 3:00 p.m. on February 12, 2006, to 12:00 p.m. on February 13, 2006. **(Doc. 10).** The subject motion was filed at 4:30 p.m. on Friday, February 8, 2008. The statute of limitations period is about to run out, so plaintiff requests the requested information be provided by no later than 3:00 p.m. on Monday, February

11, 2008-- today.

A review of the record reveals that this civil rights action was initiated January 3, 2008. **(Doc. 1).** The City of Carbondale and four police officers were named as defendants and all claims pertained to an alleged false arrest and use of excessive [*2] force. On February 5, 2008--apparently before service was effected upon any of the original defendants-- plaintiff filed an amended complaint adding an additional police officer. Jackson County and "unknown Jackson County officers" as defendants. **(Doc. 7).** In relevant part, the amended complaint alleges that the Jackson County officers used excessive force against plaintiff. The Jackson County officers are not named in the false arrest claim, but oddly they are included in an overarching conspiracy claim that appears to encompass both the false arrest claim and the excessive force claim.

Without deciding whether plaintiff has complied with *Bell Atlantic Corp. v. Twombly, U.S. ,127 S.Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007),* it is observed that the complaint and amended complaint are "thin," in that only the names of the defendants-- some of which are unknown-- the date of the events at issue and the legal claim are set forth. Plaintiff's motion reveals:

> On February 12, 2006, Plaintiff was arrested by City of Carbondale police officers and transported to the holding

facility in Jackson County. During his stay at the Jackson County holding facility, Plaintiff suffered injury at the hands of officers [*3] for the City of Carbondale and Jackson County."

**(Doc. 10, p. 1).**

The subject motion was filed three days after amendment of the complaint, apparently before service was effected upon any of the defendants, or at least before any of the defendants entered an appearance in this action. As previously noted, the motion is ex parte. However, correspondence attached to the motion reflects plaintiff's counsel has attempted to informally obtain the requested information from the City Attorney for Carbondale, who indicated the defense would be handled by outside counsel, outside counsel for the City, and the Jackson County States Attorney's Office, which indicated an insurance defense firm would represent the County. **(Docs. 10-2 and 10-3).**

Plaintiff premises his emergency motion to compel on *Federal Rule of Civil Procedure 37*. Although *Rule 37* pertains to compelling discovery, that rule is clearly inapplicable to this situation, as it requires notice to all parties and affected persons, and a failed, formal discovery request. The Federal Rules of Civil Procedure do not specifically provide for discovery in the aid of pleading. *Alston v. Parker, 363 F.3d 229, 236 (3rd Cir. 2004)*. In fact, *Rule 26(d)(1)* [*4] states that a party may not seek discovery from any source before the *Rule 26(f)* discovery conference. Nevertheless, *Rule 26(f)* provides that the general prohibition may be overcome by court order, and the Courts broad power over discovery has been found sufficient to permit authorization of discovery before a *Rule 26(f)* conference in order to aid in the identification of unknown defendants. *See Fed.R.Civ.P. 26(b)(2)* **and** *Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)*. Therefore, the Court does have authority to entertain plaintiff's motion.

In *Gillespie v. Civiletti, 629 F.2d 637(9th Cir. 1980)*, a pro se plaintiff's complaint was dismissed in its entirety, even though there was a pending discovery request that could have lead to discovery of the identities of "John Doe" defendants, who could possibly have fallen outside the dispositive ruling. The Court of Appeals for the Third Circuit stated, " the plaintiff should be given an opportunity through discovery to identify the unknown

defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id. at 642*. In *Gillespie,* some defendants had entered [*5] their appearances in the case, and formal discovery was underway; moreover, there was no mention of a looming statute of limitations deadline. Still, this Court recognizes that a consequence of the Rule 8 notice pleading standard is that names, facts and details must be flushed out via discovery. *See Swierkiewicz v. Sorema, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)*.

*Ortiz-Rivera v. Municipal Government of Toa Alta, 214 F.R.D. 51 (D. Puerto Rico 2003)*, presented a situation where the summons and complaint had not been served, but the plaintiff took a deposition without authorization of the district court. That court observed that, while the court has discretion to permit discovery outside the timing prescribed by *Rule 26(d)(1)*, "only the most obviously compelling reasons are sufficient to justify a departure from the rule. *Ortiz-Rivera, 214 F.R.D. at 54*. No such reasons were found in that instance.

Recently, in *Vance v. Rumsfeld, No. 06-C-6964, 2007 U.S. Dist. LEXIS 94061, 2007 WL 4557812 (N.D. Ill. Dec. 21, 2007)*, before any defendants had entered the case, the plaintiffs asked U.S. District Judge Milton I. Shadur for leave to conduct expedited discovery to identify unknown defendants. The case pertained to allegations of unconstitutional [*6] actions by United States government and/or military personnel and/or contractors in Iraq. The United States entered a special appearance at a hearing on the motion. At that juncture, there was more than one year left before the statute of limitations period would lapse, but Judge Shadur had concerns that the period would lapse before formal discovery got underway and permitted discovery aimed at identifying the unknown defendants. *Id 2007 U.S. Dist. LEXIS 94061 [WL] at *3*. Initial efforts failed to obtain the information and the government estimated another 60 days would be needed, and the government later balked at the whole arrangement. A subsequent motion for expedited, limited discovery was directed to U.S. Magistrate Judge Arlander Keys; at that juncture approximately six months remained before the limitations period was set to run out. *Id 2007 U.S. Dist. LEXIS 94061 [WL] at *4*. The government questioned whether plaintiffs had met their burden of showing that expedited discovery was warranted, and further asserted that

difficulties conducting discovery in a war zone outweighed plaintiff's statute of limitations concerns. Judge Keys granted leave to conduct expedited discovery, noting that the government had never denied it possessed the information [*7] needed and had previously projected that only 60 days would be needed to secure that information. *Id 2007 U.S. Dist. LEXIS 94061 [WL] at *4-*6.*

There is no set test or criteria for deciding whether early discovery is warranted, but certainly fairness to all concerned must be a paramount concern. *See Merrill Lynch, Pierce, Fenner & Smithh v. O'Connor, 194 F.R.D. 618 (N.D. Ill. 2000)* (declining to adopt the test used in *Notaro v. Koch, 95 F.R.D. 403 (S.D. N.Y. 1982)*), which employed criteria similar to that used for a temporary restraining order, and requiring a causal connection between expedited discovery and the avoidance of irreparable harm). This Court, as in *Gillespie v. Civiletti,* and like Judges Shadur and Keys in *Vance v. Rumsfeld,* will rely on considerations of need and fairness. The situation at bar has an urgency that not present in the aforementioned cases. A ruling on this motion, investigation and production of the requested information must all occur within a span of approximately seven hours. Plaintiff based the motion on a clearly inapplicable procedural rule, failed to offer any other legal authority and offered no indication regarding the feasibility of his request. Consequently, the Court has had [*8] to waste needless hours between 4:30 p.m. Friday, February 8th and 8:00 a.m. Monday, February 11, 2008, researching this extremely unusual situation.

Based on the limitations period alone, the need is apparent, although the relation-back provisions of *Rule 15* could *possibly* permit the late addition of defendants whose identities are not learned until after the limitations period has ended.

Plaintiff's need may be clear, but considerations of fairness and practicality are compelling. No defendant has entered an appearance, and service of the complaint appears to have not even been completed. The information is sought from a governmental entity, and there is no suggestion that the information sought is readily obtainable. When time is obviously this crucial, it would have behooved plaintiff to have filed the subject

motion on February 5, 2008, when the amended complaint was filed.

The discovery request, as phrased in the motion is overly broad and ambiguous. As previously noted, the amended complaint and the motion present somewhat conflicting factual scenarios. Neither the complaint, nor the amended complaint, nor the motion so much as sketch out what allegedly occurred. The notice pleading [*9] standard may save a vague complaint, but it is axiomatic that a discovery request cannot cast such an amorphous and broad net. How can Jackson County be expected to quickly respond to plaintiff's request to name the officers and employees "who came in contact with plaintiff" when it is unknown what allegedly occurred, and without a fair amount of inquiry? Plaintiff's alternate request for the "attendance sheets, work logs and *any and all other documents*" that would identify the those who were working at the Jackson County holding facility is overly broad and burdensome. If the Court were to sua sponte narrow the request to just attendance records the search would perhaps be more feasible, but one must still question how Jackson County will identify who was (or appears to have been) involved in the incident at issue. [1] Plaintiff is asking for too much in far too short a time period. Unfortunately, this scenario illustrates one of the purposes for the limitations period-- to encourage diligence in the bringing of actions. *See Schweihs v. Burdick, 96 F.3d 917, 920 (7th Cir. 1996).* Plaintiff has not indicated that he was in any way impeded in filing this action earlier during the two years [*10] that have passed since the incident at issue.

1 *See Federal Rule of Civil Procedure 11(b).*

IT IS THEREFORE ORDERED that plaintiff Lamar's ex parte "Emergency Motion to Compel" (Doc. 10) is DENIED

DATED: February 11, 2008

s/ Clifford J. Proud

CLIFFORD J. PROUD

U. S. MAGISTRATE JUDGE



**ROBERT LEONE, Plaintiff, v. TOWANDA BOROUGH, et al., Defendants.**

**CIVIL ACTION NO. 3:12-0429**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

*2012 U.S. Dist. LEXIS 47594*

**April 4, 2012, Decided**
**April 4, 2012, Filed**

**SUBSEQUENT HISTORY:** Motion denied by *Leone v. Towanda Borough, 2012 U.S. Dist. LEXIS 91887 (M.D. Pa., July 3, 2012)*

**COUNSEL:** [*1] For Robert Leone, Plaintiff: Matthew C. Collins, Strassburger McKenna Gutnick & Gefsky, Pittsburgh, PA.

**JUDGES:** A. Richard Caputo, United States District Judge.

**OPINION BY:** A. Richard Caputo

**OPINION**

**MEMORANDUM**

Presently before the Court is Plaintiff Robert Leone's *Ex Parte* Motion for Leave to Conduct Expedited Discovery. (Doc. 2.) On March 15, 2012, Plaintiff filed the instant *ex parte* motion seeking a court order permitting discovery in advance of a *Rule 26(f)* conference. (Doc. 2.) Plaintiff asserts that early discovery is necessary to determine the identities of the Commanding Officer, "Trooper John Doe," and "Trooper Jane Doe" (collectively the "Unidentified Defendants") to ensure that the Unidentified Defendants are served within 120 days as required by *Fed. R. Civ. P. 4(m)*. (Doc. 3, 4.) Plaintiff argues that failure to serve within 120 days will

result in the dismissal of the Complaint without prejudice, but any attempt to re-file the Complaint would likely be barred by the statute of limitations, which may have expired the day after the Complaint was filed. (Doc. 3, 5.) Because the facts as presented by Plaintiff fail to establish good cause warranting the Court to engage in the inherently unfair practice of [*2] granting a motion *ex parte*, Plaintiff's request will be denied.

**I. Background**

Plaintiff initiated this action on March 7, 2012 alleging civil rights violations for events that occurred on March 8, 2010 and March 9, 2010. (Doc. 1.) Plaintiff alleges he was brutally beaten and assaulted by various employees of the Towanda Borough Police Department and the Pennsylvania State Police. (Doc. 1.) Eight days later, on March 15, 2012, Mr. Leone filed an *ex parte* motion requesting permission to conduct early discovery in advance of a *Rule 26(f)* conference. (Doc. 2.) In particular, Mr. Leone seeks discovery of the identities of the Unidentified Defendants and information relating to the Unidentified Defendants' involvement in the events described in the Complaint. (Doc. 2.) The basis for Mr. Leone's request for early discovery is set forth as follows:

> Plaintiff requires the identities of the Unidentified Defendants in order to ensure proper service. Plaintiff commenced this lawsuit on March 7, 2012, and has the

remaining 120-day period within which to accomplish service of process. Plaintiff's claims against the Unidentified Defendants are likely governed by Pennsylvania's two-year statute of limitations [*3] applicable to torts which has expired. Expedited discovery is necessary so that Plaintiff can serve process on the Unidentified Defendants within the time period prescribed by *Federal Rule of Civil Procedure 4(m)*. Although failure to serve process within this time period may result in a dismissal without prejudice, any attempt by Plaintiff to re-file the Complaint would be time-barred since the statute of limitations may have expired on March 8, 2012. Accordingly, it is critical that Plaintiff discover the identities of these individuals along with their involvement with the events described in the Complaint.

(Doc. 3.)

## II. Discussion

*Rule 26(d)(1) of the Federal Rules of Civil Procedure* provides:

> A *party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except* in a proceeding exempted from initial disclosure under *Rule 26(a)(1)(B)*, or when authorized by these rules, by stipulation, or *by court order.*

*Fed. R. Civ. P. 26(d)(1)* (emphasis added). Although *Rule 26* allows the Court to grant expedited discovery, "the Federal Rules of Civil Procedure offer little guidance as to when it is appropriate to authorize expedited and/or early discovery." [*4] *Kone Corp. v. ThyssenKrupp USA, Inc., No. 11-465, 2011 U.S. Dist. LEXIS 109518, 2011 WL 4478477, at *3 (D. Del. Sept. 26, 2011).*

As the Third Circuit has not adopted a standard for addressing expedited discovery requests, the Court will "look for guidance from other district court courts within the Third Circuit . . . ." *Loy v. Armstrong World Indus., Inc., 838 F. Supp. 991, 995 (E.D. Pa. 1993).* District

courts in the Third Circuit have applied two standards when considering motions for expedited discovery: an injunctive relief standard and a "good cause" standard. *See Kone Corp., 2011 U.S. Dist. LEXIS 109518, 2011 WL 4478477, at *3-*4.*

The more stringent injunctive relief standard requires the moving party to demonstrate:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Gucci Am., Inc. v. Daffy's, Inc., No. 00-4463, 2000 U.S. Dist. LEXIS 16714, 2000 WL 1720738, at *6 (D. N.J. Nov. 14, 2000)* (quoting *Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)).*

Alternatively, the less stringent [*5] "good cause" standard requires the party seeking discovery to show "good" cause for its motion, such that the request is "reasonable" in light of the circumstances. *See Kone Corp., 2011 U.S. Dist. LEXIS 109518, 2011 WL 4478477, at *4.* "Good cause is usually found where the plaintiff's need for expedited discovery, in consideration of the administration of justice, outweighs the possible prejudice or hardship to the defendant." *Fonovisa, Inc. v. Does 1-9, No. 07-1515, 2008 U.S. Dist. LEXIS 27170, 2008 WL 919701, at *10 n.22 (W.D. Pa. Apr. 3, 2008)* (citing *Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002)); see also Kone Corp., 2011 U.S. Dist. LEXIS 109518, 2011 WL 4478477, at *6* (applying a "good cause"/reasonableness standard to expedited discovery requests)*; Entm't Tech. Corp. v. Walt Disney Imagineering, No. 03-3546, 2003 U.S. Dist. LEXIS 19832, 2003 WL 22519440, at *4 (E.D. Pa. Oct. 2, 2003)* (applying a reasonableness standard to expedited discovery requests). Good cause has been found where a party seeks a preliminary injunction, where physical evidence may be consumed or destroyed thereby disadvantaging one of the parties, or where the case involves infringement or unfair competition claims. *See Fonovisa, 2008 U.S. Dist. LEXIS 27170, 2008 WL 919701, at *10 n.22.*

As the recent trend among district [*6] courts in the Third Circuit favors application of a "good cause" or reasonableness standard to resolve motions for expedited discovery, the Court will apply this standard to Plaintiff's motion.

Applying the "good cause" standard to Plaintiff's motion, the Court cannot find Plaintiff's request for expedited discovery reasonable in light of the circumstances with which the motion is presented to the Court. The Court recognizes the severity of the allegations set forth in Plaintiff's Complaint and Plaintiff's need for discovery of the identities of the Unidentified Defendants. [1]

> 1   Plaintiff is correct that discovery is routinely permitted to allow for identification of "Doe" defendants. However, the authority relied upon by Plaintiff, *see, e.g., Wakefield v. Thompson, 177 F.3d 1160 (9th Cir. 1999); Dean v. Barber, 951 F.2d 1210 (11th Cir. 1992),* does not address the discovery of "Doe" defendants in the circumstances presented here- on an *ex parte* motion to conduct expedited discovery.

However, the reasonableness of Plaintiff's expedited discovery request is greatly tempered by the circumstances with which the motion is before the Court. Indeed, *ex parte* motions are rarely justified. *See,* [*7] *e.g., Larin Corp. v. Alltrade, Inc., No. EDCV 06-01394, 2010 U.S. Dist. LEXIS 120537, 2010 WL 4394287, at *1 (C.D. Cal. Oct. 28, 2010).* An *ex parte* motion has been aptly described by the District Court for the Central District of California as follows:

> The expression "*ex parte* motion" is a term of art. In its pure form it means a request a party makes to the court without any notice to the other side. . . . *[E]x parte* motions are inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system.

*Mission Power Eng'g Co. v. Cont'l Cas. Co., 883 F. Supp. 488, 490-91 (C.D. Cal. 1995).* To justify *ex parte* relief, the *Mission Power* court suggests:

> First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, *it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect.. . . .* To show that the moving party is without fault, or guilty only of excusable neglect, requires more than a showing that the other party is the sole wrongdoer. *It is the creation* [*8] *of the crisis- the necessity for bypassing regular motion procedures- that requires explanation.*

*Id. at 492-93* (emphasis added). Thus, "*ex parte* applications are not intended to save the day for parties who have failed to present requests when they should have." *In re Intermagnetics Am., Inc., 101 B.R. 191, 193 (C.D. Cal. 1989).*

The Court agrees with the *Mission Power* court's reasoning that *ex parte* motions are so inherently unfair that such relief should be granted only in the rarest of circumstances. Accordingly, a party requesting *ex parte* expedited discovery pursuant to *Rule 26(d)* must provide a justifiable explanation of the urgency warranting *ex parte* relief, including facts demonstrating that the moving party is without fault, or that any neglect on the party's behalf is excusable, in order to obtain the requested relief. And, where a plaintiff seeks *ex parte* expedited discovery to ascertain the identities of "John Doe" defendants to prevent the expiration of the statute of limitations, the moving party should provide an explanation as to why the action could not have been commenced at an earlier time. Such an explanation is necessary to provide the court with sufficient information [*9] to determine whether *ex parte* relief is warranted for lack of fault or excusable neglect on behalf of the party. Granting *ex parte* expedited discovery solely on the basis that a plaintiff's claims may ultimately be barred by the statute of limitations, without requiring an adequate justification for the delay, would amount to an unmerited authorization to the party to disregard the Federal Rules of Civil Procedure and applicable limitations periods.

In this case, the "crisis" facing Plaintiff is that he will be unable to identify and serve the Unidentified Defendants within the time period prescribed by the Federal Rules of Civil Procedure. Plaintiff, however, presents no explanation for the creation of the "crisis."

That is, Plaintiff provides no justification why he waited until the day before the statute of limitations expired to file the Complaint when he was clearly aware that the identities of the Unidentified Defedants were unknown. [2]

> 2   The Court is aware that the *Fonovisa* court granted an *ex parte* application for expedited discovery. *See Fonovisa, 2008 U.S. Dist. LEXIS 27170, 2008 WL 919701. Fonovisa*, however, presented a situation unique from the facts here. There, the plaintiffs' *ex parte* application for [*10] expedited discovery was filed with the need to obtain discovery from the unidentified defendants' internet service provider, which was not a party to the action. *See 2008 U.S. Dist. LEXIS 27170, [WL] at *1*. Importantly, because the plaintiffs only had access to the unidentified defendants' internet protocol addresses, *ex parte* expedited discovery was mandated as there were no known defendants with whom the plaintiffs could confer, which would have prevented discovery from commencing. *See id.* Here, there are known Defendants with whom Plaintiff may confer and Plaintiff will therefore be able to identify the Unidentified Defendants during the course of non-expedited discovery with the known Defendants.

Thus, as Plaintiff has provided no explanation establishing that he is without fault or that his actions are the result of excusable neglect, the Court will not grant Plaintiff's motion *ex parte.* Any predicament Plaintiff faces relating to the statute of limitations on his claims against the Unidentified Defendants are a product of his tactical decision to commence this action the day before the statute of limitations expired. The Court cannot "save the day" for Plaintiff and manipulate the Federal Rules of Civil Procedure [*11] to this end.

**III. Conclusion**

For the above stated reasons, Plaintiff's *Ex Parte* Motion to Conduct Expedited Discovery will be denied.

An appropriate order follows.

April 4, 2012

Date

/s/ A. Richard Caputo

A. Richard Caputo

United States District Judge

**ORDER**

**NOW**, this 4th day of April, 2012, **IT IS HEREBY ORDERED** that Plaintiff Robert Leone's *Ex Parte* Motion for Leave to Conduct Expedited Discovery (Doc. 2) is **DENIED.**

/s/ A. Richard Caputo

A. Richard Caputo

United States District Judge



**LINDSEY & OSBORNE PARTNERSHIP, L.P., Plaintiff, v. DAY & ZIMMERMANN, INC., Defendant**

**Case No: 08-cv-2301-CM-DJW**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**

*2008 U.S. Dist. LEXIS 60333*

**July 22, 2008, Decided**
**July 22, 2008, Filed**

**COUNSEL:** [*1] For Lindsey & Osborne Partnership, L.P., Plaintiff: Scott A. Wissel, Thomas M. Martin, LEAD ATTORNEYS, Lewis, Rice & Fingersh, LC -- Kansas City, Kansas City, MO.

For Day & Zimmermann, Inc., Defendant: Melissa Ann Hoag Sherman, LEAD ATTORNEY, Lathrop & Gage, LC - OP, Overland Park, KS; William F. Ford, Jr., LEAD ATTORNEY, Lathrop & Gage, LC - KC, Kansas City, MO.

**JUDGES:** David J. Waxse, U.S. Magistrate Judge.

**OPINION BY:** David J. Waxse

**OPINION**

**MEMORANDUM AND ORDER**

On July 18, 2008, the Court held a telephone hearing on Plaintiff's Motion to Expedite Discovery and Memorandum in Support (doc. 4). Plaintiff Lindsey & Osborne Partnership, L.P. appeared through its counsel, Scott A. Wissel and Thomas M. Martin. Defendant Day & Zimmermann, Inc. appeared through its counsel, William F. Ford, Jr. At the conclusion of the telephone hearing the Court granted in part and denied in part Plaintiff's motion to expedite discovery. This Order memorializes the Court's ruling during the telephone hearing.

**I. BACKGROUND**

Plaintiff is in the business of storing and repairing empty railcars. Defendant is the current contractor-operator of the Kansas Army Ammunition Plant (the "KSAAP"). According to Defendant, the KSAAP is owned by the federal [*2] government and Defendant operates the KSAAP pursuant to a Facility Use Contract with the United States Army. Defendant alleges that the Facility Use Contract allows Defendant to sublease certain idle facilities at the KSAAP.

Plaintiff and Defendant entered into a lease agreement in September 1999 to sublease a railcar storage area at the KSAAP. The lease agreement provided for an initial term from October 1, 1999 to July 31, 2002, with five successive options of five years each.

Under Section 2914(a) of the Defense Base Closure and Realignment Act of 1990 (the "BRAC Act") as amended (Pub. L. 101-510; *10 U.S.C. § 2687* note) the Secretary of Defense is authorized to recommend military installations inside the United States for closure and realignment. [1] Six years after the execution of the lease agreement, on May 16, 2005, as part of its base realignment and closure recommendations, the Department of Defense proposed that the KSAAP and

certain other military facilities throughout the United States be closed. [2] This recommendation was subsequently approved by the President, debated in Congress, and eventually became law. On February 7, 2006, the Department of Defense issued a notice, pursuant [*3] to Section 2905(b)(7)(B)(ii) of the BRAC Act, providing a partial list of military installations closing or realigning pursuant to the 2005 Defense Base Closure and Realignment Report. [3] This list included the KSAAP. [4]

> 1   *See Base Closures and Realignments, 70 Fed. Reg. 28030, 28030 (May 16, 2005).*
> 2   *See id. at 28054.*
> 3   *See Base Closure and Community Redevelopment and Homeless Assistance Act; Base Realignments and Closures, 71 Fed. Reg. 6274 (February 7, 2006).*
> 4   *See id. at 6275.*

According to the BRAC Act, the Secretary of Defense is required to close all military installations recommended for closure and realign all military installations recommended for realignment. In anticipation of the impending closure of the KSAAP, Defendant claims that the Army did not renew the Facility Use Contract with Defendant, and that the Facility Use Contract will terminate on December 31, 2008 (although Defendant claims it is currently in negotiations with the Army and with the potential buyer of the KSAAP to allow Defendant to remain at the KSAAP after it is sold).

Defendant sent a letter to Plaintiff dated March 17, 2008, purporting to terminate the lease agreement effective December 31, 2008 based on the [*4] 2005 amendments to the BRAC Act and the subsequent decision to close the KSAAP. Plaintiff claims that the KSAAP is not scheduled for closure until September 15, 2011. Plaintiff argues that if Defendant is permitted to improperly terminate the lease agreement effective December 31, 2008, then Plaintiff will be required to provide contract termination notices to its customers on or before September 1, 2008.

On July 1, 2007, Plaintiff filed a motion for preliminary injunction requesting that the Court enjoin the Defendant from: (1) terminating the parties' lease agreement; (2) removing or evicting Plaintiff; and (3) interfering with Plaintiff's business activities or opportunities. That same day, Plaintiff also filed a motion to expedite discovery asking the Court to: (1) lift the stay of discovery pending a conference under *Fed. R. Civ. P. 26(f)*; and (2) allow written discovery and deposition discovery by all parties, including; (a) requiring Defendant to respond to any interrogatories, requests for production of documents, and/or requests for admissions within 10 business days of service of any such request; and (b) allowing interrogatories and document requests for such depositions [*5] and similar discovery on third parties possibly in possession of documents, information, and other records relevant to this action.

## III. ANALYSIS

As a general rule, discovery may not commence before the parties have conferred as required by *Rule 26(f) of the Federal Rules of Civil Procedure*. [5] "The court may, however, in the exercise of its broad discretion, alter the timing, sequence and volume of discovery." [6] Under *Fed. R. Civ. P. 26(d)*, the court is authorized to expedite discovery upon a showing of "good cause." [7] Good cause has been found in cases where the plaintiff seeks a preliminary injunction. [8] "A party that seeks expedited discovery in advance of a *Rule 26(f)* conference has the burden of showing good cause for the requested departure from usual discovery procedures." [9]

> 5   *Fed. R. Civ. P. 26(d).*
> 6   *Alpine Atlantic Asset Mgmt AG v. Comstock, Civ. A. No. 07-2595-JWL, 2008 U.S. Dist. LEXIS 16401, 2008 WL 618627, at * 1 (D. Kan. Mar. 3, 2008)* (citing *Qwest Comm'cs Int'l, Inc. v. WorldQuest, 213 F.R.D. 418, 418 (D. Colo. 2003)*).
> 7   *Koch Carbon, LLC v. Isle Capital Corp., No. 05-1010-MLB, 2006 U.S. Dist. LEXIS 36962, at *5 (D. Kan. Mar. 1, 2006)* (citing *Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd., 204 F.R.D. 675, 676 (D. Colo. 2002)*).
> 8   *See* [*6] *Pod-Ners, LLC, 204 F.R.D. at 676* (citing *Revlon Consumer Products Corp. v. Jennifer Leather Broadway, Inc., 858 F.Supp. 1268, 1269 (S.D.N.Y.1994), aff'd, 57 F.3d 1062 (2d Cir.1995)*).
> 9   *Alpine, 2008 U.S. Dist. LEXIS 16401, 2008 WL 618627, at *1* (citing *Qwest, 213 F.R.D. at 418*; *Pod-Ners, LLC, 204 F.R.D. at 676*; *Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 614 (D. Ariz. 2001)*).

Defendant cites *Don King Productions, Inc. v. Hopkins* for various factors a court should consider when determining whether good cause exists, including:

    (1) irreparable injury;

    (2) some probability of success on the merits;

    (3) some connection between the expedited discovery and the avoidance of the irreparable injury;

    (4) some evidence that the injury will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted;

    (5) whether the request is narrowly tailored given the time constraints; and

    (6) whether the movant could have avoided such restraints by acting prior to the request. [10]

The court in *Koch Carbon, Inc. v. Isle Capital Corp.* cited and applied some of the factors discussed in *Hopkins.* [11]

    10  *See Don King Productions, Inc. v. Hopkins, No. 04 Civ. 9705 (PKL), 2004 U.S. Dist. LEXIS 25917, 2004 WL 2997800, at *2 (S.D.N.Y. Dec. 23, 2004)* [*7] (cited with favor by *Koch Carbon, LLC v. Isle Capital Corp., Case No. 05-1010-MLB, 2006 U.S. Dist. LEXIS 36962, at *5-6 (D. Kan. Mar. 1, 2006)).*

    11  *See Koch Carbon, 2006 U.S. Dist. LEXIS 36962, at *5-6* (the court did not address the probability of Plaintiffs' likelihood of success on the merits).

While these factors do not provide a hard and fast test, they can assist the Court in determining whether good cause exists to expedite discovery. The Court has considered these factors, with the exception of Plaintiff's likelihood of prevailing on the merits, and finds that Plaintiff has shown good cause to expedite discovery.

**1. Irreparable Injury**

According to Plaintiff's memorandum in support of its motion for preliminary injunction, [12] if Defendant is permitted to terminate the lease agreement, Plaintiff will be required to send out contract termination notices to its own customers. As a result, Plaintiff claims it will suffer irreparable harm, including: (a) permanent deprivation of its interests in and rights to unique real property, (b) permanent loss of its customers, (c) permanent loss of all of the goodwill it has developed, (d) loss of its entire investment in its business, and (e) the [*8] complete and permanent destruction of its business operations at the property. The Tenth Circuit has recognized that loss of customers, loss of goodwill, and threats to a business's viability can constitute irreparable harm. [13] In an attempt to prevent Defendant from terminating the lease agreement, Plaintiff filed a motion for preliminary injunction. In order to prepare for the motion for preliminary injunction, Plaintiff claims it must conduct expedited discovery. The Court finds that Plaintiff could suffer irreparable harm if it is prevented from conducting expedited discovery in order to prepare for its preliminary injunction hearing.

    12  Plaintiff incorporated its Motion for Preliminary Injunction (doc. 2) and Memorandum in Support of its Motion for Preliminary Injunction (doc. 3) in its Reply in Support of Plaintiff's Motion to Expedite Discovery (doc. 15).

    13  *See e.g., Zurn Constructors, Inc. v. B.F. Goodrich Co., 685 F.Supp. 1172, 1181 (D. Kan. 1988).*

**2. Some Connection Between the Expedited Discovery and the Avoidance of the Irreparable Harm**

Plaintiff claims that if Defendant is permitted to terminate the lease agreement effective December 31, 2008, it will be required to send out [*9] contract termination notices to its own customers on September 1, 2008. Plaintiff filed a motion for preliminary injunction in order to stop Defendant from terminating the lease agreement and evicting Plaintiff. Plaintiff asks permission to conduct expedited discovery to allow Plaintiff an opportunity to obtain information to prepare for the hearing on the motion for preliminary injunction. In advance of the request for a preliminary injunction, Plaintiff argues that it must obtain depositions from representatives of Defendant, the local redevelopment authority and possibly the Army. In light of such allegations, the Court finds that there is a connection

between the expedited discovery and the avoidance of the irreparable harm.

3. **Evidence That the Injury Will Result Without Expedited Discovery Looms Greater Than the Injury That the Defendant Will Suffer if the Expedited Discovery is Granted**

Plaintiff claims that if it is not permitted to conduct expedited discovery, it will not be able to fully prepare for its preliminary injunction hearing and, thus, could lose its customers, its business, and its goodwill. On the other hand, it does not appear that Defendant will suffer any significant [*10] injury if Plaintiff is allowed to conduct expedited discovery. While the Defendant may suffer if Plaintiff is permitted to conduct expedited discovery without any limitations, the Court will limit or avoid such an injury by imposing certain limitations on the expedited discovery. Thus, the Court concludes that the evidence of the injury that Plaintiff will suffer if not permitted to conduct the expedited discovery looms greater than the injury that Defendant may suffer if the request for expedited discovery is granted.

4. **Narrowly Tailored Discovery**

Plaintiff claims that it would limit the proposed expedited discovery to the following topics:

(1) The parties' lease agreement, including the negotiation and termination of the lease agreement;

(2) The Facility Use Contract between the Defendant and the Army, including the negotiation and termination of the Facility Use Contract;

(3) The sale and/or transfer of the KSAAP to the KSAAP Local Redevelopment Planning Authority;

(4) Defendant's future operations at the KSAAP property and any negotiations or agreements related to such operations;

(5) The intended use of the rail system and Plaintiff's KSAAP facilities in the event Plaintiff is evicted [*11] from the KSAAP; and

(6) Defendant's motive for

acquiescing to the termination of the Facility Use Contract and the lease agreement.

The Court will further limit the proposed expedited discovery to the following type of discovery:

(1) Five depositions;

(2) Ten interrogatories;

(3) Ten requests for production of documents; and

(4) Three subpoenas.

Based on these limits, the Court concludes that the discovery is narrowly tailored given the time constraints.

5. **Whether Plaintiff Could Have Avoided Such Restraints by Action Prior to the Request for Expedited Discovery**

It appears that Plaintiff knew of Defendant's purported termination of the lease agreement around March 17, 2008 (the date of the termination letter). Plaintiff filed its complaint July 1, 2008. Plaintiff argues that it did not delay in pursuing this action. According to Plaintiff, before filing the motion for preliminary injunction, Plaintiff investigated whether the issue could be resolved without litigation, located counsel, and assisted in the preparation of the pleadings. The Court concludes that Plaintiff could not have avoided the need for expedited discovery by acting prior to its request for expedited discovery.

**IV. CONCLUSION**

For [*12] the foregoing reasons, the Court finds that good cause exists to grant in part Plaintiff's Motion to Expedite Discovery (doc. 4).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Expedite Discovery (doc. 4) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that both Plaintiff and Defendant may conducted the following expedited discovery: (1) five depositions, (2) ten interrogatories, (3) ten requests for production of documents, and (4) three

subpoenas. The party responding to the discovery request shall respond within twenty business days of service of the discovery request.

**IT IS FURTHER ORDERED** that the expedited discovery will be limited to the following topics: (1) the parties' lease agreement, including the negotiation and termination of the lease agreement; (2) the Facility Use Contract between the Defendant and the Army, including the negotiation and termination of the Facility Use Contract; (3) the sale and/or transfer of the KSAAP to the KSAAP Local Redevelopment Planning Authority; (4) Defendant's future operations at the KSAAP property and any negotiations or agreements related to such operations; (5) the intended use of the rail system and Plaintiff's KSAAP facilities [*13] in the event Plaintiff is evicted from the KSAAP; and (6) Defendant's motive for acquiescing to the termination of the Facility Use Contract and the lease agreement.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 22nd day of July 2008.

/s/ David J. Waxse

David J. Waxse

U.S. Magistrate Judge



## SHARE CORPORATION, Plaintiff, v. MOMAR, INC., RICHARD ARENSBERG, FRED BAYER, TED BERGER, WENDY BUTTREY, STEPHEN KUTI, ROD MILLER, LAWRENCE SMITH, and IRA WOREN, Defendant.

### Case No. 10-CV-109

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN

### 2010 U.S. Dist. LEXIS 24653

### February 26, 2010, Decided
### February 26, 2010, Filed

**SUBSEQUENT HISTORY:** Injunction denied by *Share Corp. v. Momar Inc., 2010 U.S. Dist. LEXIS 22608 (E.D. Wis., Mar. 11, 2010)*

**COUNSEL:** [*1] For Share Corporation, Plaintiff: Brian A Turner, Law Office of Brian Turner, Austin, TX; Mark F Foley, Susan E Lovern, von Briesen & Roper SC, Milwaukee, WI.

For Momar Inc, Defendant: Jonathan R Ingrisano, Mark E Schmidt, Rebecca K Mason, Godfrey & Kahn SC, Milwaukee, WI.

For Richard Arensberg, Ira Woren, Lawrence Smith, Rod Miller, Stephen Kuti, Wendy Buttrey, Ted Berger, Fred Bayer, Defendants: Brian R Smigelski, Molly E Hall, DeWitt Ross & Stevens SC, Brookfield, WI; Jonathan R Ingrisano, Godfrey & Kahn SC, Milwaukee, WI.

**JUDGES:** J. P. Stadtmueller, U.S. District Judge.

**OPINION BY:** J. P. Stadtmueller

**OPINION**

**ORDER**

The plaintiff, Share Corporation ("Share"), is a Wisconsin-based company that sells "speciality chemical solutions," such as disinfectants and cleaners. Share alleges that one of its competitors, Momar Inc. ("Momar"), and several of Momar's employees have engaged in some "dirty" business. Specifically, on February 9, 2010, the plaintiff filed a complaint in this court against Momar and its employees, Richard Arensberg ("Arensberg"), Ted Berger ("Berger"), Rod Miller ("Miller"), Ira Woren ("Woren"), Fred Bayer ("Bayer"), Wendy Buttrey ("Buttrey"), Stephen Kuti ("Kuti"), and Lawrence Smith ("Smith"), alleging [*2] that the defendants collectively violated state contract and tort law when they breached agreements the employees signed when they worked for the plaintiff. (Docket # 1). Three days later, Share opted to file a motion to expedite discovery in the case (Docket # 3) and a motion for a temporary retraining order or a preliminary injunction. (Docket # 4). Share claims that the motion to expedite discovery is necessary such that the plaintiff can "prepare for the temporary injunction hearing." (Pl.'s Mot. for an Order to Expedite Disc. 2). Having received briefs from both sides on the motion to expedite discovery, the court will now address the merits of that motion.

Share outlines the facts propelling its motion for expedited discovery in its original complaint, its brief to the court, and in an affidavit submitted by John Wright

("Wright"), the Senior Vice President of Sales for Share. In his affidavit, Wright notes that Share employed all of the defendants, excluding Momar, up until 2009. (Wright Aff. P 3). Four of the defendants, Bayer, Buttrey, Kuti, and Smith, were employed as sales representatives, selling Share's products in various parts of the United States. (Wright Aff. P 2-3). [*3] Share's sales representatives are trained by and report to "managers." Four former managers are named as defendants in this litigation: Arensberg, Berger, Miller, and Woren. (Wright Aff. P 3). At the commencement of their employment with Share, both the defendant managers and sales representatives signed agreements in which they pledged to keep certain trade secrets and information 1 confidential and to not solicit Share's customers or employees. 2 A majority of the defendants resigned their position with Share in the summer of 2009 and have since "all gone to work for" Momar. (Wright Aff. P 13). Wright asserts in his affidavit, that since joining Momar, the defendants have: (1) solicited sales from customers to whom they previously sold while employed at Share; (2) used or disclosed Share's confidential information; and (3) solicited employees of Share to join Momar. With this, the plaintiff has moved the court to allow discovery in this case to commence in order to substantiate the plaintiff's arguments to secure a preliminary injunction. (Docket # 3).

> 1   The agreement the employees signed include an exhausting list of information which Share alleges to be confidential, including Share's [*4] "product formulations, manufacturing processes, financial information, marketing and sales plans, materials developed for sales, marketing, promotion, and training." (Pl's Br. 3-4). Moreover, Wright's affidavit lists more information Share considers to be confidential such as, "the identify of the purchasing agents and buyers, the nature of the business, particular purchasing requirements and habits, stocking requirements, product applications, uses and preferences, prices paid for particular products, and practices and procedures of customers and prospective customers." (Wright Aff. P 8).

> 2   Specifically, the non-solicitation clauses included a provision that the employees for a period of one year following the end of their affiliation with Share would not "solicit business for chemical sales within his [or her] geographic region from any customers whom he [or she]

served while employed at Share, or who were served by persons working under his [or her] direct supervision or control and with whom he [or she] had direct contact as an employee of Share." Moreover, each manager agreed that for a period of three years following the end of their employment with Share they would not "solicit [*5] any employees of Share to work with him [or her in the chemical sales industry] or any [chemical sales] company with whom he [or she] was employed or with which he [or she] is affiliated."

*Fed. R. Civ. P. 26(d)* provides that "except in categories exempted from initial disclosure[s] . . . or when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any source before the parties have conferred as required by *Rule 26(f)*." Here, the parties have not had a Rule 26(f) conference, nor has there been any scheduling order. As such, Share may not commence discovery without the consent of the defendants or an order from this court. *See Fed. R. Civ. P. 26(f)(1); Fed. R. Civ. P. 16(b)(2).* Share has requested the court's permission to expedite discovery. (Docket # 3).

Neither the Federal Rules of Civil Procedure, nor its accompanying notes provide the court with any guidance regarding its authority to allow expedited discovery. However, as this court discussed in an order from September of last year, when a motion for a preliminary injunction is pending before the court the court's determination on whether expedited discovery is appropriate is guided [*6] by a "good cause" or "reasonableness" standard. *See Edgenet, Inc. v. Home Depot U.S.A., Inc., 259 F.R.D. 385, 387 n.2 (E.D. Wis. 2009)* (citing *Centrifugal Acquisition Corp. v. Moon, No. 09-C-327, 2009 U.S. Dist. LEXIS 56170, at *4 n.1 (E.D. Wis. May 6, 2009)).* The reasonableness standard allows expedited discovery when the need for the expedited discovery outweighs the prejudice to the responding party, based on the "entirety of the record to date and the reasonableness of the request in light of the surrounding circumstances." 3 *Edgenet, 259 F.R.D. at 387.* As expedited discovery is "not the norm," the plaintiff must make "some prima facie showing of the need for the expedited discovery." *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor, 194 F.R.D. 618, 624 (N.D. Ill. 2000).* The court must protect defendants from unfairly expedited discovery. *Notaro v. Koch, 95 F.R.D. 403, 405*

*(S.D.N.Y. 1982).*

> 3 Part of the reasonableness inquiry will also ask whether the discovery would "better enable the court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing." *Philadelphia Newspapers v. Gannett Satellite Info. Network, No. 98-CV-2782, 1998 U.S. Dist. LEXIS 10511, at *4 (E.D. Pa. July 15, 1998).* [*7] Moreover, the court notes that motions for expedited discovery are typically denied when the movant's discovery requests are overly broad." *Qwest Commc'ns Int'l Inc. v. Worldquest Networks, Inc., 213 F.R.D. 418, 420 (D. Colo. 2003)*

Here, Share has failed to establish the requisite "good cause" for expedited discovery. Upon a close examination of all of the documents Share has submitted, 4 the court can only conclude that all of the plaintiff's allegations are purely speculative at this stage of the litigation and do not justify court ordered discovery prior to any potential hearing on a preliminary injunction. Share has three substantive arguments to support the suspicions it alleges in its complaint. First, the plaintiff has submitted a list of customers who Share alleges have "been solicited" by some of the defendants in violation of agreements they had with Share. (Wright Aff. P 16). A list of customers, in and of itself, does not indicate that illicit solicitation might have occurred; it seems equally as likely to this court that the customers listed sought out the sales representatives to continue doing business with them, as Share's own complaint concedes the company's only connection [*8] with these customers was through its sales representatives. (Compl. P 17). Second, Share points to the fact that one of the defendants, Lawrence Smith, left Share on January 1, 2010, and joined Momar to show that Momar and the remaining defendants must have illicitly solicited Smith to join Share's competitor. (Wright Aff. P 16). However, the mere fact that Smith accepted employment with one of Share's competitors does not demonstrate a need for the court to authorize discovery at such an early stage of the litigation, as there is nothing in the record to indicate that Smith was solicited to work at Momar by Share's former employees. Finally, Share asserts that because the defendant sales representatives and managers worked for the plaintiff and are now employed by Momar in a similar capacity, they must be "using or disclosing Share's confidential information and trade secrets" for the benefit of

themselves or Momar. (Wright Aff. P 14). Again, such a claim is purely speculative and, while Share's allegation may prove to be true, expedited discovery, because of the burden it imposes on all parties, should not be used as a means to test claims that are wholly unsubstantiated. 5 Moreover, [*9] the plaintiff has not explained the need for the court to impose expedited discovery deadlines, as opposed to the typical path parties take prior to a preliminary injunction hearing with the parties agreeing on their own to a mutually acceptable discovery plan.

> 4 This includes Share's complaint and accompanying exhibits, Share's motion for a temporary restraining order/preliminary injunction, Share's motion for expedited discovery, and the John Wright's affidavit.
>
> 5 The court's comment is propelled by the fact that more than half a year has passed since Share's employees resigned from the company. Despite this sizable length of time, Share submitted little evidence to indicate that the defendants are acting in violation of the law. This delay also makes the court doubt Share's need to expedite the initial stages of this litigation.

Moreover, the court finds that the harm imposed on the defendants in this case in having to engage in the proposed expedited discovery plan would be significant. Share's proposed discovery plan is opened-ended and broad, allowing for: (1) no more than fifteen interrogatories within ten business days of service; (2) no more than twenty requests for production [*10] of documents within ten business days of service; and (3) depositions of all of the individual defendants within twenty business days from service. Share does not limit the discovery to any particular issues. Such an intense discovery process is particularly burdensome given that the individual defendants live in Georgia, New York, North Carolina, South Carolina, Delaware, and Vermont, respectively. (Compl. PP 2-10). Weighing the plaintiff's need for court ordered expedited discovery versus the burden such an order would impose on the defendants, the court concludes that the expedited discovery that has been proposed is inappropriate in this case and will deny the plaintiff's motion for expedited discovery without prejudice.

However, the court readily acknowledges the need for all parties to engage in some limited discovery in case there remains a need for a hearing on a preliminary

injunction after this order. [6] In fact, the court will not hold such a hearing if the parties have not engaged in some preliminary discovery, as the court refuses to become the forum in which to do the discovery. Going forward, the court strongly encourages the parties to engage in open and honest discussions [*11] to work out a mutually agreeable discovery plan in anticipation of a potential hearing on a preliminary injunction in this case. For now, however, the court declines to impose a broad expedited discovery plan, when the plaintiff has not demonstrated the need for such a course of action.

> 6   As such, the court warns the defendants that the current order is not an excuse to obstruct the discovery process before a potential preliminary injunction hearing. The court expects the defendant to heed its invitation to engage in discovery discussions with the plaintiff prior to

such a hearing or risk appropriate sanctions.

Accordingly,

**IT IS ORDERED** that plaintiff's motion for discovery (Docket # 3) be and the same is hereby **DENIED.**

Dated at Milwaukee, Wisconsin, this 26th day of February, 2010.

BY THE COURT:

/s/ J. P. Stadtmueller

J. P. Stadtmueller

U.S. District Judge


LexisNexis®

**SUZHOU PARSUN POWER MACHINE CO., Ltd., a foreign (Chinese) corporation, and MARS ELECTRIC, LLC, a Wisconsin limited liability company, Plaintiffs, -vs- WESTERN IMPORT MANUFACTURING DISTRIBUTION GROUP Ltd., a foreign (Canadian) corporation, SHELLEY ANNE HUDSON, and JOHN HUDSON, Defendants.**

Case No. 10-C-398

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN

*2010 U.S. Dist. LEXIS 86071*

**July 20, 2010, Decided**
**July 20, 2010, Filed**

**SUBSEQUENT HISTORY:** Claim dismissed by, Summary judgment granted by, Motion denied by, Injunction granted at *Suzhou Parsun Power Mach. Co. v. Western Import Mfg. Distrib. Group Ltd., 2012 U.S. Dist. LEXIS 24497 (E.D. Wis., Feb. 27, 2012)*

**PRIOR HISTORY:** *Suzhou Parsun Power Mach. Co., Ltd. v. Western Import Mfg. Distrib. Group Ltd., 2010 U.S. Dist. LEXIS 77355 (E.D. Wis., July 2, 2010)*

**COUNSEL:** [*1] For Suzhou Parsun Power Machine Co Ltd, Mars Electric LLC, Plaintiffs: Michael T Hopkins, Hopkins McCarthy LLC, Milwaukee, WI.

Shelley Anne Hudson, Defendant, Pro se, Nanaimo, BC Canada.

For John Fiorenza, Nianshi Han, Jian Xia, Liang Yang, Mars Electric LLC, Suzhou Parsun Power Machine Co Ltd, Counter Defendants: Michael T Hopkins, Hopkins McCarthy LLC, Milwaukee, WI.

**JUDGES:** HON. RUDOLPH T. RANDA, United States District Judge.

**OPINION BY:** RUDOLPH T. RANDA

**OPINION**

**DECISION AND ORDER**

Now before the Court is the plaintiffs' motion for expedited discovery. Two of the defendants, Western Import Manufacturing ("Western Import") and Shelley Anne Hudson, were served in British Columbia, Canada in early June. The third defendant, John Hudson, also apparently lives in Canada but has not been not served. Plaintiffs want expedited discovery to ascertain the location of Mr. Hudson for service.

"A party may not seek discovery from any source before the parties have conferred as required by *Rule 26(f)*, except in a proceeding exempted from initial disclosure under *Rule 26(a)(1)(B)*, or when authorized by these rules, by stipulation, or by court order." *Fed. R. Civ. P. 26(d)(1)*. The parties are not required to meet and confer until [*2] the Court orders a scheduling conference, and the Court does not proceed to scheduling until all of the parties have been served and appear in a

case. Therefore, the plaintiffs may not commence discovery at this time without consent of the defendants or an order from the Court. *Fed. R. Civ. P. 26(f)(1)*; *Fed. R. Civ. P. 16(b)(2)*.

The Court may grant a request for expedited discovery for good cause. *Sheridan v. Oak Creek Mortgage, LLC, 244 F.R.D. 520, 521 (E.D. Wis. 2007)* (collecting cases).[1] The Court must evaluate the "entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Id. at 522*. Relevant factors include: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. *In re Fannie Mae Derivative Litig., 227 F.R.D. 142, 142-43 (D.D.C. 2005)*.

> 1 Other cases apply a more stringent test that mirrors the factors for issuing a preliminary injunction, known as the *Notaro* test. *See Notaro v. Koch, 95 F.R.D. 403 (S.D.N.Y. 1982)*. [*3] This standard is inapplicable because the plaintiffs do not assert that they will suffer irreparable harm in the absence of expedited discovery. *Cf. Landwehr v. Fed. Deposit Ins. Co., No. 09-0716 (RMU), F. Supp. 2d , 2010 U.S. Dist. LEXIS 63599, 2010 WL 2572077, at \*2 (D.D.C. June 28, 2010)*; *Centrifugal Acquisition Corp. v. Moon, No. 09-C-327, 2009 U.S. Dist. LEXIS 56170, 2009 WL 1249294, at \*1 (E.D. Wis. May 6, 2009)*.

Plaintiffs argue that they should be allowed expedited discovery because it is the best way to obtain a current address for John Hudson. This may be true, but the plaintiffs do not request limited discovery directed towards finding John Hudson's address. Instead, plaintiffs want to commence discovery on the assumption that they

will eventually find John Hudson's address. Also, this matter was filed only 9 weeks ago on May 11. The parties' duty to meet and confer is not triggered until the Court signals its intent to issue a scheduling order, and this does not occur until all of the parties have appeared. Nothing in the federal rules requires the Court to act more quickly. *Fed. R. Civ. P. 16(b)(2)* (judge must issue the scheduling order "as soon as practicable, but in any event within the earlier of 120 days after any defendant [*4] has been served with the complaint or 90 days after any defendant has appeared"). This may seem circular because discovery cannot commence until Mr. Hudson is served, but again, the plaintiffs are not seeking limited discovery. If plaintiffs are having difficulty serving Mr. Hudson pursuant to the Hague Convention, *Fed. R. Civ. P. 4(f)(2)*, the federal rules allow service by alternative means. *Fed. R. Civ. P. 4(f)(3)*; *BP Products North Am. v. Dagra, 236 F.R.D. 270, 272 (E.D. Va. 2006)* (recognizing service by publication in a foreign country where other means have failed). Finally, Ms. Hudson is currently proceeding *pro se*, and Western Import has yet to appear by counsel. The Court is hesitant to allow expedited discovery against parties that are unrepresented by counsel.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** plaintiffs' motion for expedited discovery [D. 13] is **DENIED**.

Dated at Milwaukee, Wisconsin, this 20th day of July, 2010.

**SO ORDERED,**

*/s/ Rudolph T. Randa*

**HON. RUDOLPH T. RANDA**

**U.S. District Judge**



**TCYK, LLC, Plaintiff, v. DOES 1-87, Defendants.**

**No. 13 C 3845**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2013 U.S. Dist. LEXIS 145722*

**October 9, 2013, Decided**
**October 9, 2013, Filed**

**PRIOR HISTORY:** *TCYK, LLC v. Doe, 2013 U.S. Dist. LEXIS 95817 (N.D. Ill., July 10, 2013)*

**COUNSEL:** [*1] For TCYK, LLC, Plaintiff: Michael A. Hierl, LEAD ATTORNEY, Hughes Socol PIers Resnick & Dym Ltd, Chicago, IL; Todd Sheldon Parkhurst, Hughes Socol Piers Resnick & Dym Ltd., Chicago, IL.

**JUDGES:** John J. Tharp, Jr., United States District Judge.

**OPINION BY:** John J. Tharp, Jr.

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff TCYK, LLC, brings a complaint for copyright infringement against eighty-seven unnamed "John Doe" defendants[1] who, it alleges, unlawfully acquired and transferred the plaintiff's copyrighted motion picture, "The Company You Keep" (the "Movie"). The Court previously granted the plaintiff leave to subpoena the nonparty Internet Service Providers (the "ISPs") from which the Doe defendants obtain Internet access in order to discover the Doe defendants' true identities, prohibiting the plaintiff from publishing the identities of the Doe defendants in any way without the Court's leave. Now before the Court are three motions

by three defendants that seek to quash the subpoenas, sever and dismiss the defendants, and impose a protective order. For the reasons that follow, the motions are denied.

1 The plaintiff has voluntarily dismissed eight of the eighty-seven Doe defendants. *See* Dkts. 21, 23. None of the dismissed [*2] defendants filed any of the motions under consideration here.

**BACKGROUND**

The Doe defendants are currently known to the plaintiff only by the Internet Protocol ("IP") addresses assigned to them by their ISPs. The plaintiff issued third-party subpoenas to the ISPs requesting information sufficient to identify the true identity of each of the Doe defendants. Some of those defendants, after being notified of the subpoena by their ISP, have moved to quash the subpoenas or to sever and dismiss the Doe defendants as improperly joined. The following motions are before the Court:

o John Doe No. 74, IP address 98.212.180.132, moves to quash the subpoena and for a protective order on the grounds that the subpoena violates his or her privacy, is overbroad, would not lead to relevant or admissible information, and does not suitably verify the basis of the request. Doe No. 74 additionally argues

that it would violate his or her due process rights to be subject to discovery without having first been served with a complaint. Dkt. 16.

o Ashley Sierra, on behalf of IP address 71.239.76.10, moves to quash the subpoena because it violates *Illinois Supreme Court Rule 224*, which governs certain discovery procedures [*3] in Illinois state courts, and the Electronic Communications Privacy Act ("ECPA"), *18 U.S.C. §§ 2701-2703*, which prohibits disclosure of the contents of electronic communications except in some circumstances. Dkt. 18.

o John Doe No. 22, IP address 76.16.62.222, moves to sever and dismiss Does 2-87 because joinder is improper under the Federal Rules of Civil Procedure. Dkt. 19.

## DISCUSSION

The arguments asserted in these motions have been examined at length in other opinions issued by courts in this district and elsewhere. This Court's discussion is therefore brief.

### I. The BitTorrent Protocol

The plaintiff alleges that each of the defendants used the BitTorrent protocol to download and distribute its Movie. This Court described the BitTorrent protocol in an earlier order in this case. *See TCYK, LLC v. Does 1-87, 13 C 3845, 2013 U.S. Dist. LEXIS 95817, 2013 WL 3465186 (N.D. Ill. July 10, 2013)* (Dkt. 12). Other courts in this district have also explained how BitTorrent is used to download media. *See, e.g., Malibu Media, LLC v. John Does 1-6, 85 Fed. R. Serv. 3d 1187 (N.D. Ill. 2013)*; *Malibu Media, LLC v. Reynolds, 12 C 6672, 2013 U.S. Dist. LEXIS 31228, 2013 WL 870618 (N.D. Ill. Mar. 7, 2013)*.

To briefly summarize, BitTorrent is a software protocol [*4] that facilitates peer-to-peer file sharing used to distribute large data files over the Internet. An initial file-provider (the "seeder") shares an initial file

(the "seed") with a torrent network. Other users ("peers") intentionally connect to the seed file to download it. Each peer receives a segment (a "piece") of the file, then immediately becomes a source of that piece for other peers, relieving the seeder from having to send that piece in response to every new request. As additional peers request and receive pieces of the same file, each user becomes a part of the network from which the file can be downloaded. The group of seeders and peers uploading and downloading an identical file is called a "swarm." After a peer downloads the whole file, it continues to transmit pieces to other users until it disconnects, after which the pieces can continue to circulate throughout the swarm. The plaintiff alleges that each of the Doe defendants participated in the same BitTorrent swarm to download and distribute its Movie.

## II. Motions to Quash and Motion for a Protective Order

In federal court, procedural issues involving subpoenas are governed by *Federal Rule of Civil Procedure 45*. *Rule 45(a)* [*5] allows the issuance of subpoenas to command a recipient to produce documents in one's "possession, custody, or control." Courts must quash a subpoena that (1) fails to allow a reasonable time for compliance, (2) requires a nonparty to travel more than 100 miles, (3) "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or (4) "subjects a person to undue burden." *Fed. R. Civ. P. 45(c)(3)(A)*. When assessing whether a subpoena subjects a person to undue burden, it considers whether the "burden of compliance with it would exceed the benefit of production of the material sought." *Nw. Mem'l Hosp. v. Ashcroft, 362 F.3d 923, 927 (7th Cir. 2004)*. The party moving to quash bears the burden of showing that the subpoena falls into one of these impermissible categories. *Pac. Century Int'l, Ltd. v. Does 1-37, 282 F.R.D. 189, 193 (N.D. Ill. 2012)* (citing *Williams v. Blagojevich, No. 05 C 4673, 2008 U.S. Dist. LEXIS 643, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008))*.

Here, three defendants move to quash the subpoena that TCYK, LLC, has issued to their ISP. As a general rule, for a person to have standing to quash a subpoena issued to a nonparty, that subpoena must implicate that [*6] person's "legitimate interests." *See United States v. Raineri, 670 F.2d 702, 712 (7th Cir. 1982)*. Courts in this district disagree on whether an anonymous defendant to a copyright infringement suit has standing to quash a

subpoena issued to his or her ISP. See *reFX Audio Software, Inc. v. Does 1-111, 13 C 1795, 2013 U.S. Dist. LEXIS 104664, 2013 WL 3867656, at *1 (N.D. Ill. July 23, 2013)*. This Court concludes that the defendants have at least a minimal privacy interest in the information requested by the subpoena, which includes their telephone numbers, email addresses, and Media Access Control (MAC) addresses. *See Sunlust Pictures, LLC v. Does 1-75, 12 C 1546, 2012 U.S. Dist. LEXIS 121368, 2012 WL 3717768 (N.D. Ill. Aug. 27, 2012)*; *Third Degree Films, Inc. v. Does 1-108, No. 11-3007, 2012 U.S. Dist. LEXIS 25400, 2012 WL 669055, at *2 (D. Md. Feb. 28, 2012)*. Accordingly, the Court is satisfied that they have standing.

One defendant argues that the subpoenas violate "*Supreme Court Rule 224*." The Court understands this as a reference to *Illinois Supreme Court Rule 224*, which governs pre-suit discovery subpoenas used in Illinois trial courts to help plaintiffs identify responsible persons and entities. The defendant's reliance on this rule is misplaced. *Rule 224* is merely [*7] "a tool for a party to use to obtain information as a precursor to the filing of a civil action" in an Illinois state trial court. *Alemayehu v. Boeing Co., 10 C 3147, 2010 U.S. Dist. LEXIS 94408, 2010 WL 3328278 (N.D. Ill. Aug. 18, 2010)*. Rule 224 procedures "have no applicability in federal court." *Bond v. Wright Med. Tech., Inc., 12-CV-597-DRH-DGW, 2012 U.S. Dist. LEXIS 87918, 2012 WL 2413051 (S.D. Ill. June 26, 2012)*. As the Court has explained, subpoena practice in federal court is governed by the Federal Rules of Civil Procedure. The Illinois Supreme Court Rules provide no basis for quashing the subpoenas here.

That defendant also argues that compliance with the subpoena would violate the Electronic Communications Privacy Act ("ECPA"), *18 U.S.C. § 2702(a)(1)*. Section *2702(a)(1)* of ECPA provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." The defendant's invocation of § *2702(a)(1)* is erroneous in this context, as other courts have explained. *See First Time Videos, LLC v. Does 1-500, 276 F.R.D. 241, 247-48 (N.D. Ill. 2011)*; *Patrick Collins, Inc. v. Does 1-11, 11-CV-01776-AW, 2011 U.S. Dist. LEXIS 128889, 2011 WL 5439045 (D. Md. Nov. 8, 2011)*. [*8] The subpoenas contested here do not seek the contents of communications, such as the emails at issue in the case the defendant cites, *In re Subpoena Duces Tecum to AOL, LLC, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008)*. Instead, these subpoenas seek the names, addresses, telephone numbers, email addresses, and MAC addresses of the subscribers associated with the IP addresses known to the plaintiff--information pertaining to customer records, not the contents of communications. ECPA restricts the disclosure of customer records in *18 U.S.C. § 2702(a)(3)*. Yet ECPA also provides an exception under which an ISP "may divulge a record or other information pertaining to a subscriber or other customer . . . to any person other than a government entity." *18 U.S.C. § 2702(c)(6)*. Thus, ECPA allows the disclosure of this type of customer information to non-government entities, such as the plaintiff in this case. The ECPA challenge to the subpoena therefore fails.

Another defendant argues that the subpoena is overbroad and will not lead to relevant or admissible information. The Court is not convinced. *Federal Rule of Civil Procedure 26(b)(1)* allows [*9] parties to "obtain discovery regarding any nonprivileged matter that is relevant to the claim or defense of any party--including the . . . identity and location of persons who know of any discoverable matter." The Rules do not require information sought to be admissible so long as it "appears reasonably calculated to lead to the discovery of admissible information." *Fed. R. Civ. Pro. 26(b)(1)*. Another court in this district explained in a similar context:

> It is not a wild assumption on Plaintiff's part that the subscriber may be the alleged infringer or may lead to the alleged infringer. Without connecting the IP address to a person, Plaintiff would have no way of prosecuting infringement of its claimed copyright. The Court will not prohibit this discovery because it is less than certain to identify the individual who Plaintiff really wants to find.

*Malibu Media, LLC v. John Does 1-49, 12-CV-6676, 2013 U.S. Dist. LEXIS 119100, 2013 WL 4501443, at *2 (N.D. Ill. Aug. 22, 2013)*; *see also Zambezia Film Pty, Ltd. v. Does 1-65, 13 C 1321, 2013 U.S. Dist. LEXIS 123414, 2013 WL 4600385, at *3 (N.D. Ill. Aug. 29, 2013)*; *reFX Audio Software, Inc. v. Does 1-111, No. 13 C 1795, 2013 U.S. Dist. LEXIS 104664, 2013 WL 3867656, at *2 (N.D. Ill. July 23, 2013)*. The fact that the

customer identified [*10] by the ISP in response to this subpoena may not be the infringer does not make the customer's identity irrelevant. The customer's identity may be a "useful starting point for identifying the actual infringer." *Malibu Media, LLC v. John Does 1-6, 85 Fed. R. Serv. 3d 1187*. The subpoena is calculated to lead to the identification of the infringer and will not be quashed just because the customer identified might eventually succeed in defending against the plaintiff's claim.

The defendant also argues that because the basis of the request has not been sufficiently verified, it would violate the defendants' due process rights to be subject to discovery without first being served with a complaint. *Federal Rule of Civil Procedure 26(d)* prohibits parties from seeking discovery "from any source" before the parties have conferred in accordance with *Rule 26(f)*, except when authorized by the Federal Rules of Civil Procedure, stipulation, or a court order. District courts have broad discretion to manage the discovery process. *See James v. Hyatt Regency Chicago, 707 F.3d 775, 784 (7th Cir. 2013)*. Courts "evaluate a motion for expedited discovery 'on the entirety of the record to date and the reasonableness [*11] of the request in light of all the surrounding circumstances.'" *Ibarra v. City of Chicago, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011)* (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor, 194 F.R.D. 618, 624 (N.D. Ill. 2000)*). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Fed. R. Civ. Pro. 26(b)(1)*. Good cause exists here because the plaintiff is unable to proceed without expedited discovery because it has no other way of identifying the defendants. *See TCYK, LLC v. Does 1-87, 2013 U.S. Dist. LEXIS 95817, 2013 WL 3465186, at *2*. To the extent that the defendant attacks the reliability or accuracy of the plaintiff's method of identifying the putative defendants' IP addresses, it may mount such challenges in the course of its defense. *See Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 242 (S.D.N.Y. 2012)* (noting that the true offender is often not the name listed on the ISP account). To the extent that the defendant might be suggesting that the subpoena imposes an undue burden, the argument fails. The undue burden referred to by *Rule 45* is the burden on the subpoenaed party. *See Malibu Media, LLC v. John Does 1-49, 2013 U.S. Dist. LEXIS 119100, 2013 WL 4501443, at *2* [*12] (citing *Malibu Media, LLC v. John Does 1-6, 85 Fed. R. Serv. 3d 1187*); *Malibu Media, LLC v. Reynolds, 2013 U.S. Dist. LEXIS 31228, 2013 WL 870618, at *6*. Here, any burden of answering the subpoena falls on the ISP, not the defendants. These arguments each having failed, the motions to quash are denied.

One defendant also seeks a protective order, claiming generally that his or her privacy interests would be violated if the ISP provided the requested information to the plaintiff. The Court notes that should the plaintiff wish to name this defendant in an amended complaint, it will be constrained, as is every attorney who practices in this Court, by *Rule 11(b)*, which states that an attorney submitting a filing to the court certifies that it is not "presented for any improper purpose, such as to harass" and that "the factual contentions have evidentiary support." *Fed. R. Civ. P. 11(b)*. Naming a defendant in violation of those certifications could subject the plaintiff to sanctions. *Fed. R. Civ. P. 11(c); see also Hard Drive Prods. v. Does 1-48, 11 CV 9062, 2012 U.S. Dist. LEXIS 82927, 2012 WL 2196038, at *6 (N.D. Ill. June 14, 2012)*. To further protect the defendants against potential embarrassment or error in this case, this Court previously [*13] barred the plaintiff from publishing their identities in any way without leave of the court. *See TCYK, LLC v. Does 1-87, 2013 U.S. Dist. LEXIS 95817, 2013 WL 3465186*. If individual defendants are later named in an amended complaint, they may then move to protect against the disclosure of their identities as appropriate. *See, e.g., Malibu Media, LLC v. Reynolds, 2013 U.S. Dist. LEXIS 31228, 2013 WL 870618, at *7*. The concerns the defendant expresses about harassment are purely hypothetical at this juncture. Should the plaintiff harass the Doe defendants after it obtains their contact information, the Court will consider their complaints and determine the appropriate remedies at that time. Without further information to shows why the protections already in place are insufficient to protect the defendants here, the request for a protective order is denied.

### III. Motion to Sever

One defendant argues that the defendants in this case are improperly joined and requests that Does 2 through 87 be severed and dismissed from the case. *Federal Rule of Civil Procedure 20(a)(2)* permits people to be joined "in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out [*14] of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Where the

permissive joinder requirements are not met, *Rule 21* gives courts the discretion to add or drop a party, or sever any claim against a party.

This Court has previously acknowledged that "[t]here is a split of authority nationally and within this district over whether it is appropriate to join in a single lawsuit many anonymous defendants who are alleged to have participated in a single BitTorrent swarm." *TCYK, LLC v. Does 1-87, 2013 U.S. Dist. LEXIS 95817, 2013 WL 3465186, at *3* (collecting cases); *Sunlust Pictures, LLC v. Does 1-75, 2012 U.S. Dist. LEXIS 121368, 2012 WL 3717768, at *3* (same). Substantial arguments exist on both sides of the split, but the Court is persuaded that joinder is appropriate here. The way that the BitTorrent protocol operates separates this case from the RIAA cases cited by the defendant. Even critics of mass joinder in copyright lawsuits acknowledge, "BitTorrent makes file sharing a cooperative endeavor." Sean B. Karunaratne, *The Case Against Combating Bittorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits, 111 Mich. L. Rev. 283, 290 (2012)*. [*15] "When the Doe defendants allegedly joined the swarm, they consented (implicitly, at least) both to download pieces of the Movie from other members of the swarm *and* to upload pieces of the Movie to other swarm participants." *TCYK, LLC v. Does 1-87, 2013 U.S. Dist. LEXIS 95817, 2013 WL 3465186, at *3*.

The complaint here alleges that each defendant "reproduced, distributed and offered to distribute [the Movie] among other [d]efendants" and that all defendants participated in "the same swarm," reproducing "the same seed file." Compl. ¶¶ 5, 14-15, Dkt. 1. The plaintiff characterizes the defendants' behavior as "collective and interdependent." *Id.* ¶ 14. The defendants allegedly participated in a swarm between May 1, 2013, and May 17, 2013. *See* Compl. Ex. B, Dkt. 1-1. To the extent that temporal proximity supports joinder, courts have held that a group of defendants who participated in the same swarm over comparable lengths of time may be joined. *See, e.g., Pac. Century Int'l v. Does 1-31, 11 C 9064, 2012 U.S. Dist. LEXIS 82796, 2012 WL 2129003, at *2*

*(N.D. Ill. June 12, 2012)* (joining defendants who allegedly participated in the same swarm for over one month). In light of these allegations, the claims against the defendants here arise from the same [*16] transaction or occurrence for the purposes of *Rule 20(a)*, and the defendant is mistaken to argue that the plaintiff fails to allege that the defendants downloaded the file from one another.

This case also satisfies the second requirement for permissive joinder by involving common questions of law and fact for all defendants. Here, those questions include whether the plaintiff is the copyright holder, whether copying that violates the Copyright Act has occurred, and whether participating in a BitTorrent swarm constitutes willful copyright infringement. *See Malibu Media, LLC v. John Does 1-6, 85 Fed. R. Serv. 3d 1187; Pac. Century Int'l v. Does 1-31, 2012 U.S. Dist. LEXIS 82796, 2012 WL 2129003, at *3; First Time Videos, LLC v. Does 1-76, 276 F.R.D. 254, 257-58 (N.D. Ill. 2011)*. The motion to sever is therefore denied. This does not foreclose future motions to sever. If individual defenses later overwhelm the case, or the Doe defendants are able to show that proceeding together will be inefficient or cause undue delay, the court retains broad discretion under *Rule 21* to sever such parties and proceed separately at that time. *See Malibu Media, LLC v. John Does 1-6, 85 Fed. R. Serv. 3d 1187*.

* * *

For the reasons set [*17] forth above, the motions to quash the subpoenas, sever and dismiss the defendants, and impose a protective order are denied.

Date: October 9, 2013

/s/ John J. Tharp, Jr.

John J. Tharp, Jr.

United States District Judge



**THE BICYCLE PEDDLER, LLC, a Colorado Limited Liability Company, Plaintiff, v. JOHN DOE 1, Defendant.**

**Civil Action No. 13-cv-00671-WJM-KLM**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

*2013 U.S. Dist. LEXIS 36936*

**March 18, 2013, Decided**
**March 18, 2013, Filed**

**PRIOR HISTORY:** *Bicycle Peddler, LLC v. Doe, 2013 U.S. Dist. LEXIS 51418 (D. Colo., Mar. 15, 2013)*

**COUNSEL:** [*1] For The Bicycle Peddler, LLC, a Colorado Limited Liability Company, Plaintiff: David John Stephenson, Jr., Rocky Mountain Thunder Law Firm, Golden, CO.

**JUDGES:** Kristen L. Mix, United States Magistrate Judge.

**OPINION BY:** Kristen L. Mix

**OPINION**

**ORDER**

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion for Leave to Take Limited Expedited Discovery Prior to *Rule 26(f)* Conference** [Docket No. 6; Filed March 15, 2013] (the "Motion"). In this copyright infringement action, Plaintiff alleges in the Complaint [#1] that Defendant John Doe 1, known to Plaintiff only by an Internet Protocol ("IP") address, has infringed on Plaintiff's copyrighted work by utilizing a computer protocol named "BitTorrent." *See generally Compl.* [#1].

In the present Motion, Plaintiff seeks leave to conduct expedited discovery by serving a subpoena on Defendant's Internet Service Provider ("ISP") so Plaintiff may learn Defendant's true identity. [#6] at 2.

While a party ordinarily may not seek discovery prior to conferring with all other parties, *Fed. R. Civ. P. 26(d)(1)*, the Court may allow expedited discovery on a showing of good cause. *Qwest Commc'ns Int'l, Inc. v. Worldquest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003)*. [*2] "Courts have found good cause for expedited discovery when physical evidence may be destroyed with the passage of time, in cases involving claims of infringement and unfair competition, and where the party requesting discovery seeks a preliminary injunction." *Kabyesiza v. Rodriguez*, No. 10-cv-00216-MSK-KLM, 2010 U.S. Dist. LEXIS 104834, 2010 WL 3923093, at *3 (D. Colo. Oct. 1, 2010) (unreported decision) (citations omitted). "In internet infringement cases, courts routinely find good cause exists to [permit issuance of] a *Rule 45* subpoena to discover a Doe defendant's identity, prior to a *Rule 26(f)* conference, where a plaintiff makes a prima facie showing of infringement, there is no other way to identify the Doe defendant, and there is a risk an ISP will destroy its logs prior to the conference." *UMG Recordings, Inc. v. Doe, No. C 08-1193 SBA, 2008 U.S. Dist. LEXIS 79087, 2008 WL 4104214, at *4 (N.D. Cal. Sept. 3, 2008)* (unreported decision) (citations omitted).

In this case, the Court finds that Plaintiff has demonstrated good cause for allowing expedited discovery for the limited purpose of identifying Defendant. As noted above, Defendant is known to Plaintiff only by an IP address. [#1] at 2. According to Plaintiff's allegations, Defendant [*3] unlawfully copied Plaintiff's registered work and redistributed copies of the work to the public by sale or other methods. [#1] at 9-10. Without the issuance of a subpoena at this stage, Plaintiff would have no other means of identifying Defendant. Accordingly,

IT IS HEREBY **ORDERED** that the Motion [#6] is **GRANTED**.

IT IS FURTHER **ORDERED** that Plaintiff may serve a third party subpoena pursuant to *Fed R. Civ. P. 45* on Defendant's ISP. The subpoena may require the production of only the following information: the true names, addresses, telephone numbers, and e-mail addresses associated with Defendant's IP address.

IT IS FURTHER **ORDERED** that a copy of this Order must be served along with any subpoena issued pursuant to it.

IT IS FURTHER **ORDERED** that the entity served with a subpoena issued pursuant to this Order shall have fourteen (14) days to file a motion seeking to quash the subpoena. Accordingly, any subpoena served pursuant to this Order must specify that the recipient entity has at least fifteen (15) days to respond with the required information.

IT IS FURTHER **ORDERED** that any information disclosed to Plaintiff in response to a subpoena issued pursuant to this Order may be used by Plaintiff [*4] solely for the purpose of protecting his rights under the claims for relief set forth in the Complaint [# 1].

Dated: March 18, 2013

BY THE COURT:

/s/ Kristen L. Mix

Kristen L. Mix

United States Magistrate Judge



**THERMAL SOLUTIONS, INC., Plaintiff, v. IMURA INTERNATIONAL U.S.A. INC., VITA CRAFT CORPORATION, AND MAMORU IMURA, AN INDIVIDUAL, Defendants**

**Case No: 08-CV-2220-JWL-DJW**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**

*2008 U.S. Dist. LEXIS 49509*

**June 26, 2008, Decided**
**June 26, 2008, Filed**

**SUBSEQUENT HISTORY:** Motion denied by, Motion granted by *Thermal Solutions, Inc. v. Imura Int'l U.S.A., Inc., 2008 U.S. Dist. LEXIS 77976 (D. Kan., Oct. 2, 2008)*
Related proceeding at *Hartford Fire Ins. Co. v. Vita Craft Corp., 2012 U.S. Dist. LEXIS 170984 (D. Kan., Dec. 3, 2012)*

**COUNSEL:** [*1] For Thermal Solutions, Inc., Plaintiff: Alicia E. Bodecker, James M. Armstrong, Michael J. Norton, Todd N. Tedesco, LEAD ATTORNEYS, Foulston Siefkin LLP- Wichita, Wichita, KS.

For Imura International U.S.A., Inc., Vita Craft Corporation, Defendants: Brian W. Fields, J. Bradley Leitch, Jason C. Parks, Robert O. Lesley, LEAD ATTORNEYS, Lathrop & Gage, LC - KC, Kansas City, MO.

**JUDGES:** David J. Waxse, U.S. Magistrate Judge.

**OPINION BY:** David J. Waxse

**OPINION**

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff Thermal Solutions, Inc.'s Motion to Allow Issuance of an Interrogatory Prior to *Rule 26(f)* Conference (the "Motion") (doc. 14). The Court has considered the Motion and the related pleadings and, for the reasons stated below, finds that the Motion should be granted.

**I. EXPEDITING DISCOVERY**

As a general rule, discovery may not commence before the parties have conferred as required by *Rule 26(f) of the Federal Rules of Civil Procedure*. [1] "The court may, however, in the exercise of its broad discretion, alter the timing, sequence and volume of discovery." [2] Under *Fed.R.Civ.P. 26(d)*, the court is authorized to expedite discovery upon a showing of "good cause." [3] "Good cause frequently exists in cases involving claims of [*2] infringement and unfair competition." [4] "A party that seeks expedited discovery in advance of a *Rule 26(f)* conference has the burden of showing good cause for the requested departure from usual discovery procedures." [5]

1  *Fed.R.Civ.P. 26(d)*.
2  *Alpine Atlantic Asset Mgmt AG v. Comstock, Civ. A. No. 07-2595-JWL, 2008 U.S. Dist. LEXIS 16401, 2008 WL 618627, at * 1 (D.Kan. March 3, 2008)* (citing *Qwest Comm'cs Int'l, Inc. v. WorldQuest, 213 F.R.D. 418, 418 (D.Colo. 2003))*.

3   *Koch Carbon, LLC v. Isle Capital Corp., No. 05-1010-MLB, 2006 U.S. Dist. LEXIS 36962, at *5 (D.Kan. March 1, 2006)* (citing *Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd., 204 F.R.D. 675, 676 (D.Colo. 2002)).*

4   *Pod-Ners, LLC, 204 F.R.D. at 676* (citing *Benham Jewelry Corp. v. Aron Basha Corp., No. 97 Civ. 3841-RWS, 1997 U.S. Dist. LEXIS 15927, 1997 WL 639037 at *20 (S.D.N.Y. Oct.14, 1997)).*

5   *Alpine, 2008 U.S. Dist. LEXIS 16401 at *4, 2008 WL 618627, at *1* (citing *Qwest, 213 F.R.D. at 418*; *Pod-Ners, LLC, 204 F.R.D. at 676*; *Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 614 (D.Ariz. 2001)).*

## II. ANALYSIS

This case involves patent infringement and unfair competition claims by Plaintiff. Plaintiff has served the two corporate defendants, Imura International U.S.A., Inc. and Vita Craft Corporation (collectively, [*3] the "Corporate Defendants"). The individual defendant, Mamoru Imura, who is believed to currently reside in Japan, is the Chief Executive Officer of the Corporate Defendants and has not yet been served. Plaintiff seeks an order from this Court allowing Plaintiff to send a single interrogatory to each of the Corporate Defendants asking for the current residential address of defendant Mamoru Imura. A *Rule 26(f)* conference has not yet taken place.

As the party seeking to conduct discovery prior to the *Rule 26(f)* conference, Plaintiff has the burden of showing good cause to expedite discovery. The Court finds that Plaintiff has established good cause to warrant the service of limited discovery regarding defendant Mamoru Imura's current residential address. Service of a single interrogatory to each of the Corporate Defendants will promote judicial speed and economy. Identifying the current address of defendant Mamoru Imura will allow Plaintiff to serve defendant Mamoru Imura via the Hague Convention more quickly so that this litigation may proceed. In addition, the Corporate Defendants have failed to show that the single interrogatory would be burdensome or that the Corporate Defendants [*4] would be prejudiced by having to answer the single interrogatory prior to the parties holding the *Rule 26(f)* conference.

## III. CONCLUSION

The Court finds that Plaintiff has shown good cause to expedite discovery. Thus, Plaintiff's Motion to Allow Issuance of an Interrogatory Prior to *Rule 26(f)* Conference (doc. 14) is granted.

**IT IS THEREFORE ORDERED** that Plaintiff may serve an interrogatory to defendants Imura International U.S.A. Inc. and to Vita Craft Corporation asking each of them to state the current residential address of defendant Mamoru Imura.

**IT IS FURTHER ORDERED** that defendants Imura International U.S.A. Inc. and Vita Craft Corporation shall each serve their answer to Plaintiff's interrogatory within 10 calendar days of their respective receipt of service of the interrogatory.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 26th day of June 2008.

/s/ David J. Waxse

David J. Waxse

U.S. Magistrate Judge



## U.S. BANK NATIONAL ASSOCIATION, Plaintiff, vs. MARY PARKER, Defendant.

### Case No. 4:09CV1755 HEA

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION

### *2010 U.S. Dist. LEXIS 11579*

### February 10, 2010, Decided
### February 10, 2010, Filed

SUBSEQUENT HISTORY: Dismissed by, Motion granted by *U.S. Bank Nat'l Ass'n v. Parker, 2010 U.S. Dist. LEXIS 68324 (E.D. Mo., July 9, 2010)*

COUNSEL: [*1] For U.S. Bank National Association, Plaintiff: Mary M. Bonacorsi, LEAD ATTORNEY, THOMPSON COBURN, LLP, St. Louis, MO

For Mary L. Parker, Defendant: Gary M. Smith, LEAD ATTORNEY, LEWIS AND RICE, St. Louis, MO; Neal F Perryman, LEAD ATTORNEY, LEWIS RICE, St. Louis, MO

JUDGES: HENRY EDWARD AUTREY, UNITED STATES DISTRICT JUDGE.

OPINION BY: HENRY EDWARD AUTREY

OPINION

### OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Expedited Discovery, [Doc. No. 12]. Defendant has responded to the instant motion, and on January 28, 2010, the Court held a hearing on the Motion. For the reasons set forth below, the Motion is denied.

### Facts and Background

Plaintiff brought this action for breach of a Confidentiality and Non-Solicitation Agreement, tortious interference with Plaintiff's relationships with its clients and misappropriation of Plaintiff's trade secrets. Plaintiffs state that Defendant was employed by Plaintiff until April 26, 2009, at which time, she voluntarily left U.S. Bank to join Northern Trust, working in a similar capacity. Plaintiff further alleges that Defendant after joining Northern Trust, Defendant has been in contact with clients for whom she had service responsibility while [*2] employed by Plaintiff, and that several clients have transferred their accounts to her at Northern Trust. Plaintiff contends Defendant kept and maintained a personal set of records relating to the client accounts for which she had responsibility at Plaintiff Bank and kept certain client contact information on her personal cellular telephone or other electronic information storage device.

Plaintiff seeks expedited discovery to conduct forensic investigation of Defendant's cell phone, PDA and personal computer.

### Discussion

*Rule 26(d)(1), Fed.R.Civ.P.,* provides that a party may not seek discovery from any source before the parties have met and conferred as required by *Rule 26(f).*

*Fed.R.Civ.P.* The rule is subject to limited exceptions, including a court order permitting discovery. Defendant has a pending motion to dismiss and therefore, the parties have not met and conferred.

Courts use one of two standards to determine whether a party is entitled to conduct expedited discovery. Some courts apply a "good cause" or "reasonableness" standard, while others analyze a set of factors similar to those for obtaining a preliminary injunction. See *Special Situations Cayman Fund, L.P. v. Dot Com Entertainment Group, Inc., 2003 U.S. Dist. LEXIS 25083, 2003 WL 23350128 at *1, n. 7 (W.D.N.Y.2003)* [*3] (slip op.). The Court of Appeals for the Eighth Circuit has not adopted either standard.

Under the good cause standard, the party requesting expedited discovery must show that the need for expedited discovery, in consideration of administration of justice, outweighs prejudice to responding party. *Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D.Cal.2002); Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc., 213 F.R.D. 418, 419 (D.Colo.2003); Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 613-14 (D.Ariz.2001).* Cf. *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor, 194 F.R.D. 618, 624 (N.D.Ill.2000)* ("[W]here a plaintiff seeks expedited discovery to prepare for a preliminary injunction hearing, it makes sense to examine the discovery request ... on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.")

Under the preliminary injunction-style analysis, the Court believes that Plaintiff is not entitled to expedited discovery. The factors relevant to that inquiry are: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery [*4] and the avoidance of the irreparable injury, and (4) some evidence that the injury [that] will result without expedited discovery looms greater than the

injury that the defendant will suffer if the expedited relief is granted." *Cecere v. County of Nassau, 258 F.Supp.2d 184, 186 (E.D.N.Y.2003).* See also *Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y.1982).* Here, Plaintiffs have not shown the potential for spoliation of evidence and resulting prejudice to it. Defendant has assured the Court and Plaintiff that she will preserve the data on her cell phone and other electronic information storage devices. Plaintiff has not shown any prejudice it is suffering or will suffer and the discovery sought.

## Conclusion

Under either standard, Plaintiff has failed to establish it is entitled to expedited discovery. Defendant has offered and represented to the Court that she will ensure that the evidence sought will not be altered or destroyed. Moreover, Plaintiff has failed to establish any prejudice to it if it is not allowed to conduct expedited discovery. Additionally, Plaintiff's request is based on speculation and supposition that Defendant was attempting to solicit any of Plaintiff's customers. The [*5] Court thus finds that Plaintiff has failed to show good cause for conducting expedited discovery and has failed to establish the familiar requirements used in determining whether injunctive relief should issue.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Expedited

Discovery, [Doc. No. 12] is denied

Dated this 10th day of February, 2010

/s/ Henry Edward Autrey

HENRY EDWARD AUTREY

UNITED STATES DISTRICT JUDGE

 LexisNexis®

**DONALD VANCE and NATHAN ERTEL, Plaintiffs, vs. DONALD RUMSFELD, UNITED STATES OF AMERICA and UNIDENTIFIED AGENTS, Defendants.**

**06 C 6964**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2007 U.S. Dist. LEXIS 94061*

**December 21, 2007, Decided**
**December 21, 2007, Filed**

**SUBSEQUENT HISTORY:** Motion denied by, Objection denied by *Ertel v. Rumsfeld, 2009 U.S. Dist. LEXIS 67349 (N.D. Ill., July 29, 2009)*

**PRIOR HISTORY:** *Ertel v. Rumsfeld, 2007 U.S. Dist. LEXIS 69280 (N.D. Ill., Sept. 19, 2007)*

**COUNSEL:** [*1] For Donald Vance, Plaintiff: Michael I Kanovitz, LEAD ATTORNEY, Arthur R. Loevy, Gayle M. Horn, Jonathan I. Loevy, Loevy & Loevy, Chicago, IL.

For Nathan Ertel, Plaintiff: Michael I Kanovitz, LEAD ATTORNEY, Loevy & Loevy, Chicago, IL.

For Donald Rumsfeld, Defendant: James R Whitman, LEAD ATTORNEY, James R. Whitman, Washington, DC; Samuel B. Cole, LEAD ATTORNEY, United States Attorney's Office (NDIL), Chicago, IL.

For United States of America, Defendant: James R Whitman, LEAD ATTORNEY, James R. Whitman, Washington, DC.

**JUDGES:** MAGISTRATE JUDGE ARLANDER KEYS. Judge Wayne Anderson.

**OPINION BY:** ARLANDER KEYS

**OPINION**

MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiffs' Motion for Limited Discovery. Defendant United States argues that Plaintiffs are not entitled to the requested discovery and that the Court lacks jurisdiction to compel the production. For the reasons set forth below, Plaintiffs' Motion is granted in part, and denied in part.

**BACKGROUND FACTS**

l

1   The Background Facts were taken from the allegations in Plaintiffs' Amended Complaint, which, at this stage of the proceedings and for purposes of the present Motion, the Court will accept as true.

Plaintiffs Donald Vance and Nathan Ertel, both American [*2] citizens, traveled to Iraq in 2004 to work for the Sandi Group, which provides security services for the Unites States State Department, nongovernmental organizations ("NGO's"), and commercial and media firms operating in Iraq. Dissatisfied with their working conditions, Plaintiffs resigned from Sandi and returned to the United States.

In 2005, Shield Group Security ("SGS"), another private security firm operating in Iraq, recruited Plaintiffs, separately, to join the firm. Both Mr. Vance and Mr. Ertel accepted positions with SGS, and returned to Iraq in late 2005.

SGS maintained its offices in a gated community in the "Red Zone" in Baghdad, Iraq. Plaintiffs resided in this gated community, which was patrolled by armed guards, and was essentially a neighborhood populated by native Iraqis. SGS employees, and other expatriates employed by private firms doing business in Iraq.

Plaintiffs allege that, while working with SGS, they observed suspicious and potentially illegal activity. Specifically, Plaintiffs claim that they witnessed SGS agents making payments to Iraqi sheikhs, in an attempt (they believed) to gain an advantage from these influential Iraqis. Concerned about the legality of [*3] SGS's actions, Mr. Vance purportedly contacted the Federal Bureau of Investigation ("FBI") during a visit to Chicago. Mr. Vance was put in contact with FBI agent Travis Carlisle, who arranged for Mr. Vance to continue to report on SGS's suspicious activity in Iraq. Mr. Vance agreed to do so, and reported to Agent Carlisle daily.

Agent Carlisle subsequently put Mr. Vance in contact with Maya Dietz, a United States government official working in Iraq. Ms. Dietz asked Mr. Vance to copy SGS's computer documents and to forward them to her; Mr. Vance agreed.

Mr. Ertel apparently shared Mr. Vance's concerns, and subsequently became aware of Mr. Vance's communications with the FBI. Mr. Ertel agreed to assist Mr. Vance in reporting to Agent Carlisle, and the two also began communicating their concerns to Deborah Nagel and Douglas Treadwell, two U.S. government officials working in Iraq.

Plaintiffs reported to Agent Carlisle and other U.S. officials that SGS Vice President Jeff Smith [2] routinely sold arms, ammunition, night vision technology and infrared targeting systems throughout Iraq. Mr. Smith was well-connected politically, and had a direct relationship with both General George Casey and [*4] Iraqi President Jalal Talabani. Plaintiffs also informed both Agent Carlisle and Ms. Nagel that Laith Al-Khudairi, a well-connected employee in the detainee operations division of the United States State Department, conducted suspicious meetings at the SGS

compound [3].

> 2   Although Mr. Smith did not serve as SGS's Vice President at all relevant times, he was consistently "high-up in the chain of command at SGS." Amen. Compl. at P 65. Plaintiffs also reported on a number of other SGS employees, including their supervisor, Mr. Josef Trimpert, who was involved in an illegal "Beer for Bullets" scheme.
>
> 3   Plaintiffs also informed on a number of other SGS-Affiliated members of the Al-Khudairi family. Plaintiffs imply that, in addition to SGS, all of the individuals that they informed on would have a motive to have them arrested. Plaintiffs also find it suspicious that none of these individuals were detained and questioned in a manner similar to Plaintiffs, despite the incriminating information Plaintiffs presented about them to the FBI and other officials.

Plaintiffs found the government officials within Iraq to be unreceptive to their concerns, informing Plaintiffs that there was little the local [*5] officials could do to address the problem. Discouraged with the local officials' responses, Plaintiffs shared most of the information they gathered only with Agent Carlisle [4].

> 4   Plaintiffs' Amended Complaint also alleges that, once these government officials working in Iraq realized they were being left out of the loop, they chose to retaliate by having Plaintiffs arrested and interrogated.

Plaintiffs allege that SGS began to question their loyalty to the firm. SGS's suspicions escalated, and on April 14, 2006, armed SGS agents confiscated Plaintiffs' access cards, effectively trapping Plaintiffs in the "Red Zone" within the SGS compound. Plaintiffs contacted Ms. Nagel and Mr. Treadwell, who advised Plaintiffs to barricade themselves in a secure room until U.S. forces could rescue them. Plaintiffs complied and were removed from the SGS compound by U.S. forces.

Plaintiffs were then escorted to the U.S. Embassy, where military personnel seized all of their personal property, including their laptop computers, cellular phones, and cameras. Plaintiffs claim that they were then separated and questioned by an FBI agent and two individuals from United States Air Force Intelligence. Plaintiffs [*6] revealed the suspicious activity that they

had observed while employed by SGS, and their communications with the FBI. Plaintiffs informed their interrogators that information contained on their seized computers would support their statements. Following the interviews, Plaintiffs were escorted to trailers, where they were permitted to sleep for two to three hours.

Their rest was short-lived. Several armed guards arrested Plaintiffs, handcuffing and blindfolding the men, and escorted them into a humvee. Plaintiffs were taken to Camp Prosperity, a U.S. military compound in Baghdad, where they were placed in a cage, strip searched, and fingerprinted. They were then taken to separate cells, and held in solitary confinement. Plaintiffs were labeled "security internees" affiliated with SGS, and were suspected of supplying weapons to insurgents. Plaintiffs were allegedly informed that this information was sufficient, according to the policies enacted by Defendant Donald Rumsfeld, for the indefinite, incommunicado detention of Plaintiffs, without due process or access to an attorney.

Two days later, Plaintiffs were again shackled and blindfolded, and then transported to Camp Cropper, another [*7] U.S. military compound in Baghdad. At Camp Cropper, Plaintiffs were repeatedly interrogated and subjected to physically and mentally coercive tactics by military personnel, who refused to identify themselves. These unidentified individuals also denied Plaintiffs' repeated requests for an attorney.

On April 20, 2006, Plaintiffs received letters from the Detainee Status Board, indicating that a proceeding would be held on April 23rd, to determine their legal status as "enemy combatants," "security internees," or "innocent civilians." The letter explained that Plaintiffs did not have the right to legal counsel at that proceeding, and that they could only present evidence and witnesses who were reasonably available at Camp Cropper. On April 22, 2006, Plaintiffs received a notice that the Detainee Status Board had determined that they were "security internees," and that they had the right to appeal the determination to Camp Cropper officials. Plaintiffs appealed, and requested that they be allowed to testify on the other's behalf, and that their seized personal property be admitted as evidence of their innocent civilian status.

On April 26, 2006, Plaintiffs appeared before the Board. However, [*8] they were not permitted to testify on the others' behalf, nor were they provided with the evidence that they had requested. In addition, the Board

refused to allow Plaintiffs to see the evidence against them or to confront any adverse witnesses. Nevertheless, on May 17, 2006, Major General John Gardner authorized Mr. Ertel's release- 18 days after the Board officially acknowledged that he was an innocent civilian. Mr. Vance's detention continued for an additional two months, where he was continually interrogated. Major General Gardner authorized Mr. Vance's release on July 13, 2006, but he was not permitted to leave Camp Cropper until July 20, 2006. Neither Plaintiff was ever charged with any crime.

Plaintiffs filed suit against Donald Rumsfeld on December 18, 2006, alleging that Mr. Rumsfeld should be held accountable for constitutional violations that occurred in Iraq at the hands of unidentified agents of the United States, as well as for the allegedly unconstitutional practices and policies enacted by Defendant Rumsfeld, which led to Plaintiffs' arrest and confinement.

On December 22, 2006, Plaintiff Vance filed a Motion for Leave to Serve Expedited Third Party Discovery on the United [*9] States. The United States filed a Motion in Opposition and a "Statement of Interest" on January 11, 2007. Plaintiffs and the United States appeared before Judge Milton I. Shadur, on January 16, 2007. At the hearing, Judge Shadur questioned the advisability of permitting the requested discovery directed at the United States, in the absence of Defendant Rumsfeld. However, Judge Shadur stated that it would be beneficial for the United States to facilitate the Plaintiffs in their quest to determine the identities of the unknown individuals responsible for their arrest, interrogation, mistreatment, and detention.

The United States agreed that the discovery of just the identities of other potential defendants would be less objectionable than allowing discovery against the United States on substantive issues, but argued that Plaintiffs had failed to demonstrate sufficient need that the information be obtained through expedited discovery. Judge Shadur, however, was sympathetic to Plaintiffs' concern that they likely would be faced with a statute of limitations defense if discovery were not expedited. In addition, Judge Shadur acknowledged the comparative difficulty Plaintiffs would face in [*10] attempting to secure the identities of the unknown defendants, most, if not all of whom, were stationed in Baghdad. Judge Shadur further stated that he did not believe "a reasonable inquiry on the

part of the government would find any difficulty in identifying persons that the plaintiff is not in a position to identify." 1/16/2007 Hearing Transcript at p. 8. As such, Judge Shadur ordered the United States to "go back and inquire into the availability of such information through the kinds of sources that are available to you." *Id.* at p. 11.

The parties returned to Judge Shadur's courtroom ten days later, on January 26, 2007. The United States reported that initial conversations with officials at the State Department did not reveal any individuals who might be responsive to the relevant portion of Plaintiffs' discovery requests, but that the officials would require more time for investigation. Counsel then stated that the Department of Defense had conducted some interviews, and that "they are more likely to have people who are responsive to those categories, but they are going to require more time as well. Based on my conversation with them I would say that it would take at least 60 days [*11] in order to conduct that investigation and come to a determination as to who is not responsive to those requests." 1/26/2007 hearing transcript at p. 3.

Although the United States initially agreed to turn over the identities of potential defendants on a rolling basis, counsel later balked, explaining that the United States would not disclose the information absent a competent court order to do so. Counsel reiterated the difficulty that even the United States government would face in attempting to conduct the requested discovery in an active war zone.

On February 12, 2007, Plaintiffs amended their Complaint, naming the United States of America as an additional Defendant. In Count XV of their Amended Complaint, Plaintiff asked that the Court, pursuant to the Administrative Procedure Act ("APA"), *5 U.S.C § 701 et seq. (West 2007),* order the United States to return personal property that Plaintiffs allege military personnel confiscated from them when they were arrested in Iraq.

On February 21, 2007, the case was reassigned to Judge Wayne R. Andersen. Defendants subsequently filed a Motion for Transfer of Venue, which Judge Andersen denied on September 19, 2007. Plaintiffs, who had agreed [*12] to stay their discovery requests until Judge Andersen issued his ruling on Defendants' Motion for Transfer of Venue, refiled their discovery Motion on October 1, 2007. Judge Andersen referred all discovery matters, including Plaintiff's Motion for Limited

Discovery, to this Court.

The parties appeared before the Court on October 5, 2007. At the hearing, the United States argued that Plaintiffs' APA claim was moot, because the United States Department of Defense ("DoD") had already returned all of the property that it could reasonably locate, and that the Plaintiffs were barred from seeking any other form of redress against military personnel under the APA. In response, Plaintiffs stated that they had reason to believe that agencies in addition to the DoD may have had possession of their property; thus the DoD's bald assertion that it did not have any additional property belonging to Plaintiffs was, at best, inconclusive. Plaintiffs also raised the possibility that employees of private government contractors might be among the "unidentified defendants" acting in concert with military personnel- and thus, were potentially outside of the scope of the protections afforded by the military [*13] authority exception -- further undermining Defendant's argument that Plaintiffs' claims were moot.

## DISCUSSION

Plaintiffs seek leave to discover the identities of the individuals responsible for their arrest, detention, and mistreatment in Iraq. Plaintiffs note that the facilities where they were held are "sterilized" facilities, meaning that all of the personnel are anonymous to the detainees. As such, Plaintiffs claim, they do not have effective means of identifying and naming these unknown defendants.

To that end, Plaintiffs have sought discovery from the United States since January of 2007, when the United States informed Judge Shadur and Plaintiffs that, despite the inherent difficulties involved in conducting such discovery, the United States' investigation into the identity of additional defendants would be complete in approximately 60 days. Obviously, more than 60 days has passed since the United States made this assertion, and the United States has never denied that it possesses much of the information that Plaintiff seeks. Yet, the United States has staunchly refused to divulge the fruits of its investigation.

In its Response, the United States argues that Plaintiffs are not entitled [*14] to the information and that their Motion must be denied, because: 1) Plaintiffs have not demonstrated that expedited discovery of any matters is appropriate in this case; 2) this Court lacks

jurisdiction to order discovery against the United States; 3) granting Plaintiffs' Motion would raise serious Separation of Powers concerns; and 4) Plaintiffs' discovery requests are futile. The Court will address each of the government's arguments in turn.

## I. Expedited Discovery is Appropriate

The United States notes that, despite the fact that Plaintiffs have been seeking this information for approximately one year, Plaintiffs' Motion is actually one for expedited discovery, because the parties have not conferred pursuant to *Fed. R. Civ. P. 26(f)*. The government asserts that Plaintiffs bear the burden of demonstrating that expediting discovery is necessary, and that any harm to Plaintiffs in not expediting discovery outweighs the prejudice to the responding party if discovery is expedited. *See generally, Merrill Lynch Pierce, Fenner & Smith, Inc. v. O'Connor, 194 F.R.D. 618, 623 (N.D. Ill. 2000).*

Plaintiffs argue that delaying discovery would cause them irreparable harm, because of the looming statue [*15] of limitations deadline on their *Bivens'* claims. *Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).* The parties dispute whether Illinois' two-year statute of limitations (which will expire in approximately April of 2008) should apply to Plaintiffs' *Bivens* claims or the District of Columbia's three-year limitations period should- or at least- could have controlled. *Compare Delgado-Brunet v. Clark, 93 F.3d 339, 342 (7th Cir. 1996)* (noting that courts applying Illinois law impose a two year statute of limitations on such claims) *with Carney v American Univ., 331 U.S. App. D.C. 416, 151 F.3d 1090, 1096 (D.C. Cir. 1998)* (finding that D.C. Circuit law imposes a three year statute of limitations on *Bivens'* claims). Contrary to the government's assertion [5], the question of which jurisdictions' law applies depends not upon the forum in which Plaintiffs filed suit, but upon Judge Anderson's resolution of the choice of law issues [6]. It is conceivable that such a ruling would be issued after Illinois' two-year statute of limitations period has passed, forcing Plaintiffs to shoulder the risk that the district court's decision could effectively foreclose their ability to seek redress from the unknown defendants.

> 5 The [*16] United States insists that Plaintiffs have effectively manufactured the purported prejudice by choosing to file in a forum with a shorter limitations period.

> 6 Of course, the forum in which the suit is filed is a factor in the choice of law analysis.

The government counters that conducting expedited discovery in a warzone outweighs any such concerns. The Court disagrees. There is no apparent end in sight to the hostilities in Iraq, and the United States is powerless to waive a statute of limitations defense on behalf of the unknown defendants. In addition, the government represented to Judge Shadur, almost one year ago, that it had already begun its investigation into the identities of the unknown defendants, and that it could conclude that investigation within about 60 days. The United States has never denied that it possesses some if not all of the information that Plaintiffs seek. Therefore, the Court finds that potential harm to Plaintiffs by delaying discovery outweighs any resulting prejudice to the United States.

## II. This Court has Jurisdiction to Compel Discovery

The United States bluntly asserts that this Court lacks jurisdiction to order the government to produce discovery for [*17] the reasons explained in its recently filed Motion to Dismiss *Rule 12(b)(1)*. Of course, this Court lacks the authority to dispose of the arguments raised in Defendant's Motion to Dismiss. *See generally, Thomas v. Arn, 474 U.S. 140, 141-42, 106 S. Ct. 466, 88 L. Ed. 2d 435 (U.S. 1985); see also, Brown v. City of Chicago, No. 98-7949, 2001 U.S. Dist. LEXIS 14089, 2001 WL 1064259, at *1 (N.D. Ill. Sept. 10, 2001)* (noting that magistrate judges lack jurisdiction to rule on the City's motion to bifurcate trial, where the referral only encompassed discovery disputes.) But the Court need not resolve the United States' Motion to Dismiss to properly evaluate Plaintiffs' present Motion; an analysis of relevant law makes clear that the government's filing of a Motion to Dismiss-- even one challenging the district court's jurisdiction-- does not strip the Court of the authority to order appropriate discovery.

The resolution of a question concerning "jurisdiction is vital only if the court proposes to issue a judgment on the merits." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp., 127 S.Ct. 1184, 1192, 167 L. Ed. 2d 15 (U.S. 2007)* quoting *Intec USA, LCC v. Engels, 467 F.3d 1038, 1041 (7th Cir. 2006)*. In the instant case, it is clear that this discovery Motion is [*18] collateral to a resolution of the merits.

The United States Supreme Court has held that

"federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978).* "Where issues arise as to jurisdiction, or venue, discovery is available to ascertain facts bearing on such issues." *Id.* A district court has wide latitude in determining whether to grant a party's request for discovery and such decisions are reviewed for an abuse of discretion. *Doty v. Illinois Cent. R.R. Co., 162 F.3d 460, 461 (7th Cir.1998).*

Courts have taken a rational approach to discovery requests made in advance of a determination regarding jurisdiction. Courts have generally found it unnecessary for a district court to order discovery or hold a hearing on a motion to dismiss for lack of subject matter jurisdiction where the facts are straightforward and the law is not complex. *See Hay v. Indiana State Bd. of Tax Com'rs, 312 F.3d 876, 882 (7th Cir. 2002)* ("Because of the minimal procedural requirements for 'plain, speedy and efficient' set forth by the Supreme Court in *Rosewell*, the [*19] district court could make a determination of adequacy based on the information before it, including by reviewing the applicable statutes establishing the procedures for tax assessment review. Consequently, it was not an abuse of discretion for the district court to grant the motion to dismiss without allowing the landowners to conduct discovery"); *Cook v. Providence Hosp., 820 F.2d 176, 178 (6th Cir.1987)* (finding that no hearing is required on a motion to dismiss where the facts are relatively simple, substantially uncontroverted, and the law is not complex.)

However, where additional discovery would assist the court in resolving the jurisdictional issues, discovery is appropriate. *Ignatiev v. United States, 345 U.S. App. D.C. 85, 238 F.3d 464, 467 (D.C. Cir. 2001)* (rejecting the district court's determination that the plaintiff's requested discovery was nothing more than a fishing expedition, and finding that the district court erred in granting the motion to dismiss for lack of subject matter jurisdiction without permitting discovery on the jurisdictional question.); *Rosner v. United States, 231 F. Supp.2d 1202, 1218 (S.D. Fla. 2002)* (permitting the plaintiffs to conduct discovery to determine whether [*20] the government's actions were non-military in nature, thus precluding the application of the APA's "military authority" exception, prior to resolving defendant's motion to dismiss.)

In the instant case, Plaintiffs have argued that the APA military authority exception may not apply to certain unidentified defendants, if those defendants were not military personnel [7]. Absent the requested discovery, however, it would be impossible for Plaintiffs to support such an argument. A full and fair analysis of the government's Motion to Dismiss hinges on the disclosure of the identities and status of the unknown defendants. Similarly, the district court's resolution of the Defendant Rumsfeld's qualified immunity argument would benefit from information about the types of defendants involved in the abuses claimed by Plaintiffs.

> 7 Plaintiffs also argue that the exception may not apply, because the government's failure to return the Plaintiffs' personal property is not military in nature.

The United States counters that discovery is not warranted in any event, because Plaintiffs' sole claim against the government- their claim for the return of personal property seized in Iraq-- is moot. The United States [*21] bases its mootness argument on: 1) the affidavit of Lt. David Melson, averring that the government has conducted a search of any and all places where the property would have been seized, stored or located; 2) Evidence/Property Custody documents ("Property Documents") that purportedly demonstrate the chain of custody of the property in question; and 3) the fact that the government has made arrangements to return that property belonging to Plaintiffs that it was able to locate [8].

> 8 Plaintiffs note that the only item that the United States has found is Mr. Vance's laptop, and that the government has offered no explanation as to why it was able to locate this one item and no others.

Plaintiffs first attack Lt. Melson's affidavit, noting that Lt. Melson claims to have contacted only the Joint Personnel Recovery Center ("JPRC"), the Evidence Custodian for the Military Policy Criminal Investigative Division ("CID") and the 494th MP Battalion in his search for Plaintiffs' property. Lt. Melson did not contact any other government agencies or military departments, despite the fact that FOIA documents that Mr. Vance received demonstrate that the Naval Criminal Investigative Service ("NCIS") had [*22] control over at least some of Mr. Vance's property, including his thumb drives and cell phone. As such, the investigation

described in Lt. Melson's affidavit appears on its face to be incomplete.

Plaintiffs next highlight numerous inconsistencies in the Property Documents proffered by the government. For example, the Property Documents include a property receipt for Mr. Vance that does not match the receipt that Mr. Vance has in his possession. Mr. Vance claims that these discrepancies raise doubts about the authenticity and reliability of the property receipts.

Finally, Plaintiffs argue that their APA claim relates to the United States' failure to return property that was seized more than 18 months ago. Because Plaintiffs' challenge against any governmental actors would be limited to the government's failure to return their property, and not to the seizure itself, the act is not military in nature, and, therefore, falls outside of the scope of the military authority exception. *See Jaffee v. United States, 592 F.2d 712, 720 (3rd Cir. 1979)* (ruling that the plaintiff's APA claim for failure to warn about the medical risks associated with observing a nuclear test in Nevada did not fall [*23] within the military authority exception, as the challenged conduct did not occur in the field nor in time of war.) Indeed, Plaintiffs do not know if their property remains in military custody, with the State Department, the FBI, the CIA, or a host of other agencies. As such, Plaintiffs argue, their claim is neither clearly barred [9] by the military authority exception nor moot, and discovery is appropriate.

> 9   The Court is not ruling on the validity of Plaintiffs' arguments, merely noting the existence of reasonable opposition to the government's position.

The Court agrees that the evidence proffered by the government is far from conclusive on the issue of mootness. Moreover, even if the government's evidence was not flawed, this evidence would not moot Plaintiffs' claims if the district court determines that the government's conduct was not military in nature, or if the unidentified actors were private governmental contractors- like many of the allegedly politically-connected individuals who were the subject of Plaintiffs reports to Agent Carlisle - who are not shielded by the APA's military authority exception. As such, it is difficult to see how the district court can resolve Defendants' [*24] argument that the military authority exception bars Plaintiffs' APA claim, without a more clear understanding of the individuals involved in the

complained of abuses.

In conclusion, the Court finds that the issue of jurisdiction in this case is complex and fact intensive. Analysis of the issues raised in Defendants' Motion to Dismiss would only benefit from appropriately tailored discovery. As such, the Court rejects the United States' claim that the arguments raised in its Motion to Dismiss strip the Court of the power to compel discovery.

## III. Tailored Discovery Would Not Violate Separation of Powers Concerns.

The United States next argues that separation-of-powers concerns dictate against granting Plaintiffs' Motion for discovery. The government notes that the purpose of the APA's "military authority" exception is to prevent federal courts from interfering in military strategy, decision-making, and actions occurring in "combat zones or in preparation for, or in the aftermath of, battle." Def.'s Resp. at 6, citing *Doe v. Sullivan, 291 U.S. App. D.C. 111, 938 F.2d 1370, 1380 (D.C. Cir. 1991)* (finding that the plaintiff's challenge to a rule published by the FDA was not a military matter.) Notably, the district [*25] court has not ruled that the military authority exception to the APA applies in this case, and Plaintiffs have offered colorable arguments that the exception does not apply.

Nevertheless, the government argues, it is impossible to divorce this case from the realities of an ongoing war in Iraq. Agreed. However, the cases cited by the government are tangential, at best, to the issue of whether the requested discovery in this case is advisable or even permissible. For example, the government cites to *Chappel v. Wallace* [10], where the Court discussed the unique distinction between military and civilian life:

> [J]udges are not given the task of running the Army. The responsibility for setting up channels through which ... grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to

intervene in judicial matters.

*462 U.S. 296, 301, 103 S. Ct. 2362, 76 L. Ed. 2d 586 (1983)* (quoting *Orloff v. Willoughby, 345 U.S. 83, 93-94, 73 S.Ct. 534, 540, 97 L. Ed. 842 (1953)).

> 10    Similarly, [*26] *Alhassan v. Hagee, 424 F.3d 518, 525 (7th Cir. 2005)* concludes that it would be inappropriate for courts to review whether a soldier's evidence of his opposition to war was sufficient to establish that he was a conscientious objector, whether his objection to war was based on religious concerns, and whether his beliefs were deeply felt. Responsibility for making such determinations rest with the military, not the courts.

But the case at bar involves charges filed by civilians- not soldiers attempting to avoid the jurisdiction of a military tribunal. And caselaw teaches that citizens have the right to sue the government for abuses that occurred during wartime, and that the judiciary retains the authority to adjudicate those suits. In *Hamdi v. Rumsfeld,* the United States Supreme Court rejected "the Government's assertion that separation of powers principles mandate a heavily circumscribed role for the courts in such circumstances. Indeed, the position that the courts must forgo any examination of the individual case and focus exclusively on the legality of the broader detention scheme cannot be mandated by any reasonable view of separation of powers, as this approach serves only to *condense* [*27] power into a single branch of government. We have long since made clear that a state of war is not a blank check for the President when it comes to the rights of the Nation's citizens." *542 U.S. 507, 535-36, 124 S. Ct. 2633, 2650, 159 L. Ed. 2d 578 (2004).*

The *Hamdi* Court's decision demonstrates that, not only do citizens detained during wartime have the right to seek redress in the courts, but that the courts have the authority to require the United States to afford those litigants certain processes, despite the exigencies of war. Mr. Hamdi, a United States citizen, was taken into custody in Afghanistan, after he was allegedly found supporting Taliban soldiers against the United States. Mr. Hamdi was subsequently detained, indefinitely, in a military facility in the United States, and he filed a petition for habeas corpus. Mr. Hamdi argued that he was denied a meaningful and timely hearing on the issue of

whether he was an enemy combatant, and that his extra-judicial detention, which began and ended with the submission of an affidavit based on third-party hearsay, violated his rights under the *Fifth* and *Fourteenth Amendments. Id, 542 U.S. at 524-25.*

The government argued that "[r]espect for separation of [*28] powers and the limited institutional capabilities of courts in matters of military decision-making in connection with an ongoing conflict" ought to eliminate entirely any individual process, restricting the courts to investigating only whether the broader detention scheme itself is legal. *Id. at 527.* A majority of the Supreme Court disagreed, and found instead that the "tension . . . between the autonomy that the Government asserts is necessary . . and the process that a citizen contends he is due before he is deprived of a constitutional right," should be resolved by balancing the plaintiff's constitutional rights against the government's separation of power and wartime concerns. *Id., citing Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).*

The Court balanced Mr. Hamdi's assertion that he should have been afforded full due process rights, as the risk of an erroneous deprivation of liberty absent such protections was unacceptably high, with the government's claim that enemy combatants- even if they are citizens- are entitled to only minimal process. The government highlighted the "practical difficulties that would accompany a system of trial- like process" because "military officers who are [*29] engaged in the serious work of waging battle would be unnecessarily and dangerously distracted by litigation half a world away, and discovery into military operations would both intrude on the sensitive secrets of national defense and result in a futile search for evidence buried in the rubble of war." *542 U.S. at 531-32, 124 S. Ct. at 2648.*

The Court concluded that a citizen-detainee seeking to challenge his classification as an enemy combatant must receive notice of the factual basis for his classification, and a fair opportunity to rebut the government's assertions before a neutral tribunal. *542 U.S. at 533, 124 S.Ct. at 2648.* In so ruling, the Court found it "unlikely that this basic process will have the dire impact on the central functions of warmaking that the Government forecasts." *Id at 534, 124 S. Ct. at 2639.* The Court further noted that such a process would meddle little into the waging of war, inquiring only into

the appropriateness of certain detentions, explaining:

> While we accord the greatest respect and
> consideration to the judgments of military
> authorities in matters relating to the actual
> prosecution of a war, and recognize that
> the scope of that discretion necessarily
> [*30] is wide, it does not infringe on the
> core role of the military for the courts to
> exercise their own time-honored and
> constitutionally mandated roles of
> reviewing and resolving claims like those
> presented here.

*542 U.S. at 535, 124 S.Ct. at 2649-50.*

Obviously, the issue presented here is
distinguishable; the United States has not contested the
feasibility of asserting an APA claim against it, but has
instead challenged the validity of Plaintiffs' claims, and
its obligation to produce discovery as a result. With the
exception of the APA's military authority exception - the
applicability of which Plaintiffs contest- the government
has not argued that Congress has authorized the
suspension of APA suits against it. Nevertheless, *Hamdi*
is instructive in assisting this Court's balancing of
Plaintiffs' need for information relevant to this litigation
against the undeniable hurdles of gathering discovery in
Iraq during wartime.

As discussed above, if the United States does not
provide Plaintiffs with the identities of the unknown
defendants, there is a very real possibility that the
applicable statute of limitations will prevent Plaintiffs
from ever seeking redress from potentially liable
individuals. [*31] In addition, the Court is not persuaded
that gathering this information will require the United
States to "go out into the field to interview" soldiers
"some of whom may be conducting combat operations."
Def.'s Resp. at p. 7. Plaintiffs very specifically identified
the dates and locations of their detention. It strains
credulity to believe that the government and/or military
does not have in place procedures for documenting
individuals working in those facilities at specific times.

Moreover, the United States has already been
ordered by Judge Shadur to begin such an investigation,
and has stated that such an investigation would be
completed in approximately March of 2007. The
government does not deny that it already has the

information that Plaintiffs seek, it simply refuses to
divulge the information. As such, it is not clear the extent
to which the separation of powers concerns cited by the
United States are even implicated [11].

> 11      The United States complains that the
> requested discovery is inappropriate, because
> military personnel on active duty in Iraq should
> not be required to defend against a lawsuit, half
> way around the world. Plaintiffs correctly point
> out that such concerns can [*32] be appropriately
> addressed after the unknown defendants have
> been identified. For example, Congress has
> enacted the Servicemembers' Civil Relief Act, *50
> U.S.C. app. § 501 et seq.,* which allows courts to
> stay litigation against defendants in the active
> duty military.

Finally, while the Court is sensitive to the extreme
challenges presented by the ongoing hostilities in Iraq,
the Court cannot accept the practical consequences of the
United States' position -- that the existence of a war so
diminishes the authority of the judiciary that it must
suspend the normal routes of discovery, based on little
more than the United States' own assessment of its
opponent's position. It is the resulting concentration of
power in the executive branch that would offend
separation of powers concerns.

The Court concludes that Plaintiffs should be
afforded that basic discovery necessary to enable
Plaintiffs to avoid a potential statute of limitations'
defense. As such, the United States shall produce to
Plaintiffs the identities of the unknown defendants within
30 days of the entry of this Opinion.

## IV. Potential Qualified Immunity Arguments are Insufficient to Defeat Plaintiffs' Discovery Request.

The United [*33] States asserts that requiring it to
undertake discovery in a war zone is inappropriate for the
additional reason that Plaintiffs' claims against the
unidentified defendants will be futile. The United States
confidently asserts that any and all claims against both
known and unknown defendants will be dismissed on
qualified immunity grounds, and that caselaw dictates
that any order compelling discovery should await a ruling
on the district court's determination of the Defendants'
qualified immunity arguments.

Many courts have noted the "importance of resolving

immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)* (citing *Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982))*. While *Harlow* and its progeny sought to protect government officials who were likely entitled to immunity from broad reaching discovery, the Supreme Court has acknowledged that "limited discovery may sometimes be necessary" before a court can resolve the issue of qualified immunity. *Crawford-El v. Britton, 523 U.S. 574, 593 n.14, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998)*; *see also, Fairley v. Fermaint 482 F.3d 897, 900 (7th Cir. 2007)* (noting that "qualified immunity gives the defendant a right not only [*34] to prevail but also to avoid entanglement in the litigation- sometimes dubbed a 'right not to be tried.' this entitlement includes a right to avoid discovery", but only if matters are "sufficiently clear" at the outset of the suit.)

In the instant case, it is impossible to determine whether the unknown defendants can raise a colorable claim for qualified immunity, precisely because they- and their positions either within the government, military, or the private sector-- are unknown. The only Defendant to have thus far filed a claim for qualified immunity is Defendant Rumsfeld. While Defendant Rumsfeld might present a viable argument [12] that he should not be required to engage in discovery until his claim for immunity is resolved, Plaintiffs are not seeking discovery from Defendant Rumsfeld. Plaintiffs are seeking the identities of the unknown defendants from the United States, and the United States did not raise a claim for qualified immunity in its Response to Plaintiffs' Motion or in its Motion to Dismiss.

> 12 Of course, Plaintiffs challenge the viability of Defendant Rumsfeld's qualified immunity claim, noting that an American citizen's right to be free from involuntary confinement [*35] without due process, even while living abroad, was well established at the time they were detained. *Citing Hamdi, 542 U.S. at 533.*

The government's position is simply untenable. There is no statutory or caselaw support for the proposition that a court should delay discovery based on the United States' bald representation that unknown defendants will be immune from suit. Nor do the allegations in Plaintiffs' Amended Complaint compel a conclusion that the unknown defendants are necessarily

military employees entitled to immunity. *See Fed. R. Civ. P. 15(a)(2)* (noting that courts should "freely give leave" to allow plaintiffs to amend their complaints "when justice so requires.") Plaintiffs' allegations are consistent with theories advanced by counsel in court, that private government contractors may have been acting in concert with the military in orchestrating Plaintiffs' arrests. Only additional discovery will reveal if the government's predictions are accurate. Therefore, the Court rejects the United States' argument that the issue of qualified immunity prevents the Court from proceeding on Plaintiffs' discovery Motion.

In addition, Plaintiffs' unopposed request for leave to serve subpoenas [*36] on SBC Global for email correspondence and on Orascom for relevant cell phone records is granted.

## CONCLUSION

The present Motion seeks to discover the identities of those individuals responsible for Plaintiffs' arrest and detention in Iraq. Almost one year ago, the United States represented to Judge Shadur that it could obtain this information within 60 days, and the government has never denied that it possesses information responsive to Plaintiffs' request. In refusing to produce such information, the government has raised a dubious challenge to the court's jurisdiction, speculated as to the viability of potential defenses that might be asserted by presently unknown defendants, decided that its assessment of the weakness of Plaintiffs' claims should excuse the government's participation in discovery, and argued that separation-of-powers concerns counsel against the court performing its judicial duties, in favor of concentrating discretion and power within the executive branch.

The Court does not presume to foresee the ultimate validity of the claims and defenses raised in this lawsuit. But the Court is convinced that it has both the authority and the obligation to order the United States [*37] to discover and produce to Plaintiffs the identities of the individuals responsible for Plaintiffs' arrests, detention, and mistreatment in Iraq.

Therefore, the Court grants Plaintiffs' Motion to the extent that it seeks the identities of unknown defendants responsible for their arrest, detention, and mistreatment while at Camps Prosperity and Cropper in Iraq. The Court denies Plaintiffs' Motion to the extent that it seeks

all documents concerning Plaintiffs, as this evidence does not implicate the statute of limitations concerns that informed this Court's decision. Similarly, the Court denies Plaintiffs' Motion to the extent that it asks the government to identify all persons who issued and or signed any policy or order that relates to the topics listed in six broad categories, even if such policy and/or order was of general applicability and not specific to Plaintiffs' case.

Therefore, Plaintiffs' Motion to identify the unknown defendants is Granted, Plaintiff's Motion for leave to serve subpoenas on SBC Global and Orascom is Granted, but Plaintiffs' Motion for all additional discovery is Denied, without prejudice.

DATE: December 21, 2007

/s/ Arlander Keys

MAGISTRATE JUDGE ARLANDER KEYS

UNITED [*38] STATES DISTRICT COURT

 LexisNexis®

**WARNER BROS, RECORDS INC., et al., Plaintiffs, vs. DOES 1-4, Defendants.**

**Case No. 2:07 cv 0424 TC**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

*2007 U.S. Dist. LEXIS 48829; Copy. L. Rep. (CCH) P29,396*

**July 3, 2007, Decided**
**July 5, 2007, Filed**

**COUNSEL:** [*1] For Warner Bros. Recordings, a Delaware corporation, Virgin Records America, a California Corporation, UMG Recordings, a Delaware corporation, Sony BMG Music Entertainment, a Delaware general partnership, Priority Records, a California limited liability company, Capitol Records, a Delaware corporation, BMG Music, a New York general partnership, Arista Records, a Delaware limited liability company, Plaintiffs: Kendra L. Shirey, LEAD ATTORNEY, HOLME ROBERTS & OWEN (UT), SALT LAKE CITY, UT.

**JUDGES:** Brooke C. Wells, United States Magistrate Judge.

**OPINION BY:** Brooke C. Wells

**OPINION**

**ORDER AND MEMORANDUM DECISION GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY**

Before the court is Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery (motion), filed June 27, 2007. [1] Plaintiffs filed a complaint alleging copyright infringement against four Doe Defendants and now seek discovery to ascertain their identity. Generally, "a party may not seek discovery from any source before

the parties have conferred as required by *Rule 26(f)*" [2] unless authorized by a court order or agreement of the parties. "[A] party seeking expedited discovery in advance of a *Rule 26(f)* conference has the [*2] burden of showing good cause for the requested departure form usual discovery procedures." [3] After reviewing the Plaintiffs' memorandum, the declaration of Carlos Linares, [4] and relevant case law, the court finds that Plaintiffs have shown good cause and therefore GRANTS their motion. But, the court will allow Internet Service Provider Off Campus Telecommunications an opportunity to move to quash the subpoena because Plaintiffs' motion is brought *ex parte*.

1 Docket no. 3.

2 *Fed. R. Civ. P. 26(d)*.

3 *Qwest Communications Int'l, Inc. v. Worldquest Networks, Inc., 213 F.R.D. 418, 419 (D.Colo. 2003)*.

4 Carlos Linares is the Vice President, Anti-Piracy Legal Affairs for the Recording Industry Association of America, Inc.

Under *Rule 26(d)* "a party may not seek discovery from any source before the parties have conferred as required by *Rule 26(f)*." [5] The traditional sequence of discovery may, however, be altered by the court in the exercise of its broad discretion. But, the party seeking expedited discovery in advance of a *Rule 26(f)* conference bears the burden of showing good cause for

2007 U.S. Dist. LEXIS 48829, *2; Copy. L. Rep. (CCH) P29,396

Page 2

departing from the usual discovery procedures. [6] Good cause exists "where a party seeks a preliminary injunction . [*3] . . or where the moving party has asserted claims of infringement and unfair competition." [7] Additionally, good cause is also found "where physical evidence may be consumed or destroyed with the passage of time." [8]

> 5 *Fed. R. Civ. P. 26(d).*
> 6 *See Pod-Ners, LLC v. Northern Feed & Bean of Lucerne, LLC, 204 F.R.D. 675, 676 (D.Colo. 2002).*
> 7 *Qwest, 213 F.R.D. at 419.*
> 8 *Id.*

Plaintiffs in this action are record companies who own copyrights to some of the most popular sound recordings in the United States. In their complaint Plaintiffs allege Defendants committed violations of federal copyright law. [9] This was allegedly done via an online media distribution system largely using peer-to-peer or P2P networks. Peer-to-peer networks allow users' computers to communicate directly with each other without using a central server. In these networks files are often available on different computers which make requesting and retrieving information and files faster because there is no dependence upon a central server. The networks have numerous cost, security and efficiency benefits and are used in many settings to store and distribute electronic files. Unfortunately, however, they have also become a very popular [*4] medium for the transfer of copyrighted music and video files without proper authorization. [10] According to Plaintiffs, "more than 2.6 *billion* infringing music files are downloaded monthly." [11]

> 9 *See 17 U.S.C. § 101 et seq.*
> 10 Some current popular P2P networks used by individuals include Ares, KaZaA, eDonkey, BitTorrent, DirectConnect and Gnutella. For further information about the use of these networks in the exchange of copyrighted music and videos see *MGM Studios Inc. v Grokster, Ltd., 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005)*; *A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001)*; *Universal City Studios, Inc. v. Corley, 273 F.3d 429 (2nd Cir. 2001).*
> 11 Pla.'s mem. in supp. p. 4 (citing L. Grossman, *It's All Free,* Time, May 5, 2003, at 60-69).

In the instant case Plaintiffs do not know Defendants' names or any other identifying information other than their unique Internet Protocol address. Consequently, Plaintiffs seek to obtain immediate discovery from Defendants' Internet Service Provider (ISP) Off Campus Telecommunications, whose files will permit Plaintiffs to discovery Defendants' identities. Plaintiffs argue that without such information they will not be able to pursue this lawsuit and "protect [*5] their copyrighted works from repeated infringement." [12] Plaintiffs further argue that the need for such discovery is immediate because ISPs such as Off Campus typically keep the activity logs for brief periods of time before erasing the data they contain. Finally, Plaintiffs request that the court "make clear that Off Campus is authorized to respond to the subpoena pursuant to the Cable Communications Policy Act (the Cable Act)." [13]

> 12 Pla.'s mem. in supp. p. 3.
> 13 *Id.* p. 9; *see generally, 47 U.S.C. § 551.*

Based upon a review of this case the court finds that Plaintiffs have established good cause. Good cause exists where the evidence sought "may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation." [14] Accordingly the court GRANTS Plaintiffs' motion. But, because Plaintiffs' motion was brought *ex parte,* Plaintiffs are to serve a copy of this Order along with the subpoena on Off Campus. Off Campus may then move to quash within ten days of being served with the subpoena.

> 14 *Qwest, 213 F.R.D. at 419*; *see also Interscope Records v. Does, 2006 U.S. Dist. LEXIS 32416, 2006 WL 1351876, *1 (D.Colo. 2006)* (finding good cause for immediate discovery from an ISP where the [*6] plaintiffs did not know the identity of the defendants but did know their unique IP addresses).

Finally, the Cable Act provides that a cable operator may disclose personally identifiable information regarding subscribers without their consent if the disclosure is "made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed." [15] As discussed previously, Plaintiffs have shown good cause to discovery this information. Therefore, providing such information is permissible under the Cable Act.

> 15 *47 U.S.C. § 551(c)(2)(B).*

Page 3

2007 U.S. Dist. LEXIS 48829, *6; Copy. L. Rep. (CCH) P29,396

IT IS SO ORDERED.

DATED this 3rd day of July, 2007.

Brooke C. Wells

United States Magistrate Judge



**ZOMBA RECORDING LLC, et al., Plaintiffs, v. DOES 1-24, Defendants.**

**No. 3:07-cv-448 (VARLAN/SHIRLEY)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE**

*2008 U.S. Dist. LEXIS 1998*

**January 10, 2008, Filed**

**COUNSEL:** [*1] For Zomba Recording LLC, Warner Bros. Records, Inc., Virgin Records America, Inc, UMG Recordings, Inc., Sony BMG Music Entertainment, Priority Records LLC, Motown Record Company, L.P., Maverick Recording Company, Lava Records LLC, LAFACE RECORDS LLC, Interscope Records, Elektra Entertainment Group, Inc, Caroline Records, Inc., Capitol Records, Inc., BMG Music, Atlantic Recording Corporation, Arista Records LLC, Plaintiffs: Chris Vlahos, W. Russell Taber, LEAD ATTORNEYS, Bowen Riley Warnock & Jacobson, PLC, Nashville, TN.

**JUDGES:** C. Clifford Shirley, Jr., United States Magistrate Judge.

**OPINION BY:** C. Clifford Shirley, Jr.

**OPINION**

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to *28 U.S.C. § 636(b)*, the Rules of this Court, and by Order [Doc. 6] of the Honorable Thomas A. Varlan, United States District Judge, for disposition of the plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery [Doc. 3].

The plaintiff record companies bring this copyright infringement action against Does 1-24 ("the Doe Defendants"), alleging that the Doe Defendants have disseminated over the Internet copyrighted works owned and/or controlled by the plaintiffs. [Doc. 1]. The plaintiffs now apply *ex parte* for [*2] leave to serve limited, immediate discovery on a third party Internet Service Provider ("ISP") to determine the true identities of the Doe Defendants. [Doc. 3]. Although the plaintiffs do not know the true names of the Doe Defendants, the plaintiffs have identified each defendant by a unique Internet Protocol ("IP") address assigned to that defendant on the date and time of that defendant's infringing activity. The plaintiff intend to serve a *Rule 45* subpoena on the ISP -- in this case, the University of Tennessee at Knoxville -- seeking documents that identify each defendant's true name, address and telephone number, e-mail address, and Media Access Control ("MAC") address. The plaintiffs assert that without this information, the plaintiffs cannot identify the Doe Defendants or pursue their lawsuit to protect their copyrighted works from repeated infringement.

The Rules of Civil Procedure generally provide that a party may not engage in discovery until after the parties have met for a discovery conference pursuant to *Rule 26(f)*. See *Fed. R. Civ. P. 26(d)*. However, upon a demonstration of good cause, a party may seek expedited discovery prior to a *Rule 26(f)* conference. *Qwest Communications Int'l, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003)*; [*3] *Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002)*.

"Expedited discovery under *Rule 45* is appropriate when good cause for the discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *UMG Recordings, Inc. v. Does 1-4, No. 06-0652, 2006 U.S. Dist. LEXIS 32821, 2006 WL 1343597, at *1 (N.D. Cal. Mar. 6, 2006).*

The Court finds that the plaintiffs have shown good cause for expedited discovery in the present case and that the plaintiffs' need for this expedited discovery outweighs any prejudice to the Doe Defendants. First, without the disclosure of the identities of the Doe Defendants, the present litigation cannot proceed, as the plaintiffs would be unable to effect service of process upon the defendants. See *UMG Recordings, 2006 U.S. Dist. LEXIS 32821, 2006 WL 1343597, at * 1.* Second, the plaintiffs have shown that ISPs typically retain user activity logs only for a short period of time -- from a few days to a few months -- before erasing the data. Thus, there is a likelihood that the information required by the plaintiffs will be destroyed in the near future, thereby precluding the plaintiffs from pursuing this lawsuit to protect their copyrighted works. See [*4] id. Finally, the plaintiffs are presumed to suffer irreparable harm where their right to the exclusive use of copyrighted material has been invaded. See id.; see also *Qwest Communications, 213 F.R.D. at 419* ("The good cause standard may be satisfied . . . where the moving party has asserted claims of infringement and unfair competition"). For these reasons, the Court finds that good cause exists to allow expedited discovery in this case.

Accordingly, it is hereby **ORDERED:**

(1) The plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery [Doc. 3] is **GRANTED;**

(2) The plaintiffs are hereby **ORDERED** to serve a copy of this Order, along with a *Rule 45* subpoena requesting each subscriber's name, address, telephone number, e-mail address, and MAC address, upon the University of Tennessee at Knoxville;

(3) **In accordance with the provisions of the Cable Communications Policy Act, *47 U.S.C. § 551(c),* the University of Tennessee at Knoxville shall serve a copy of the subpoena and a copy of this Order upon its relevant subscribers within five (5) days of the University's receipt of that subpoena;**

(4) The subscribers shall then have fifteen (15) days from the date of service upon them to [*5] file any objections or motions to quash with the Court;

(5) If that 15-day period elapses without filings by any of the subscribers, the University of Tennessee shall have ten (10) days from such lapse to produce each relevant subscriber's name, address, telephone number, e-mail address, and MAC address to the plaintiffs pursuant to the subpoena; and

(6) The plaintiffs are to use the information disclosed pursuant to the subpoena only for the purpose of protecting their rights under the copyright laws.

**IT IS SO ORDERED.**

s/ C. Clifford Shirley, Jr.

United States Magistrate Judge